CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

December 09, 2025

LAURA A. AUSTIN, CLERK
BY:
s/B. McAbee
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Abingdon Division

|  |  |
|---|---|
| COURTHOUSE NEWS SERVICE; LEE ENTERPRISES, INCORPORATED; AND LEE BHM LLC, PUBLISHER OF THE RICHMOND TIMES-DISPATCH, THE ROANOKE TIMES, BRISTOL HERALD COURIER, LYNCHBURG NEWS AND ADVANCE, FREDERICKSBURG FREE LANCE STAR AND THE DAILY PROGRESS. | |
| Plaintiff, | Civil Action No.  1:25-cv-00075 |
| v. | |
| KARL R. HADE, in his official capacity as Executive Secretary of the Office of Executive Secretary of the Supreme Court of Virginia, | |
| and | |
| EDWARD JEWETT, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia, | |
| and | |
| BRENDA HAMILTON, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia, | |
| and | |
| KELLY FLANNAGAN, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia | |
| Defendants. | |

## COMPLAINT

Plaintiff Courthouse News Service ("Courthouse News") and Plaintiffs Lee Enterprises, Incorporated and its wholly owned subsidiary, Lee BHM LLC, publisher of, among others, the *Richmond Times-Dispatch*, *The Roanoke Times*, *Bristol Herald Courier*, *Lynchburg News and Advance*, *Fredericksburg Free Lance Star* and *The Daily Progress* in Charlottesville (collectively, "Lee") (and, together with Courthouse News, "Plaintiffs"), by and through their undersigned attorneys, allege the following in support of their Complaint against Defendant Karl R. Hade, in his official capacity as Executive Secretary (the "Executive Secretary") of the Office of Executive Secretary of the Supreme Court of Virginia ("OES"); Edward Jewett, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia ("Richmond Clerk"); Brenda Hamilton, in her official capacity of the Clerk of the Circuit Court for the City of Roanoke, Virginia ("Roanoke Clerk"); and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia ("Bristol Clerk") (together, "Defendants").

## INTRODUCTION

1.      The First Amendment to the United States Constitution provides the press and public with a presumptive right of access to certain civil, nonconfidential, public court filings. One such category is civil complaints.  The complaint is the opening bell in a lawsuit.  Without access to the complaint, the press cannot inform the public that a new court case has been initiated.  Timely press access to new civil complaints is thus essential to accurate reporting of, and speech about, civil disputes, and is vital to the public's ability to discuss what is happening in an important branch of government as it is happening.  *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 532 (E.D. Va. 2020) (the First Amendment provides a contemporaneous right of access to newly filed civil complaints), *aff'd*, 2 F.4th 318, 328 (4th Cir. 2021) ("The press and

public thus have an important interest in reasonably contemporaneous access to civil

complaints"); *Doe v. Public Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("we take this opportunity

to … emphasize that the public and press generally have a contemporaneous right of access to

court documents and proceedings when the right applies").

2.      The Fourth Circuit summarized the constitutional "logic" that mandates this right

of contemporaneous access:

> The Supreme Court has recognized that openness of the judicial process –
> especially through the press's reporting – "affords citizens a form of legal
> education and hopefully promotes confidence in the fair administration of
> justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980)
> (plurality opinion).  And access allows the public to "participate in and serve as a
> check upon the judicial process – an essential component in our structure of self-
> government." *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S.
> 596, 606 (1982). [¶] It would be impossible for the public to perform this role
> adequately without access to nonconfidential civil complaints.  … Because they
> allow the public to understand the parties involved in a case, the facts alleged, the
> issues for trial, and the relief sought, access to complaints, like access to docket
> sheets, is crucial to "not only the public's interest in monitoring the functioning of
> the courts but also the integrity of the judiciary." *Doe*, 749 F.3d at 266.

*Schaefer*, 2 F.4th at 327 (parallel citations and additional internal quotation omitted).

3.      Similar logic prevents government from prohibiting those who "lawfully

obtained" information in public court records from disseminating that information, or from

threatening to punish that dissemination. *Soderberg v. Carrion*, 999 F.3d 962, 968-69 (4th Cir.

2021).  In light of "'[t]he special protected nature of accurate reports of judicial proceedings,'"

the "public interest in such reports and their 'critical importance to our type of government in

which the citizenry is the final judge of the proper conduct of public business,'" *id.* at 967

(quoting *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 & 495 (1975)), once "'information

is disclosed in public court documents open to public inspection'" and that information is

"lawfully obtained," the Commonwealth may not prohibit or "'punish its publication except

when necessary to further [a sufficient substantial] interest'" – i.e., except where the prohibition survives "strict scrutiny." *Id.* at 967-69 (quoting, respectively, *Cox Broadcasting*, 420 U.S. at 496 and *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97, 104 (1979) (brackets in original)); *accord In re Murphy-Brown, LLC*, 907 F.3d 788, 792-93, 797 (4th Cir. 2018) (court orders prohibiting parties and their attorneys, among others, from disseminating to the public certain information about a pending civil case are "prior restraints" that "bear 'a heavy presumption against [their] constitutional validity'" because they "upend core First Amendment values" and thus "must survive strict scrutiny") (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

4.      Virginia's Officer of the Court Access system ("OCRA") offers Virginia-licensed attorneys and their staff – as well as attorneys admitted pro hac vice and authorized governmental agencies – remote online access to non-confidential Virginia circuit court records, including new civil complaints, through a paid subscription.  Pursuant to Virginia Code § 17.1-293 and Defendants' policies and practices, those who do not fall into one of these categories may not subscribe (the "Access Restriction").  In addition, pursuant to Virginia Code § 17.1-293(H) and Defendants' policies and practices, those who **are** permitted to subscribe to OCRA are not permitted to share those records with the "general public," including with members of the news media for news reporting purposes or to post on news web sites, even though they are public court records open to public inspection at the courthouse (the "Dissemination Restriction").  Those who subscribe to OCRA and violate the Dissemination Restriction by disseminating information from a record lawfully obtained on OCRA may have their access revoked.  Virginia-barred attorneys may be subject to further sanctions, including disbarment.

5.      In a prior case filed in 2021, *Courthouse News Serv. v. Hade*, United States District Court, Eastern District of Virginia, Case No. 3:21-cv-460-HEH, Courthouse News

challenged the constitutionality of both the Access Restriction and the Dissemination Restriction. The Amended Complaint alleged the Access Restriction violated both the First Amendment and the Equal Protection clause of the U.S. Constitution (Counts I and III). It also contended that the Dissemination Restriction was a prior restraint that violated the First Amendment (Count II). In September 2022, that District Court found both restrictions to be constitutional without applying strict scrutiny or mentioning *Soderberg*, granted summary judgment to defendants, and entered a dismissal with prejudice. *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349 (E.D. Va. 2022).

6.    In January 2025, the Fourth Circuit affirmed (over a strong dissent) that District Court's ruling as to the Access Restriction, but vacated its ruling as to the Dissemination Restriction, finding that Courthouse News lacked standing on the record in that case – and, because the court lacked jurisdiction, the Dissemination Restriction should have been dismissed ***without*** prejudice. *Courthouse News Serv. v. Smith*, 126 F.4th 899, 917 (4th Cir. 2025), *rehearing and rehearing en banc denied*, 2025 WL 1218982 (4th Cir. Apr. 28, 2025).

7.    On the standing issue, the panel majority said that "Courthouse News has not identified anyone who would redistribute data from OCRA to Courthouse News absent the Dissemination Restriction, nor has it offered any evidence from which the existence of such a person can be inferred. We therefore conclude that Courthouse News's assertion of derivative injury is 'too speculative to support standing.'" *Smith*, 126 F.4th at 917 (citation omitted). Judge Gregory disagreed, explaining that he "would hold the Dissemination Restriction is a prior restraint on speech" and therefore "would remand to the district court to apply strict scrutiny." *Id.* at 925 (Gregory, Circuit Judge, dissenting) (citing, e.g., *Soderberg*).

8.    The Fourth Circuit issued its mandate on May 6, 2025, and on May 19, the District Court dismissed Courthouse News' claim challenging the Dissemination Restriction

(Count II) without prejudice for lack of subject matter jurisdiction, "in accordance with the Fourth Circuit's directive," on the ground that "Courthouse News lacks standing to bring such a claim." A copy of the May 19 order of dismissal without prejudice is attached as **Exhibit 1**.

9.    Courthouse News, now joined by Lee, thus brings this new action, which cures the standing concern identified by the Fourth Circuit.

10.    Outside of Virginia, lawyers often provide journalists with copies of court records so that the journalist can quickly access public pleadings without needing to incur the time or expense of traveling to the courthouse to obtain a copy, or where access is needed when the courthouse is closed (e.g., on nights and weekends).

11.    Here, Lee's journalists have asked their Virginia-barred counsel, David Lacy, to provide them with copies of new civil complaints from his OCRA accounts on several occasions. While Lacy would provide the journalists with these new complaints and other public court records absent the Dissemination Restriction, Lacy told them he is prohibited from providing them with copies of – or of any information in – those public court records that he can obtain from OCRA because of the Dissemination Restriction.

12.    Courthouse News journalists have also unsuccessfully asked Lacy to provide them with civil complaints obtained through his OCRA accounts on several occasions. Lacy also would provide these journalists with the new complaints they requested absent the Dissemination Restriction, but he was compelled to tell them that he is prohibited from providing journalists with copies of – or of any information in – those public court records that he can access on OCRA because of the Dissemination Restriction.

13.    The Dissemination Restriction thus constitutes a "classic prior restraint on speech" that is "subject to strict scrutiny," *Smith*, 126 F.4th at 925 (Gregory, Circuit Judge,

dissenting), and Defendants cannot satisfy strict scrutiny.  Plaintiffs thus ask this Court to enter a

declaratory judgment that Virginia Code § 17.1-293(H) is unconstitutional on its face, and/or

unconstitutional as applied by Defendants' policies and practices.  Plaintiffs also ask this Court

to enjoin Defendants, in their official capacities – as well as their agents, assistants, successors,

employees, and all persons acting in concert or cooperation with them or at their direction or

under their control – from continuing their policies, practices, and customs that prohibit the

dissemination of public documents and information accessed via OCRA.

**JURISDICTION AND VENUE**

14.     Plaintiffs' claims arise under the First and Fourteenth Amendments to the U.S.

Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983, *et seq.*  This Court has subject

matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201

(declaratory relief).

15.     Defendants are citizens and residents of Virginia and therefore are subject to

personal jurisdiction in this District.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the Roanoke

and Bristol Clerks' primary place of business is within this District, and Defendants all reside in

Virginia.  In addition, venue is proper in this district because a substantial part of the events or

omissions giving rise to Plaintiffs' claims occurred in this District.

17.     Divisional venue is proper in the Abingdon Division under the Western District of

Virginia Local Civil Rule 2(b) because the Bristol Clerk's primary place of business is in the

Abingdon Division, and Defendants all have their principal place of business in Virginia.  In

addition, divisional venue is proper in the Abingdon Division because a substantial part of the

events or omissions giving rise to Plaintiffs' claims occurred in the Abingdon Division.

## PARTIES

18.     Courthouse News is a California corporation with its principal place of business in Pasadena, California.  A widely read legal news service with thousands of subscribers across the nation, Courthouse News specializes in news reporting about civil litigation, from the date of filing through the appellate level, in state and federal courts throughout the United States. Courthouse News' comprehensive and timely coverage of civil litigation through its many publications has made it a go-to source of information about the nation's civil courts.

19.     Based in Davenport, Iowa, Lee is the fourth largest newspaper publisher in the United States, a leading provider of local news and information, and a major platform for advertising, with daily newspapers, rapidly growing digital products, marketing services, innovative technology and nearly 350 weekly and specialty publications serving 72 markets in 25 states across the county.  In Virginia alone, Lee publishes six daily newspapers (the *Richmond Times Dispatch*, *The Roanoke Times*, *Bristol Herald Courier*, *Lynchburg News and Advance*, *Fredericksburg Free Lance* and *The Daily Progress* in Charlottesville) and six others published online daily and in print either three times a week (the *Danville Register & Bee*, *Martinsville Bulletin*, the *News Virginian* in Waynesboro and *Culpeper Star-Exponent*), twice weekly (the *Franklin News Post* in Rocky Mount) or weekly (*SWVA Today* in Wytheville).

20.     Defendant Karl R. Hade is the Executive Secretary of the Office of Executive Secretary ("OES") of the Supreme Court of Virginia and is sued in his official capacity.  The Executive Secretary is "the court administrator for the Commonwealth," Va. Code § 17.1-314, which includes serving as "the administrator of the circuit court system."  Va. Code § 17.1-502(A).  OES created, provides, supports and maintains OCRA for Virginia court clerks, and bills $1.2 million to Virginia circuit court clerks annually for maintenance fees.  Acting in his

official capacity, the Executive Secretary, as well as those acting at his direction and under his supervision, are directly involved with and/or responsible for the enforcement of the Dissemination Restriction.

21.    Defendant Edward Jewett is the Clerk of the Circuit Court for the City of Richmond, Virginia, and is sued in his official capacity. The Richmond Clerk is the custodian of and responsible for, among other things, the administration of court records and ensuring that those records are maintained and made available to the public for inspection and examination. The Richmond Clerk is further responsible for enforcing the Dissemination Restriction.

22.    The Richmond Clerk is also responsible for developing, implementing, and enforcing the policies and procedures for operating the City of Richmond Court Clerk's Office, in conformance with applicable law, including § 17.1-293(H) and all those relating to dissemination of non-confidential civil filings and other court records that are filed in the Circuit Court for the City of Richmond.

23.    Defendant Brenda Hamilton is the Clerk of the Circuit Court for the City of Roanoke, Virginia, and is sued in her official capacity. The Roanoke Clerk is the custodian of and responsible for, among other things, the administration of court records and ensuring that those records are maintained and made available to the public for inspection and examination. The Roanoke Clerk is further responsible for enforcing the Dissemination Restriction.

24.    The Roanoke Clerk is also responsible for developing, implementing, and enforcing the policies and procedures for operating the City of Roanoke Court Clerk's Office, in conformance with applicable law, including § 17.1-293(H) and all those relating to dissemination of non-confidential civil filings and other court records that are filed in the Circuit Court for the City of Roanoke.

25.     Defendant Kelly Flannagan is the Clerk of the Circuit Court for the City of Bristol, Virginia, and is sued in her official capacity.  The Bristol Clerk is the custodian of and responsible for, among other things, the administration of court records and ensuring that those records are maintained and made available to the public for inspection and examination.  The Bristol Clerk is further responsible for enforcing the Dissemination Restriction.

26.     The Bristol Clerk is also responsible for developing, implementing, and enforcing the policies and procedures for operating the City of Bristol Court Clerk's Office, in conformance with applicable law, including § 17.1-293(H) and all those relating to dissemination of non-confidential civil filings and other court records that are filed in the Circuit Court for the City of Bristol.

27.     Defendants' actions reflect their official policies, practices, and customs. Defendants' actions are taken, in part, pursuant to their responsibility to enforce Virginia law, including §17.1293(H).  Defendants' actions, as alleged in this Complaint, are under color of Virginia law and constitute state action within the meaning of the Fourteenth Amendment to the Unites States Constitution and 42 U.S.C. § 1983.

28.     Plaintiffs seek relief against Defendants, as well as against their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTUAL ALLEGATIONS

### A.    Courthouse News' Publications and Subscribers

29.     Courthouse News is a nationwide news service founded almost 35 years ago out of a belief that great swaths of news about civil litigation went unreported because the traditional news media do not cover much of the important business of the courts.  Courthouse News now

10

employs more than 220 people, most of them editors and reporters, covering approximately 3,000 state and federal trial and appellate courts in all 50 states in the United States. The overwhelming majority are full-fledged employees who write content for the New Litigation Reports, Courthouse News' website (both described below) or both.

30.     Courthouse News offers its readers a variety of publications. Its New Litigation Reports contain original, staff-written summaries of significant new civil complaints. These reports are sent to subscribers via e-mail each evening. Courthouse News publishes two New Litigation Reports in Virginia – the *Virginia Report* and the *Southern Virginia State Report*. These reports do not cover criminal, domestic relations or probate matters.

31.     Among Courthouse News' other publications is the *Daily Brief*, which covers published rulings nationwide, including all U.S. Supreme Court and federal circuit decisions, decisions from state appellate courts, and significant rulings from the federal district courts. Courthouse News also publishes a freely available website, www.courthousenews.com, containing news reports and commentary that is read by roughly 25,000 people every weekday. The website functions much like a print daily newspaper, featuring staff-written articles that are posted throughout each day and rotated on and off the page on a 24-hour news cycle.

32.     Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including: the *ABA Journal*, ABC News, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR); NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*,

*Salt Lake City Tribune, San Antonio Express-News*, *The (San Jose) Mercury News,* Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report* and the YouTube news channel. American, Canadian and New Zealand radio shows have also interviewed Courthouse News reporters.

33.    Courthouse News has more than 2,200 subscribers nationwide, including law firms, law schools, government offices and publicly traded companies. Many other publications also subscribe, putting Courthouse News in the position of a pool reporter. Such news outlets include: The Associated Press, *The Atlanta Journal Constitution*, *The Boston Globe*, *Chicago Tribute, The Dallas Morning News*, *Denver Post, Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *The Guardian, Honolulu Civil Beat, Las Vegas Review-Journal, Los Angeles Times*, NBC News Digital, North Jersey Media Group, *Pacific Coast Business Times, Phoenix New Times, Portland Business Journal, Seattle Times, St. Paul Business Journal, The Salt Lake Tribune*, *The (San Jose) Mercury News, The Washington Post, San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal* and Walt Disney Company.

34.    In Virginia, two of Lee's papers – the *Richmond Times-Dispatch and The Roanoke Times* – subscribe to the *Southern Virginia State Report*.

35.    Courthouse News subscribers also include educational institutions, such as Arizona State University, Baylor College, Boston University, Drake University Law Library, Columbia Journalism Investigations, Santa Clara University, University of Colorado, University of Maryland – College of Journalism, University of Mississippi Medical Center, University of

Nebraska, University of New Mexico, University of North Carolina at Chapel Hill, University of Pennsylvania School of Law, University of South Florida and Wake Forest University.

36.      Traditionally, to prepare the New Litigation Reports and identify new cases that may warrant a website article, Courthouse News reporters have visited their assigned courts on a daily or weekly basis to review all the complaints filed that day (or since their last visit) to determine which ones are newsworthy.  However, as the vast majority of federal courts and many state courts are putting court records online via court web sites, Courthouse News also covers courts remotely through the Internet, without the need to require reporters to travel to those courts.  All federal courts in the nation, including the United States district courts in Virginia, give the press and public remote online access to civil court records via PACER.  So do an increasing number of state courts.

37.      State courts that provide remote online access to all civil filings and other court records (except for those that are recognized as confidential under any applicable law or sealed pursuant to court order), either on a statewide basis or through individual courts within the state, include courts in Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Indiana, Iowa, Kansas, Kentucky, Louisiana, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Washington and Wyoming, as well as Washington, D.C.  None of these jurisdictions restrict online access only to state-barred attorneys or government employees.  ***And none purport to prohibit those with access from disseminating any information in or copies of public court records obtained via remote access to members of the press or other third parties for reporting to the public***.

38.     Courthouse News currently employs three reporters who cover the state and federal trial and appellate courts within the Commonwealth of Virginia.  They are supervised by Courthouse News' Southeast regional bureau chief, Ryan Abbott.  Courthouse News' three Virginia reporters are based in three of the Commonwealth's larger metropolitan areas – Prince William, Norfolk and Richmond.

39.     Of the 120 Virginia circuit courts, Courthouse News is only able to cover five of them – Prince William, Fairfax, Norfolk, Richmond City and Virginia Beach – by sending a reporter to the courthouse every day to review the new complaints.  Twelve (12) other circuit courts – the counties of Arlington, Chesterfield, Fauquier, Hanover, Henrico, Loudoun and Stafford, and the cities of Chesapeake, Hampton, Newport News, Portsmouth and Suffolk – are covered intermittently by sending a reporter to the courthouse on a less than daily basis. Courthouse News covers the remaining 103 Virginia circuit courts by reviewing the bare-bones docket information that is available online from the Virginia Courts Case Information system ("VCCI").  Information on the VCCI system is limited to party names, case type and court name. Courthouse News cannot cover these courts in person, even on a less than daily basis, due to their remote location and the expense of hiring numerous additional reporters to cover each of those far-off courts every day.

40.     Courthouse News' *Virginia Report* covers new litigation filed in 31 circuit courts, primarily in the northern and eastern parts of the Commonwealth.

41.     Courthouse News' *Southern Virginia State Report* covers new litigation filed in the remaining 89 Virginia circuit courts throughout the southern and western regions of the Commonwealth.  Many of these courts are located hundreds of miles from the more populated metro areas of Washington, D.C., Richmond and Hampton Roads.

42.    Subscribers to Courthouse News' litigation reports regularly request Courthouse News to provide them copies of complaints filed in courts that the subscriber cannot visit in person.  This includes requests from members of both the press and the bar.  Often these requests seek complaints filed in circuit courts in Virginia far from where Courthouse News' reporters are based.  Other times the requests are time sensitive and come in when Courthouse News' reporter is occupied covering another matter.  In either scenario, OCRA's Dissemination Restriction prevents Courthouse News from fulfilling its subscribers' requests because Courthouse News cannot obtain a copy of the complaint from an OCRA subscriber.

43.    In a recent example, on October 28, 2025, one of Courthouse News' subscribers outside Virginia asked Courthouse News for a copy of a complaint filed in Richmond Circuit Court.  But Courthouse News' reporter was busy covering a civil trial brought by a teacher shot by her six-year-old student last year in Newport News, so Courthouse News' Bureau Chief Ryan Abbott emailed attorney Lacy, who has an OCRA account with the City of Richmond, to ask Lacy if he could send Abbott a copy of the complaint to forward to Courthouse News' subscriber and to post in Courthouse News' online database, where it would also be available to other subscribers.  Lacy responded that but for OCRA's Dissemination Restriction he would provide Courthouse News a copy of the complaint, but that he was prohibited by OCRA's restrictions from sending Courthouse News a copy of the complaint for these purposes.

44.    But for the Dissemination Restriction, Courthouse News would hire a Virginia lawyer and have that person access complaints via OCRA.  Indeed, one of its Texas reporters is a lawyer and member of the Texas Bar.  However, because of the Dissemination Restriction, even if Courthouse News were to hire a Virginia lawyer, that person could not share information about, or copies of, complaints accessed via OCRA for news reporting.

### B.    Lee's Publications and Subscribers

45.    In Virginia, Lee publishes 12 newspapers that combined have nearly 100,000 print and online subscribers.  In years past, Lee's newspapers in Virginia – like most newspapers in the United States – had at least one reporter dedicated to covering the courts in their circulation area, and sometimes several reporters where a newspaper's coverage area included multiple circuit courts, or a team of reporters who rotated the assignment.  But that was before the growth of digital and social media outlets cannibalized the audience and advertising, significantly eroding both newspapers' circulation and their revenue stream from display and classified advertising, which led to staffing cuts in most newsrooms, including at Lee's Virginia newspapers.  In light of those staff reductions, most newspapers – including Lee's newspapers in Virginia – now require a reporter to cover the courts along with several other beats, which means the reporters do not have the time to travel to as many courts to review new filings on a regular basis – let alone daily – and especially to courts in the outlying parts of the circulation area.

46.    Combined with OCRA's restrictions on remote access and dissemination, the newspapers' staff reductions mean Lee's newspapers are only able to cover a handful of Virginia's 120 circuit courts on a regular basis.

47.    Traditionally, reporters for Lee's Virginia newspapers would review new civil filings in federal and many Commonwealth courts daily or at least several times a week to identify and report on new cases that may be newsworthy and of interest to their readers.  While Lee's reporters can regularly monitor new federal court filings remotely via PACER, the number of Virginia circuit courts they can cover on a daily or near-daily basis is comparatively tiny. Limited by OCRA's restrictions to those courts to which its reporters can physically travel to review court records, Lee's Virginia newspapers can only monitor new civil filings on a daily or

near-daily basis in about eight circuit courts in the immediate vicinity of the various newsrooms

(the counties of Albemarle, Henry and Pittsylvania, and the cities of Charlottesville, Danville,

Martinsville, Richmond and Roanoke).

48.    Even after adding the circuit courts that are close enough to Lee's Virginia

newsrooms that its reporters can monitor them on a near-weekly basis (the counties of Augusta,

Chesterfield, Culpeper, Greene, Roanoke, Hanover, Henrico, Spotsylvania and Stafford, as well

as the cities of Fredericksburg, Lynchburg, Salem, Staunton and Waynesboro), that is a small

fraction of Virginia's 120 circuit courts.  Civil cases in the remaining Virginia circuit courts are

either covered only intermittently or not at all.

49.    For example, the *Richmond Times-Dispatch* can only cover four circuit courts

regularly – the city of Richmond, and the counties of Chesterfield, Hanover and Henrico – out of

the 12 courts in its circulation area (including, in its immediate coverage area, the counties of

Dinwiddie and Goochland and the cities of Colonial Heights, Hopewell and Petersburg, as well

as, at the edges of its circulation area, the counties of Charles City, New Kent and Powhatan).

Absent OCRA's Dissemination Restriction – *i.e.*, if the newspaper's attorney could forward

copies of court records obtained via OCRA – the *Times-Dispatch* could and would cover many

of those courts regularly, as well as cases in other courts throughout the Commonwealth.  As it

is, cases filed in courts like the Petersburg City Circuit Court, which the *Times-Dispatch* used to

cover regularly, now get covered rarely, if at all, because the roundtrip to the courthouse takes

about two hours, not including the time to find and review the pertinent records, and the paper no

longer has sufficient staffing to spare a reporter to do that on a regular basis, let alone daily.

50.    Similarly, *The Roanoke Times* can now only cover the three courts closest to its

newsroom on a daily or regular basis – the cities of Roanoke and Salem, as well as the county of

Roanoke.  It has been forced to stop regular coverage of nearly a dozen other courts that it now

can only cover occasionally, such as when it learns (through a source or limited docket

information available online) of a potentially important hearing or court record it needs to check

(in Botetourt, Franklin or Montgomery counties) or if there is a clearly newsworthy case (in the

counties of Alleghany, Craig , Floyd, Giles, Pulaski or Rockbridge, and the cities of Buena Vista

or Radford).  A roundtrip to many of these courts to review records, such as Montgomery or

Rockbridge County, can take nearly half of a reporter's workday, including more than two hours

of travel time round trip, which staff reductions preclude except on exceptional occasions.

51.     Unable to review new filings remotely on OCRA, or to rely on their attorney to

forward filings he can access on OCRA, Lee's reporters are forced largely to rely on what they

hear from their sources about potentially newsworthy new filings in Virginia courts, as well as

checks of the limited docket information available on the VCCI system.  Lee also subscribes to

Courthouse News' *Southern Virginia State Report*, but due to OCRA's restrictions that *Report*

can largely provide only the same limited docket sheet information available on VCCI.

### C.    The Dissemination Restriction

52.     Virginia law provides that the Virginia circuit court clerks "shall have custody of

and shall keep all court records, including books, evidence, records, maps, and papers, deposited

in their offices or at such location otherwise designated by the clerk, as well as records stored in

electronic format whether the storage media for such electronic records are on premises or

elsewhere."  Va. Code § 17.1-242.

53.     Virginia law also provides that "[t]he Executive Secretary of the Supreme Court

shall be the administrator of the circuit court system, which includes the operation and

maintenance of a case management system and financial management system and related

technology improvements." Va. Code § 17.1-502(A).  In the prior litigation over OCRA,

Courthouse News and Hade stipulated to, *inter alia*, the following facts:

> In response to demand from circuit clerks, OES created, and now supports and maintains, a Case Imaging System ("CIS") that enables participating circuit courts … to create and store electronic images of case documents that the clerk may, if he or she so chooses, make available for viewing by members of the public and press on public access terminals at the courthouse.
>
> * * *
>
> OES also created, and now supports and maintains, OCRA, which is an application developed by OES for circuit clerks that use CIS.  The OCRA application enables circuit clerks to make non-confidential CIS case images available for secure online viewing by their subscribers …
>
> * * *
>
> The Executive Secretary provides maintenance and technical support for the OCRA platform for those Virginia circuit courts . . . that pay for this support and utilize OCRA.  . . . [T]here is a sliding scale for annual maintenance charges for clerks who have five (5) or more private (non-governmental) subscribers: the annual maintenance charge is $500 for clerks with 5-14 private subscribers; $1,500 for clerks with 15-34 private subscribers; $3,500 for clerks with 35-54 private subscribers; $5,500 for clerks with 55-94 private subscribers; and $9,500 for clerks with 95-400 private subscribers.

*Courthouse News Serv. v. Hade*, U.S. District Court, E.D. of Va. Case No. 3:21cv460-HEH,

Joint Stipulations of Fact, Doc. No. 55, ¶¶ 31, 35, 38 (copy attached as **Exhibit 2**).

54.    Virginia law permits remote access to nonconfidential court records through each

Virginia circuit court clerk.  *See* Va. Code § 17.1-225; *see also* State Officials and Employees-

Costs, Fees, Salaries, Allowances, Courts of Record, 1998 Va. Laws Ch. 872 (H.B. 1114).

55.    Most Virginia circuit courts – including the cities of Bristol, Richmond and

Roanoke, and another 109 of Virginia's 120 circuit courts – offer remote access via OCRA.

56.    The provisions governing OCRA in the Virginia Code say that a circuit court

clerk can only "[p]rovid[e] secure remote access to nonconfidential court records, subject to any

fees charged by the clerk, to members in good standing with the Virginia State Bar and their

authorized agents, pro hac vice attorneys authorized by the court for purposes of the practice of

law, and such governmental agencies as authorized by the clerk." Va. Code § 17.1-293(E)(7).

However, the Virginia Code does not provide the same access for the press or public.

57.    Another subdivision of the same statute bars attorneys with OCRA subscriptions

from providing copies of public court records on OCRA to third parties, including members of

the media for purposes of informing the public about their contents. It says:

> Nothing in this section shall be construed to permit any data accessed by secure
> remote access to be sold or posted on any other website or in any way
> redistributed to a third party, and the clerk, in his discretion, may deny secure
> remote access to ensure compliance with these provisions. However, the data
> accessed by secure remote access may be included in products or services
> provided to a third party of the subscriber provided that (i) such data is not made
> available to the general public and (ii) the subscriber maintains administrative,
> technical, and security safeguards to protect the confidentiality, integrity, and
> limited availability of the data.

Va. Code § 17.1-293(H).

58.    To get remote access to judicial filings at a Virginia circuit court through OCRA,

potential users must submit a completed and notarized OCRA Subscriber Agreement, and pay a

separate subscription fee, for each individual circuit court for which they wish to have OCRA

access. The Subscriber Agreement for the Richmond City Court ("Richmond City OCRA

Agreement"), a copy of which is attached as **Exhibit 3**, provides, among other things:

> For the purposes of this Agreement, Subscriber shall include the following: a
> member in good standing of the Virginia State Bar, or a directly supervised staff
> member, a *pro hac vice* attorney authorized by the Court for the purposes of the
> practice of law, and such governmental agencies as authorized by the Clerk.
>
> * * *
>
> Subscriber may not permit any data accessed by secure remote access to be sold
> or posted on any other Internet website or in any way redistributed to any third
> party, and the clerk reserves the discretion to deny secure remote access to ensure
> compliance with the provision.
>
> * * *

> The Subscriber also relieves and releases the Office of the Executive Secretary …
> for any and all damages … against the subscriber by any other party.

59.    The OCRA Subscriber Agreements for the City of Roanoke Circuit Court and the

Bristol Circuit Court, which are virtually identical to each other and are attached as **Exhibit 4**

and **Exhibit 5**, similarly define a "subscriber" to mean "members in good standing with the

Virginia State Bar and their authorized agents, pro hac vice attorneys authorized by the court for

the purposes of the practice of law, and governmental agencies authorized by the Clerk of a

Circuit Court to have OCRA."  In almost identical language as used by the Richmond Clerk,

both agreements go on to state, in relevant part:

> Subscriber may not permit any data accessed by secure remote access to be sold
> or posted on any other Internet website or in any way redistributed to any third
> party, and the Clerk reserves the discretion to deny secure remote access to ensure
> compliance with this provision.
>
> * * *
>
> The Subscriber also relieves and releases the … Office of the Executive Secretary
> … from liability for any and all damages resulting from incorrect data or any
> other misinformation accessed from this service.
>
> * * *
>
> The Subscriber also relieves and releases the … Office of the Executive Secretary
> … from liability for any and all damages resulting from a claim for negligence or
> lost profits against the Subscriber or any other party.

60.    Plaintiffs are informed and believe, and on that basis allege, that the OCRA

agreements of circuit court clerks elsewhere in Virginia include the same restriction against

subscribers sharing information from records obtained via OCRA with a third party, like a

journalist, to report that information to the public or post it on a newspaper's or broadcast

outlet's website, as well as similar language indemnifying OES.  Indeed, Plaintiffs are informed

and believe, and on that basis allege, that OES requires that clerks include these restrictions and

indemnifying language in their OCRA subscription agreements.

61.     Those with OCRA access who violate the Dissemination Restriction by providing a copy of, or information obtained from, a public court record lawfully obtained on OCRA may have their access revoked.  And Virginia-barred attorneys may be subject to further sanctions. At the argument before the Fourth Circuit in *Courthouse News Serv. v. Hade* held on December 7, 2023, counsel for the Commonwealth asserted that Virginia attorneys who violate the Dissemination Prohibition could be disbarred.[1]  By prohibiting those with access to OCRA from disseminating information on OCRA to members of the general public, including the press, and punishing those who do, Defendants have imposed a prior restraint on protected speech.

62.     These restrictions infringe Plaintiffs' First Amendment rights, and the rights of the public, to gather, disseminate and read about newsworthy information to which a constitutional right of access exists.  While Plaintiffs can access nonconfidential civil complaints and other civil court records at the courthouse, this is not a viable option for most of Virginia's 120 circuit courts – let alone all of them – because the cost and time necessary are prohibitive. The burdensome impact of the restrictions thus infringes on the First Amendment right of the public to receive information.

### D.      Accessing Complaints And Other Nonconfidential Civil Records Via OCRA

63.     Confidential documents are not available via OCRA.  The documents on OCRA

---

[1] Virginia has long allowed attorneys' licenses to be "'revoked or suspended'" for "'any unlawful or dishonest or unworthy or corrupt or unprofessional conduct on the part of the attorney.'"  *Norfolk & Portsmouth Bar Ass'n v. Drewry*, 161 Va. 833, 841-42, 172 S.E. 282, 285 (1934) (quoting statute).  Virginia's ethical rules' current list of "professional misconduct" constituting grounds for attorney discipline includes "commit[ting] a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law" and "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law."  Va. R. Prof. Conduct 8.4(b) & (c). The Commonwealth contends violation of Virginia Code § 17.1-293(H) constitutes professional misconduct under Rule 8.4 warranting "suspension or revocation of his or her license to practice law in Virginia."  *Courthouse News Serv. v. Hade*, 2022 WL 22955643, ECF Doc. 67 at 16-17 (E.D. Va. July 9, 2022) (Commonwealth Memo. of Law in support of Summary Judgment).

are the same documents that have been made available on courthouse public access terminals.

64.     To log into the OCRA System, a subscriber visits a centralized website (https://cisweb.courts.state.va/us/Ocra/login/577728/a.html) – which OES provides and maintains for the participating circuit clerks – and enters his/her e-mail address, password and bar number/authorized officer of the court number.  The OCRA login page states: "This system is intended solely for the use of authorized Officer of the Court personnel to retrieve and review court documents they are specifically authorized to view.  All other use is expressly prohibited." After logging in, a user then has access to the circuit courts for which they have accounts.

65.     After paying a nominal subscriber's fee – the amount of which varies and is set forth in each clerk's subscription agreement – and registering for OCRA, attorneys in Virginia, and from anywhere else in the country as long as they have been admitted pro hac vice, can view all civil, non-confidential, public court filings remotely over the internet on any day of the week, at any time of day, and from any location in the world.  This access is not limited to filings in their own cases.  Rather, this access extends to all filings in non-confidential civil cases in courts for which they have an OCRA subscription.  OCRA access also gives these attorneys the ability to print out the filings at no additional charge.  *See* Attorney Subscriber Agreements, Exhs. 3-5.

66.     There is no difference in the content of the court records that Plaintiffs and other members of the press and public must travel to each individual court to see, and the court records that subscribers authorized to access OCRA can see remotely over the Internet via OCRA – they are the same records.  The difference between those with access to OCRA and those who do not have access, such as the Courthouse News and Lee plaintiffs here, is the time, distance and expense that is required to access that complaint – which, in real life, means the difference between being able to review the complaint or not review it at all.

**E.    Direct And Derivative Injury Caused By The Dissemination Restriction**

67.    Because of the limited OCRA access and the Dissemination Restriction, Plaintiffs can only report on newly filed civil complaints or other nonconfidential civil court records by reviewing and/or copying them off the public access terminal at each courthouse.

68.    None of Courthouse News' reporters or editors are attorneys who are licensed to practice law in Virgina.  None of Lee's Virginia reporters or editors are attorneys who are licensed to practice law in Virginia.

69.    The 112 Virginia circuit courts that use OCRA cover an area of over 30,000 square miles, rendering it impossible for Plaintiffs' reporters to regularly drive to each court to report on the complaints filed that day.

70.    In 2022, three Courthouse News journalists – its publisher and editor, accompanied by two of its bureau chiefs – traveled in person to 25 of the 105 Virginia courts that then offered OCRA access.  They then published a report to document the time and travel required to obtain copies of court records at less than one-quarter of the OCRA courts without remote access.  A true and correct copy of their report is attached as **Exhibit 6**.  As the report explains, it took five days to cover these 25 courts, requiring travel of 1,036 miles.

71.    Because Courthouse News is unable to send a reporter to every court every day, it is compelled to rely on bare-bones information available online through the VCCI system – i.e., party names, case type, court name – to report on new civil actions for the vast majority of the Virginia circuit courts covered in its *Virginia Report* and its *Southern Virginia Report*.  This is not nearly the coverage Courthouse News would provide if it had access to the new complaints themselves via OCRA.  Among other shortcomings, Courthouse News' reporters cannot inform

their readers about the particular claims alleged (which is different from case type), or the factual allegations that are the basis for those claims.

72.    Lee's Virginia newspapers are similarly unable to send a reporter to each court in their circulation area even on a weekly basis, let alone daily.  They therefore must rely on information they happen to hear from a source – or sheer luck – to learn about new significant filings, especially in remote courts, and have been forced to forego coverage of newsworthy cases in remote courts they would have informed the public about but for OCRA's restrictions.

73.    As the Reporters Committee for Freedom of the Press described in its amicus brief filed in support of Courthouse News in *Courthouse News Service v. Jacqueline Smith*, 2023 WL 2067776 (4th Cir. filed Feb. 10, 2023), the inability of news outlets to obtain information from OCRA greatly restricts their ability to cover local news in remote areas, creating news deserts – i.e., communities in which there is no "access to reporting on court proceedings of local importance." *Id.* at *13-14 & 17.

74.    The Dissemination Restriction further prohibits Plaintiffs from relying on their legal counsel, and other Virginia lawyers or those admitted pro hac vice, to provide them with potentially newsworthy complaints – a common practice across newsrooms around the country.

75.    Even if Plaintiffs' Virginia-barred counsel, or other counsel with access to OCRA, identified potentially newsworthy complaints for Plaintiffs, the Dissemination Restriction prohibits sharing those complaints or information in them.  Plaintiffs' reporters are still required to drive to the relevant courthouse and view/print the complaint from the public access terminal, paying not only for each page but, more prohibitively, the expense of travel – if they are able to make the trip at all.

76.     The Dissemination Restriction also curtails Plaintiffs' ability to report on pleadings filed in courts close to their newsrooms.  Pleadings submitted in the late afternoon may be filed without sufficient time for Plaintiffs' reporters to go to the courthouse and copy each newsworthy complaint or pleading.  Pleadings that journalists learn about over the weekend cannot be reported on until the next week because they cannot be accessed in person at the courthouse while the courthouse is closed.  Because the Dissemination Restriction bars Plaintiffs from obtaining such pleadings from legal counsel who have access to OCRA, Plaintiffs are unable to report on these newly filings concerning matters of public import for days, if at all.

77.     For example, on Friday afternoon, September 26, 2025, the court reporter for the *Richmond Times-Dispatch* learned a complaint had been filed in Richmond Circuit Court against the parent company of the digital music streaming service Spotify and its American subsidiary, alleging Spotify had stolen an idea created by students as a class project that allows users to stream music with friends, and seeking $10 million in damages.  The reporter, Luca Powell, could not get to the Richmond courthouse before it closed for the weekend, so he contacted the *Times-Dispatch*'s attorney, David Lacy, asking if he could pull the complaint off OCRA and email it to him.  Lacy replied that he did have access to the filing through OCRA and would like to assist, but unfortunately his subscription agreement contained a restriction prohibiting Lacy from sending Powell a copy to review and report to the public.

78.     In another example some 16 months earlier involving a more remote court, Powell had asked Lacy in May 2024 if he had an OCRA subscription for the Dinwiddie County Circuit Court because Powell heard a pleading had been filed there late on a Friday afternoon that he needed so he could confirm its contents and report the information. The Dinwiddie court is more than 50 miles from the *Times-Dispatch*'s newsroom and Powell knew it would close

before he could get there.  But Lacy informed Powell that he could not provide him a copy of anything from OCRA even if he had a subscription to OCRA for Dinwiddie.

79.     More recently, Lacy was unable to assist *The Roanoke Times* with respect to a new lawsuit filed against Barnes and Noble Booksellers in Roanoke City Circuit Court that the *Times*' court reporter, Laurence Hammack, learned about on Saturday, November 22, 2025. That day, Hammack asked Lacy if he could provide him a copy or a summary of the allegations over the weekend, but Lacy said OCRA's rules prevent him from providing Hammack the pleadings or to summarize information from the pleadings obtained via OCRA.

80.     This past June, the Henrico Doctors Hospital in Henrico County attempted to prevent the public from learning of settlements with families of nine infants who died or were seriously injured in its neonatal intensive care unit by moving for court approval in Salem, a three-hour drive from Richmond.  A judge in this district has said he was "appalled" by this practice of using Virginia Code § 8.01-55 in an attempt to bury news about wrongful death settlements in remote courts.  *Williamson Jain v. Abbott Labs, Inc.*, No. 7:13-cv-00551-MFU-RSB, Trans. of Hg. 10:3 (Doc. 171) (W.D. Va. Jan 28, 2015); *see id.*, Order 2-3 & n.2 (Doc. 166) (Jan. 29, 2015); Hammack, *Pattern of Settling Lawsuits against Roanoke-area hospitals makes them hard to find*, The Roanoke Times (Oct. 11, 2015) (settlement approval often sought "in small towns such as Fincastle, Floyd and Stuart").  Aware of this practice, the media or their counsel could monitor OCRA subscriptions for filings in remote courts **if** the media could subscribe to OCRA, or if their attorneys could alert them to the contents of records obtained on OCRA.  Given OCRA's restrictions, however, Lee's Richmond reporter, Eric Kolenich, was only able to learn about the settlements because a reporter for the Roanoke paper was "lucky enough to stumble" across the motion for approval in Salem.  The public's right to know about

newsworthy developments in its courts should not need to depend on luck.

81.    On the evening of October 20, 2025, Hammack – the court reporter for *The Roanoke Times* – saw in Courthouse News' *Southern Virginia State Report* that a pro se wrongful death complaint had been filed in Montgomery County Circuit Court against a defendant identified as Warm Health Inc.  There is a retirement home called Warm Hearth Village in Blacksburg, a city in Montgomery County, and Hammack thought the pro se plaintiff may have mistyped the name.  Montgomery is in *The Times* circulation and coverage area, and allegations of a wrongful death at a retirement home is something Hammack would want to review and potentially report to his readers.  But Hammack did not have time to make the two-hour round trip to Montgomery to pull a copy of the complaint, so he emailed Lacy on October 21 asking if Lacy could pull a copy of the complaint off of OCRA and send it to him or at least summarize for Hammack the key allegations, and provide the plaintiff's contact information, so Hammack could determine if it warranted a story.  Lacy informed Hammack that OCRA is unlike PACER and that, while Lacy would have been able to assist if the complaint was in federal court and thus available on PACER, unfortunately OCRA's restrictions did not allow Lacy to send Hammack the complaint or the information he'd requested about the complaint.

82.    Lacy has been similarly unable to help Courthouse News obtain copies of, or information from, complaints on OCRA because of the Dissemination Restriction.

83.    On October 3, 2025, Courthouse News' Southeast Bureau Chief, Ryan Abbott, saw information in the VCCI system about a new civil complaint filed against Meta and Facebook in Roanoke City Circuit Court, but other than bare-bones information – the case number, name, case type (one-word description: "injunction") and the names of the first three defendants (which may not include the most newsworthy defendants) – could not obtain any

other information from VCCI.  So Abbott asked Lacy if he could pull a copy of that complaint

off OCRA and send it to him because Courthouse News did not otherwise have enough

information to report the case.  In response, Lacy said he did have access through OCRA, "but

unfortunately the subscription agreement prohibits me from using [his OCRA access] to send

you a copy."  Consequently, Courthouse News was unable to include a full report about the

lawsuit in its *Southern Virginia State Report* or to consider a more detailed story for its website.

84.    On October 21, 2025, Abbott asked Lacy if he could pull off OCRA and send him

a petition the Commonwealth of Virginia had filed in Bristol Circuit Court, or at least summarize

what the petition alleged and counsel's contact information.  Abbott wanted to determine if he

should include it in Courthouse News' *Southern Virginia State Report*.  When he clicked on the

case number in VCCI, it took Abbott to docket information for a case filed in 2024 – in which a

bail bondsman was a co-defendant, further piquing Abbott's reporting interest – but he could not

determine what either the old case or new petition were about.  Bristol is more than 300 miles

and five hours one way from Richmond, and Abbott could not send a reporter to spend more than

10 hours to obtain a single petition.  However, Lacy told Abbott he was unable to assist because

OCRA prevented him from sending Abbott a copy of the petition for reporting purposes, and

providing a summary of the filing could be construed as improper circumvention of OCRA.

85.    Lee was also unsuccessful in trying to get Lacy to provide it with a copy of a

complaint filed in Bristol Circuit Court.  On the evening of October 31, 2025, Courthouse News'

*Southern Virginia State Report* noted that a declaratory judgment action had been filed in Bristol

against Virginia Farm Bureau Town, but was unable to provide further details because they were

not available on VCCI.  The Executive Editor of the *Bristol Herald Courier,* David McGee,

subsequently asked Lacy if he could send McGee a copy of the complaint, or if he could

summarize the main allegations in an email, so McGee could determine if it was worth reporting

about the case for the newspaper's readers.  Lacy was compelled to inform McGee that,

"unfortunately, I am prohibited by OCRA's terms from sending you a copy of the filings under

these circumstances," nor could he send him a summary of the allegations.

### COUNT ONE
**Violation of U.S. Const. Amend. I and 42 U.S.C. § 1983**
**First Amendment – Dissemination Restriction**
**(Against All Defendants)**

86.    Plaintiffs incorporate and repeat the allegations of Paragraphs 1-85 herein.

87.    The Dissemination Restriction, as set forth by Virginia Code § 17.1-293 and as

further imposed and enforced by Defendants in OCRA subscriber agreements, on its face and as-

applied by Defendants through their policies, practices and customs, is a prior restraint that

deprives Plaintiffs, and by extension their subscribers and the public, of their rights under the

First Amendment to the U.S. Constitution, incorporated and made applicable to the states by the

Fourteenth Amendment to the U.S. Constitution.

88.    The First Amendment generally precludes the government from suppressing the

dissemination of truthful information about issues of civic importance.  Thus, "'state action to

punish the publication of truthful information seldom can satisfy constitutional standards.'"

*Soderberg*, 999 F.3d at 968 (quoting *Smith*, 443 U.S. at 102).

89.    Defendants' actions under color of state law, including without limitation their

policy, practice and custom of imposing and enforcing the Dissemination Restriction on non-

confidential judicial documents obtained via OCRA, burdens the fundamental First Amendment

rights of Plaintiffs, their subscribers, and other readers of their news reports.

90.    Plaintiffs have standing to assert this claim.   On multiple occasions, they have

requested that an attorney who subscribes to OCRA provide them with copies of, and/or

information from, new civil complaints and other public court filings available on OCRA.  The

subscriber was compelled to inform Plaintiffs that the Dissemination Restriction prevented him

from providing Plaintiffs with the copies and/or information they requested.  But for OCRA's

Dissemination Restriction, the subscriber would have provided Plaintiffs the requested material.

91.     There is no compelling or overriding interest sufficient to justify Defendants'

actions.  Even if an overriding or compelling interest did exist, there are far less restrictive means

of protecting any such interest.  As such, Defendants' policies and practices are not narrowly

tailored, as required by law.

92.     Plaintiffs have no adequate remedy at law to prevent or redress Defendants'

unconstitutional actions and will suffer irreparable harm as a result of Defendants' violations of

Plaintiffs' First Amendment rights.  Plaintiffs are therefore entitled to declaratory and injunctive

relief to prevent further deprivation of these rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in their favor and against Defendants Karl R.

Hade, in his official capacity as Executive Secretary of the Office of Executive Secretary of the

Supreme Court of Virginia; Edward Jewett, in his official capacity as Clerk of the Circuit Court

for the City of Richmond, Virginia; Brenda Hamilton, in her official capacity of the Clerk of the

Circuit Court for the City of  Roanoke, Viginia; and Kelly Flannagan, in her official capacity as

the Clerk of the Circuit Court for the City of Bristol, Virginia, as follows:

1.     Injunctions against Defendants, including their agents, assistants, successors,

employees, and all persons acting in concert or cooperation with them, or at their direction or

under their control, prohibiting them from continuing their policies, practices, and customs of

prohibiting the dissemination of public court records obtained from OCRA;

2.      A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Virginia Code § 17.1-293(H), and Defendants' policies and practices of conditioning OCRA access on the Dissemination Restriction, and enforcing the Dissemination Restriction with penalties including disbarment for violations of the Dissemination Restriction, unconstitutional on its face because it impermissibly burdens the fundamental First Amendment rights of Plaintiffs, their subscribers, and other readers of their news reports;

3.      A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Virginia Code § 17.1-293(H), and Defendants' policies and practices of conditioning OCRA access on the Dissemination Restriction, and enforcing the Dissemination Restriction with penalties including disbarment for violations of the Dissemination Restriction, unconstitutional as-applied because it impermissibly burdens the fundamental First Amendment rights of Plaintiffs, their subscribers, and other readers of their news reports;

4.      An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

5.      For all other relief the Court deems just and proper.

Dated: December 8, 2025                          Respectfully Submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**          **TROUTMAN PEPPER LOCKE LLP**

By: */s/ Roger Myers*                               By: */s/ Dabney J. Carr IV*
Roger Myers, *pro hac vice* forthcoming         Dabney J. Carr IV, VSB No. 28679
Rachel Matteo-Boehm, *pro hac vice*             Lauren H. Miller, VSB No. 100566
forthcoming                                     P.O. Box 1122
3 Embarcadero Center, 7th Floor                 Richmond, Virginia 23218
San Francisco, California 94111                 Tel: (804) 697-1200
Tel: (415) 675-3400                             Fax: (805) 697-1339
roger.myers@bclplaw.com                         dabney.carr@troutman.com
rachel.matteo-boehm@bclplaw.com                 lauren.h.miller@troutman.com

*Counsel for Plaintiffs Courthouse News Service,*
*Lee Enterprises, Incorporated and Lee BHM LLC*