UNITED STATES DISTRICT COURT
For the Western District of Virginia
Abingdon Division

| | |
|---|---|
| COURTHOUSE NEWS SERVICES, et al., | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | )  Civil Action No. 1:25-cv-00075 |
| | ) |
| KARL R. HADE, in his official capacity as | ) |
| Exec. Sec'y of the Office of Exec. Sec'y of the | ) |
| Supreme Ct. of Va., *et al.* | ) |
| | ) |
| *Defendants.* | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
KARL R. HADE'S RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS**

The Defendant, Karl R. Hade ("Hade"), by counsel, submits this memorandum of law in support of his Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss.

I.    INTRODUCTION

This case is ironically not about free speech, but profitable speech. Courthouse News Service ("CNS") previously attempted a constitutional challenge to Virginia Code § 17.1-293. That suit involved a different court clerk in a different jurisdiction than the parties in the present suit but the claim was the same: CNS argued that without remote access to unredacted court records, its constitutional right to pleadings was unconstitutionally impaired.

Fortunately, the Eastern District and the Fourth Circuit saw through the glaring hole in CNS's constitutional challenge. CNS, like all members of the general public, has the same access to court records that was available when the First Amendment was written. The records are available to anyone at the courthouse clerk's office during business hours.

In truth, the only challenge CNS faced with access to court records was accessing them profitably. Virginia is a large state. Covering remote courthouses would require paying more reporters in more jurisdictions to travel to far-flung courthouses than CNS wanted to spend. To preserve their profit margin, CNS sought to have Virginia's common-sense solution to protect its digital court records from exploitation from data mining while facilitating efficient access to records for court officers declared unconstitutional. This would allow CNS to access court records in any online database in Virginia without the tedious and expensive trip to the courthouse and without having to hire extra reporters to cover a wider geographic area.

The Fourth Circuit ultimately held that CNS did not have a constitutional right to the unredacted digital court records maintained by many Virginia circuit court clerks. But the court also held that CNS lacked the standing to challenge the dissemination restriction, which prevents lawyers with access to secure online court records from downloading the files and selling or distributing them to third parties. Without standing to challenge the dissemination restriction, CNS's challenge to that subsection was dismissed without prejudice.

Now CNS is back, but it has filed suit against a new set of clerks in the Western District of Virginia instead of the Eastern, perhaps in an attempt to start afresh. They have added another news publishing plaintiff and asserted some additional facts in an effort to state a claim. But at its heart, the lawsuit is the same. The plaintiff news companies, located out of state, want access to Virginia's state courts' digital court records to allow them to operate as profitably as possible, without having to pay as many reporters to cover Virginia's courthouses. The plaintiffs openly admit that if the dissemination restriction is invalidated they will hire Virginia licensed attorneys to do what they cannot do directly; namely, download court records off OCRA for dissemination to their paid subscribers.

The Constitution does not require that Virginia's court system put corporate profitability ahead of the twin policy concerns at issue. Virginia is constitutionally entitled to protect litigants' privacy in a digital age, where information itself is a commodity, while leveraging technology to allow for the efficient operation of its justice system. The Constitution does not require Virginia to sacrifice either of these values to preserve corporate profits.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Courthouse News Service ("CNS") is a California corporation that earns profits through selling subscriptions to its reports on civil litigation in state and federal courts. (ECF No. 1, ¶ 18). CNS also operates a case search engine called "CasePortal" that contains "cases and opinions from federal and state court courts across the nation" including "the text of filed documents." *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349, 365, n. 14. (E.D.Va. 2022).

Lee Enterprises, Incorporated ("LEI") owns Lee BHM LLC ("BHM"), but the Complaint does not include any allegations relating to LEI. (ECF No. 1 at 1.) BHM publishes numerous periodicals throughout the Commonwealth of Virginia, including the *Richmond Times Dispatch* and *The Roanoke Times*. *Id.* at 1, ¶ 19.

Defendant Karl Hade is the Executive Secretary of the Office of the Executive Secretary ("OES") of the Supreme Court of Virginia. *Id.* ¶ 20. This position is created by statute, Virginia Code § 17.1-314, and the Executive Secretary serves as the "court administrator for the Commonwealth."

Edward Jewett, Brenda Hamilton, and Kelly Flannagan are the duly-elected circuit court clerks for their respective jurisdictions.

### B.  Previous Litigation

CNS previously, and unsuccessfully, sued defendant Hade in his official capacity as Executive Secretary of the Office of the Executive Secretary of Virginia ("OES").[1] *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349 (E.D.Va. 2022) affirmed in part, reversed in part, and remanded by *Courthouse News Serv. v. Smith*, 126 F.4th 899 (4th Cir. 2025). In *Hade*, CNS also named Jacqueline Smith, in her official capacity as Clerk of the Circuit Court for Prince William County, Virginia, as a defendant to obtain access to Prince William County Circuit Court's OCRA database records. As in this lawsuit, CNS sought to have the statute restricting online access to unredacted, nonconfidential court records restricted pursuant to Virginia Code § 17.1-293(H), declared unconstitutional. *Id.*

The Commonwealth intervened in that case after Hade was dismissed, and the district court subsequently granted summary judgment to the Commonwealth on all three counts, finding that both the Access Restriction and the Dissemination Restriction in the statute were constitutional time, place, and manner restrictions and there was no Equal Protection right to remote access of court records. *Hade*, 631 F. Supp. 3d at 370.  CNS appealed that decision to the Fourth Circuit. *Smith*, 126 F.4th at 905.The Fourth Circuit upheld the trial court's holding that there was no First Amendment or Equal Protection right to access unredacted court records online because the restriction was "a content-neutral time, place, and manner regulation that is narrowly tailored to further the Commonwealth's important interests in protecting sensitive personal information and promoting the orderly and efficient administration of justice." *Smith*, 126 F.4th at 917-18.

---

[1] Hade was dismissed as a party before summary judgment and the Commonwealth intervened to defend the constitutionality of the statue.

The Fourth Circuit held that the dissemination restriction should have been dismissed without prejudice, however, because CNS "lacks standing to challenge this provision." *Id.* at 917. The Fourth Circuit also held that it failed to state a basis for even derivative injury because "Courthouse News has not identified anyone who would redistribute data from OCRA to Courthouse News absent the Dissemination Restriction." *Id.*

In the current iteration of its suit against Hade, this is the only factual change from the prior suit, along with the addition of LEI and BHM as plaintiffs. Now, CNS and BHM have identified a single lawyer, David Lacy, who they allege would be willing to provide them with copies of pleadings obtained from OCRA absent the dissemination restriction in Virginia Code § 17.1-293(H). (ECF No. 1, ¶¶ 11-12, 43, 77-79) Lacy is identified as the "Virginia-barred counsel" of BHM. (ECF No. 1, ¶ 11) According to the plaintiffs, the addition of this allegation, "cures the standing concern identified by the Fourth Circuit." (*Id.* ¶ 9)

III.   LEGAL STANDARD

   **A.  Rule 12(b)(1)**

"Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss an action for lack of subject matter jurisdiction." *Allen v. College of William & Mary*, 245 F. Supp. 2d, 777, 782 (E.D. Va. 2003). The burden rests with a plaintiff to establish that jurisdiction is proper. *Blankenship v. Am. Fed. Gov't Empl.*, No. 3:15-cv-294, 2016 U.S. Dist. LEXIS 42851, at *2 (E.D. Va. Mar. 30, 2016). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Minns v. Portsmouth Juvenile & Domestic Relations District Court, et al.*, No. 2:07-cv-233, U.S. Dist. LEXIS 23847, at *6 (E.D. Va. Mar. 26, 2008) (quotations omitted).

Because questions of immunity relate to subject matter jurisdiction, a Rule 12(b)(1)

motion is an appropriate avenue to seek resolution of these questions and, as appropriate,

dismissal. See, e.g., *Haley v. Va. Dep't of Health,* No. 4:12-cv-00016, 2012 WL 5494306, at *2

n.2 (W.D. Va. Nov. 3, 2011) (dismissing civil action against a Commonwealth agency in ruling

on a Rule 12(b)(1) motion which asserted Eleventh Amendment immunity).

### B.  Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to

state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to

dismiss under Rule 12(b)(6), the Court "accept[s] as true all well-pleaded allegations and view[s]

the complaint in the light most favorable to the plaintiff." *Philips v. Pitt County Mem. Hosp.*,

572 F.3d 176, 180 (4th Cir. 2009). But the complaint's factual allegations "must be enough to

raise a right to relief above the speculative level" and "to state a claim to relief that is plausible

on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). Conclusory statements and facts "merely consistent with a defendant's

liability" do not suffice to carry a complaint over 'the line between possibility and plausibility.'"

*Id.* (quoting *Twombly*, 550 U.S. at 557). The Court "'need not accept the [plaintiff's] legal

conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences,

unreasonable conclusions, or arguments.'" *Phillips*, 572 F.3d at 180 (quoting *Wahi v.

Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009)).

IV.    ARGUMENT

A.    <u>LEI lacks standing</u>.

According to the Complaint, Lee Enterprises, Incorporated ("LEI") owns Lee BHM LLC ("BHM"), and BHM publishes various newspapers in the Commonwealth. ECF No. 1, 2. The Complaint, however, does not identify any injuries to Lee, only to BHM, the newspapers that BHM publishes, and to BHM employees. While the Complaint refers to LEI and BHM collectively as "Lee," the allegations of injury relate to Virginia newspapers, which are published by BHM. *Id.* ¶¶ 45-51. In paragraphs 77 -81 & 85 of the Complaint, the plaintiffs complain that reporters working for newspapers published by BHM could not obtain court filings either after hours or because the courthouse was too far away and Attorney Lacy could not send them copies from OCRA.

The alleged injuries described in the Complaint affected BHM, not LEI. LEI has no independent right to claim damages on behalf of its "wholly owned subsidiary," because once a corporation has a legal existence of its own, it functions as a separate entity. *See Terry v. Yancey*, 344 F.2d 789, 790 (4th Cir. 1965). Having created Lee BHM LLC for some beneficial reason, LEI "cannot now ignore the existence of the LLC in order to escape its disadvantages." *Kreisler v. Goldberg*, 478 F.3d 209, 214 (4th Cir. 2007). LEI has not identified any injury that it has or might suffer, and "it is axiomatic that a party seeking to establish standing in the federal courts must demonstrate an injury." *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 808 (E.D. Va. 2007).  Accordingly, LEI's claims should be dismissed pursuant to Rule 12(b)(6).

B.    <u>The Eleventh Amendment bars Plaintiffs' claims against Hade.</u>

Hade is not a proper party in the case at bar because he is sued in his official capacity but lacks the requisite authority to enforce the allegedly unconstitutional statute.

The Eleventh Amendment provides, in part, that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. Amend. XI.

7

Essentially, the Eleventh Amendment "render[s] States immune from being hauled into federal court by private parties." *Wright v. North Carolina*, 787 F.3d 256, 261 (4th Cir. 2015). State officers sued in their official capacity—as Defendant Karl Hade is here, ECF No. 1 at 1—are "also entitled to Eleventh Amendment protection" because official-capacity suits are in effect suits against the State. *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001); *accord Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (noting that "a suit against a state official in his or her official capacity" is "no different from a suit against the State itself").

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity that permits a federal court to grant prospective relief against a state officer when that officer acts in violation of federal law. As the Court explained, the exception is based on the "fiction" that an officer who acts unconstitutionally is "stripped of his official or representative character" and may therefore be "subject[]" to "the consequences of his individual conduct" in federal court. *Id.* at 159–60.

Although this doctrine provides an avenue for plaintiffs seeking injunctive relief against States, "[t]he purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute." *Waste Management Holdings, Inc. v. Gilmore*, 252 F.3d 316, 332 (4th Cir. 2001). Accordingly, the *Young* exception is limited to situations where a plaintiff can show: (1) a "special relation" between the officer sued and the challenged policy; and (2) the officer has "acted or threatened" to enforce the policy. *McBurney v. Cuccinelli*, 616 F.3d 393, 399, 402 (4th Cir. 2010). These requirements ensure both that "the appropriate party is before the federal court, so as not to interfere with the lawful discretion of state officials" and

that "a federal injunction will be effective with respect to the underlying claim." *South Carolina Wildlife Fed. v. Limehouse*, 549 F.3d 324, 333–34 (4th Cir. 2008). (check cite)

In this case, Plaintiff's Complaint fails to demonstrate either requirement. First, the Executive Secretary lacks a "special relation" to the challenged Dissemination Restriction within the meaning defined by *Ex parte Young*'s progeny. A "special relation" exists only when "[t]he officer sued [is] able to enforce, if he so chooses, the specific law the plaintiff challenges." *Doyle v. Hogan*, 2021 U.S. App. LEXIS 17823, *7 (4th Cir. 2021). "Without this enforcement duty, the officer is merely a 'representative of the State' who cannot be sued because allowing such a suit would essentially 'make the State a party.'" *Id.* (quoting *Ex parte Young*, 209 U.S. at 157).

The plaintiffs have not and cannot point to any actions taken by the OES or Hade to enforce the Dissemination Restriction, Code § 17.1-242(H). The OES provides the technology platform through which the circuit court clerks may elect to provide access to OCRA. But "[e]ach participating clerk ultimately determines who is authorized to access the clerk's records via OCRA." (ECF No. 1-2, ¶ 40) Virginia law grants circuit court clerks the exclusive legal custody of all records filed in their respective circuit courts, including "records stored in electronic format *whether the storage media for such electronic records are on premises or elsewhere*." Code § 17.1-242. (emphasis added). Because Virginia circuit court clerks possess exclusive statutory authority to enforce the Dissemination Restriction, the Executive Secretary does not have a "special relation" with OCRA under *Ex parte Young* jurisprudence. Code § 17.1-293(H)(

Similarly, Plaintiff cannot show that Defendant Karl Hade has "acted or threatened" to enforce any policies related to OCRA access. The statute at issue provides a single method of enforcement – denying future OCRA access.  Va. Code § 17.1-293(H) (granting the clerk "his

discretion" authority to "deny secure remote access to ensure compliance with these provisions).

And only circuit court clerks determine who may receive access. As explained in Exhibit 2 to the

Complaint:

> If a clerk determines that a subscriber is authorized to have access to OCRA, pursuant to and in compliance with applicable law, then that subscriber will be provided access to OCRA. OES does not in any way evaluate or screen potential subscribers once the clerk determines they are authorized. OES receives the name and email addresses of subscribers but does not receive other information and does not know if a subscriber is a licensed attorney.

ECF No. 1-2, ¶ 41. In short, the plaintiffs have conceded that Defendant Hade and the OES have

no authority to enforce the Dissemination Restriction.

Accordingly, the Executive Secretary cannot be a proper party to this suit under *Ex parte*

*Young*. The Eleventh Amendment bars this suit and the claims against Defendant Hade should be

dismissed pursuant to Rule 12(b)(1).

C.    Code § 17.1-293(H) regulates lawyer conduct, not speech.

Plaintiffs cannot make a valid First Amendment challenge to Code § 17.1-293(H)

because the statute is a restraint on conduct, not speech. The core of Plaintiffs' claim is that the

Dissemination Restriction is a statute that "punish[es] the publication of truthful information."

ECF No. 1, ¶ 88. This is simply a mischaracterization of the function of the Dissemination

Restriction, because there is no restriction on the dissemination of information gleaned from

court records. Instead, there is a restriction on downloading data from an OCRA database and

disseminating it to third parties. This is not a restriction on content. Instead, it is a restriction on

sharing unredacted digital court records that can contain information that is particularly

vulnerable to exploitation that is not present for the same information when accessed at the

courthouse and shared only on paper.

10

To determine the meaning of any statute, including whether it is a regulation on conduct or speech, a court should "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158 (1990). The public policy behind the various subsections of Code § 17.1-293 demonstrates a concern with the dissemination of digital court records containing unredacted sensitive information, not an attempt to restrict the sharing of truthful information relevant to the public interest. It is a regulation of a particular medium, not of a particular message.

Virginia law treats digital court records differently than the same information accessible at the courthouse because of the significant state interest in protecting digital records from a unique form of data harvesting. *See Smith*, 126 F.4th at 910-11. The digital records "are uniquely susceptible to a practice known as 'data mining' or 'data harvesting,' which facilitates easy identification, collection, and misuse of sensitive personal information." *Id.* at 911. Unlike the same information accessed through a terminal at the courthouse or on paper, digital records are vulnerable to data mining because automated computer programs can search through large masses of data in a database for personally identifiable information ("PII") that "can then be used to enable identity theft and other types of fraud and exploitation." *Id.* In *Smith*, the Commonwealth provided evidence that other online records systems have been subject to data mining, despite various preventive measures that the Commonwealth has imposed to prevent data mining. *Id.* at 911-12. As a result, the Fourth Circuit upheld the restriction on public access for unredacted digital court records as "narrowly tailored to serve the Commonwealth's important interests in protecting sensitive personal information and promoting the orderly and efficient administration of justice." *Id.* at 917.

Virginia's system restricts the access to court records with unredacted PII to attorneys, their staff, and certain other government employees because if the information is downloaded and misused, attorneys are "a self-policing, pre-vetted group subject to . . . serious professional sanctions for violating [the] Rules [of Professional Conduct]." *Id.* at 912. Allowing attorneys and government employees access, however, rather than no one at all, facilitates the efficient and orderly administration of the court system. *Id.* In this way, Code § 17.1-293 balances competing public policy interests: protecting litigants from the types of data mining and exploitation of PII unique to digital records, especially court records, while using the convenience of databases of online court records to facilitate the efficient administration of the court system for attorneys, their staff, and government employees. *Id.* at 914.

Thus, the statute at issue, as a whole, is crafted to "not burden substantially more access to court records than necessary to further the government's interests in protecting sensitive [PII] and facilitation the orderly and efficient administration of justice." *Id.* The law was enacted to address a specific "online danger" that is not present when the same information is accessible in person via computer terminal in the courthouse or on paper printouts. *Id.*

If attorneys could grant access to digital court records by downloading them and providing them to anyone who hired them to do so, it would defeat this delicate balance. The hazard Virginia is trying to prevent is widespread access to digital court records that are vulnerable to exploitation without restricting access to the information contained in those records. *Id.* at 916. The restriction in Code § 17.1-193(H) is a restriction on distributing digital files downloaded from OCRA, not a restriction on disseminating the information contained in court records however obtained, because the exact information is available to anyone at the courthouse. *Id.* at 916. The Plaintiffs are deliberately misapplying the Dissemination Restriction

to apply to even a lawyer preparing a summary of the contents of a petition for a client. ECF No. 1, ¶¶ 84-85.

Virginia is regulating the ability of a lawyer with privileged access to a database of digital court files containing unredacted sensitive PII to disseminate those digital files to third parties. This is a conduct restriction, not a prior restraint of the lawyer's speech about the information he learns from court filings. Therefore, there are no Free Speech protections for the conduct being regulated. Hade therefore respectfully requests that this case be dismissed for failure to state a claim for violations of the Plaintiff's First Amendment rights.

D.    The challenged statute is not a "prior" restraint on free speech.

Plaintiffs couch their challenge to the Dissemination Restriction as a "prior restraint on free speech" because prior restraints are particularly disfavored. ECF No. 1, ¶ 87. A prior restraint on speech refers to either administrative or judicial orders that forbid certain types of speech or expressive conduct, such as a public parade, in advance the speech or conduct is to occur. *Alexander v. United States*, 509 U.S. 544, 550 (1993). A restraining order or permanent injunction are typical examples of a prior restraint on free speech. *Id.* Licensing schemes and permitting requirements, in which a speaker must apply for a license granted at the discretion of the government, is another type of common prior restraint. *See, e.g., City of Lakewood v. Plain Dealer Publ'g. Co.,* 486 U.S. 750, 755–56 (1988); *Sec'y of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 964 (1984); *Green v. City of Raleigh*, 523 F.3d 293, 300-01 (4th Cir. 2008) (holding that parade permits are constitutional if content-neutral with appropriate procedural safeguards).

These prior restraints are distinct from contracts or statutes that punish speech after it occurs, such as civil forfeiture for dealing in contraband pornography that was part of a larger criminal scheme. *Alexander*, 509 U.S. at 553. Another example is the non-disparagement clause

in the settlement agreement signed in *Overbey*. *Overbey v. Mayor of Balt.*, 930 F.3d 215, 222 (2019). Plaintiff Overbey settled a police brutality case against the Baltimore Police Department. *Id.* at 220. The settlement agreement included a non-disparagement clause, which imposed a severe financial penalty if the plaintiff disparaged the police department after the settlement. *Id.* The plaintiff publicly countered a newspaper story about her case and in her public comments she disparaged the police. *Id.* As a result, she forfeited half her settlement. *Id.* The non-disparagement clause was not a prior restraint on free speech. It was a waiver of the plaintiff's constitutional rights with a penalty if she violated that contractual agreement. *Id.* at 223.[2]

The statute at issue is not a prior restraint on free speech. It does not require a license or pre-approval for attorneys with OCRA access to speak. At most, if the attorney is found to be downloading and selling the digital court records to third parties, a clerk may choose in their discretion to revoke the attorney's access to OCRA. Code § 17.1-293(H). This measure is not punitive as much as it simply prevents the attorney from further impairing the privacy rights of litigants, which is the purpose of the Dissemination Restriction. *Smith*, 126 F.4th at 912. Therefore, the statute has none of the hallmarks of a prior restraint of free speech and cannot be invalidated on that basis.

E.    Plaintiffs fail to state a facial challenge to Virginia Code § 17.1-293(H).

Plaintiffs allege they are challenging the Dissemination Restriction as set forth in Code § 17.1-293(H) on its face and as applied. ECF No. 1, ¶ 87. Even if the Dissemination Restriction were a regulation of speech and not conduct, Plaintiffs have failed to state a valid claim that the Dissemination Restriction is invalid on its face.

_____

[2] The clause was ultimately held to be unenforceable because it was against public policy, but it was not a prior restraint. *Id.* at 225.

First, a facial challenge to a statute "typically requires a showing that 'no set of circumstances exists under which the Act would be valid, i.e., that the law is unconstitutional in all of its applications. *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020). This is a deliberately high bar, because "facial challenges 'run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law that is broader than is required by the precise facts to which it is to be applied.'" *Id.* (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008)).

In the context of a First Amendment facial challenge, however, courts have entertained facial challenges based on "hypothetical application of the law to nonparties" only if the statute is invalid because it is overbroad in that "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* at 530 (internal quotations omitted). To prevail on a facial overbreadth challenge, the statute's overbreadth must be substantial, "not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Id.* at 531 (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)). The Plaintiffs' First Amendment facial challenge to the statute at issue must depend on the law's hypothetical application to nonparties, because they do not have standing to challenge the law's application to their own conduct because they do not have access to a secure remote database of digital court records. *Smith*, 126 F.4th at 917. The Plaintiffs' only possible claim must depend on facial overbreadth.

An analysis of whether a statute is facially overbroad has several steps. *Id.* at 531. First, a court must construe what speech the statute restricts and whether the statute "is subject to a limiting instruction." *Id.* (internal quotations omitted). Second, whether the statute as construed

"criminalizes a substantial amount of protected expressive activity." *Id.* (internal quotations

omitted). Finally, if the statute is overbroad, a court must determine if the unconstitutional

restriction can be severed from the whole and only invalidate the portion that is overly broad. *Id.*

at 532. "Altogether these efforts to preserve a statute from facial invalidation reflect the notion

that the overbreadth doctrine is strong medicine to be applied only as a last resort in cases where

it is truly warranted." *Id.* (quotations omitted).

As discussed above, in context the statute is not restricting any speech, only the

downloading and dissemination of digital copies of court records containing sensitive PII that

has not been redacted to third parties who would otherwise not be authorized to access the digital

databases. The statue is intended to protect the sensitive information in court records when it is

in a digital format that is particularly vulnerable to data mining and exploitation. *Smith*, 126

F.4th at 911. To the degree that the dissemination of electronic court records is "speech," the

restriction applies only to digital records and only to those records accessed by a lawyer through

"secure remote access" rather than through another channel or even digital records the attorney

retained because they were the filing attorney. Code § 17.1-293. At best, this is a content-neutral

time, place, and manner restriction. *Hade*, 631 F. Supp. 3d at 368. At the trial court level, the

court found the burden the Dissemination Restriction posed on speech to be "relatively small"

because non-lawyers who did not have secure remote access could "sell, post, or redistribute" the

information obtained in person at the courthouse without restriction. *Id.* at 369. Thus, the

restriction at issue is subject to limiting language: it applies only to the digital court records, not

court records more broadly, and it only applies when those digital records were obtained by

secure remote access to the court's database, and not any other method.

The facial challenge fails most clearly on the second prong, however. The statute being challenged does not criminalize any behavior. Instead, the Dissemination Restriction simply gives court clerks the discretionary authority to revoke access to their OCRA database if a lawyer disseminates data to third parties. Code § 17.1-293(H). Although Plaintiffs pleaded that the Commonwealth's position is that "Virginia attorneys who violate the Dissemination Prohibition could be disbarred," ECF No. 1, ¶ 61, this is a clear mischaracterization of what would trigger a sanction under the Rules of Professional Conduct.

The Fourth Circuit held that restricting access to attorneys protected "against data mining and misuse of sensitive personal information by confining remote online access to" attorneys who were subject to disciplinary action if they violated the Rules of Professional Conduct. *Smith*, 126 F.4th at 912. Even the Plaintiffs note in a footnote that professional misconduct that could result in professional sanctions by the Virginia State Bar under the ethics rules would have to involve "a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law. ECF No. 1, 22 n. 1 (quoting Va. R. Prof. Conduct 8.4(b)). Thus, for even a non-criminal regulatory sanction by the Virginia State Bar, a lawyer would not have to merely violate the Dissemination Restriction but do so as a knowing part of an effort to mine the disseminated digital files for sensitive personal information and misuse it. *Smith*, 126 F.4th at 912. There is simply no criminal, civil, or even administrative penalty for violating the statute unless a person also violates other applicable laws, rules, or regulations. Therefore, the challenged statute cannot be facially overly broad – it simply does not criminalize or penalize speech at all. The only sanction discussed in the statute itself is discretionary and is simply loss of access to the secure online court records database.

Because the statute does not criminalize or penalize any speech, there is no basis to reach the third prong, which is to determine if the unconstitutional provision can be severed from the statute as a whole. Regardless, the statute fails the three-prong test articulated by the Fourth Circuit in *Miselis* to determine if a statute is an unconstitutionally overbroad restriction on speech. Therefore, the Plaintiffs' facial challenge fails.

      F.      <u>Plaintiffs fail to state a constitutional challenge to Code § 17.1-293(H) as applied.</u>

Plaintiffs also claim to challenge the Dissemination Restriction "as applied." ECF No. 1, ¶ 87. Although the statute itself has not been applied to the Plaintiffs, they assert that the Dissemination Restriction is "imposed and enforced by Defendants in OCRA subscriber agreements." ECF No. 1, ¶ 87. There are two fatal flaws with the Plaintiffs' "as applied" challenge, however. The first is that the statute has not been "applied" to them. Secondly, Lacy is not a "speaker" within the meaning of the First Amendment from which they could claim derivative standing as would-be consumers of his message.

The Fourth Circuit has already held that CNS lacked standing to challenge the dissemination "because it applies only to individuals with remote online access to court records." *Smith*, 126 F.4th at 917. Thus, Lee Enterprises and Lee BHM LLC also lack standing, because they similarly lack remote online access to court records. ECF No. 1, ¶ 66.

Instead, the Plaintiffs claim they have cured their standing problem by claiming injuries as a potential consumer of speech. ECF No. 1, ¶ 90. The First Amendment does protect not only speakers, but the rights of consumers of speech. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 756-57, 96 S. Ct. 1817, 1823 (1976). The Fourth Circuit held that for a plaintiff "to have standing to assert a right to receive speech, a plaintiff must show that there exists a speaker willing to convey the information to her." *Smith*, 136 F. 4th at 917. To cure

18

the defect identified by the court in their last attempt to challenge the Dissemination Restriction, in the current suit Plaintiffs identify David Lacy as a Virginia-barred attorney who has access to some jurisdictions' OCRA databases. ECF No. 1, ¶¶ 11-12. They identify Lacy as the speaker willing to convey information to them but for the Dissemination Restriction. ECF No. 1, ¶¶ 11-12.

Lacy is not clearly a speaker engaging in speech, however, from which Plaintiffs could derive a claim as consumers. Publishers of speech are entitled to the protection of the Free Speech provision of the First Amendment either by publishing original work or by exercising editorial discretion over which messages to publish. *See Moody v. NetChoice, LLC*, 603 U.S. 707, 728 (2024) (holding that a regulation applying to a party republishing someone else's content implicates the First Amendment when the publisher is engaged in his own expressive activity, which includes "presenting a curated compilation of speech originally created by others."). But under the facts as alleged by the Plaintiffs, Lacy is not "curating" or editing the pleadings. Instead, he would simply provide the specific, unaltered pleading requested by the Plaintiffs after downloading it from an OCRA database.

Federal law defining when people are "speakers" or "publishers" of digital information followed the same fundamental formula when Congress enacted the Communications Decency Act, 42 U.S.C. § 230. In the Communications Decency Act, Congress expressly stated that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider" even if the user or provider had basic restrictions to ensure that the information shared through the interactive computer service was not obscene. 42 U.S.C. § 230(c)(1). With the ease of sharing digital content, simply

republishing the content created by others, without exercising more than basic editorial discretion to prevent the republication of obscenity, does not make one a speaker.

Under the facts as alleged in the Complaint, Lacy is not a speaker from whom the Plaintiffs can claim derivative Free Speech protections as consumers of his "speech," because Lacy does not "speak" within the meaning of the First Amendment. As alleged, Lacy does not seek to send out pleadings he has downloaded of his own choosing. Instead, Plaintiffs allege that they contacted Lacy and affirmatively asked him to download and distribute pleadings that the Plaintiffs or their employees want to read. ECF No. 1, ¶¶ 11-12, 43. Furthermore, CNS alleges that in Texas it simply hired a Texas-barred attorney whose job was to download pleadings from Texas's restricted court database to distribute to other CNS employees. ECF No. 1, ¶ 44. They allege they would do the same if the Dissemination Restriction was invalidated. ECF No. 1, ¶ 44. The lawyer in the hypothetical, or in the real-world examples cited in the Complaint of Lacy and CNS's Texas counsel, do not select what pleadings to "publish" to the Plaintiffs. Instead, they acquiesce to Plaintiffs' requests for specific content. There is no editorial discretion in selecting pleadings to share or exclude. To the degree that Plaintiffs may seek copies of pleadings Lacy drafted himself, Lacy would not have to use OCRA to obtain an electronic copy to share. Thus, Lacy and the other actual and hypothetical lawyers hired by the Plaintiffs to download and share pleadings from secure court databases are not engaged in the types of editorial activities that have traditionally been classified as protected speech or expressive activity by a publisher.

On the other hand, Lacy and his colleagues do fit within the Communications Decency Act as a user who is simply providing a conduit for content created by another user of the same interactive internet database. 42 U.S.C. § 230(f)(2), (3). Under Federal law, they are not "speakers" for simply providing access to the content created by someone else and shared via the

internet. 42 U.S.C. § 230(c)(1). Lacy is not entitled to the protections of the First Amendment, but he is also shielded from liability for any inaccuracies or defamatory information in the pleadings he would share only by express request of a client. *Id.*

Plaintiffs may point to allegations that Lacy is sometimes asked to prepare a summary of the allegations in a pleading if he believes he is contractually prohibited from providing the pleading itself. ECF No. 1, ¶ 79. Lacy's own summaries of pleadings that he has prepared are clearly protected speech but Plaintiffs cannot cite to any occasion any of the Defendants have ever penalized an attorney for providing a summary of a pleading downloaded from OCRA under the Dissemination Restriction or the applicable OCRA user agreements. The law and the user agreements have simply never been applied or interpreted that way by the Defendants. Therefore, Lacy, and by extension the Plaintiffs, cannot claim the Defendants' past application of the Dissemination Restriction to lawyer-prepared summaries of pleadings downloaded from OCRA chill their engagement in lawful speech.

In short, Plaintiffs continue to lack standing to challenge the Dissemination Restriction on an as applied basis because they do not have access to the content to which the Dissemination Restriction applies. They cannot claim derivative status because the Dissemination Restriction impairs them from consuming the content of a would-be speaker because they have not identified a person who qualifies as a "speaker" under federal law. Finally, to the degree they have alleged a "chilling effect" on a lawyer preparing original summaries of pleadings he downloaded from OCRA, that effect is not the result of the plain language of the statute or any application of the statute to anyone, anywhere by the Defendants. Therefore, Plaintiffs have failed to state a claim for impairment of their First Amendment Rights.

G.    Code § 17.1-293(H) is a reasonable time, place, and manner restriction.

Even if Plaintiffs had standing to bring an as applied challenge and Lacy was a speaker for the purposes of a First Amendment analysis, the Dissemination Restriction in Code § 17.1-293(H) would be constitutional. First, it is as reasonable a time, place, and manner restriction as the Access Restriction upheld by the Fourt Circuit in *Smith*. The Dissemination Restriction closes a loophole that CNS admits it exploits in Texas. Secondly, the Dissemination Restriction is the product of a voluntary agreement between the court clerks and attorneys in order for the attorney to obtain the privilege of access to the clerk's OCRA database. Citizens can enter into knowing and voluntary agreements with a governmental entity to waive constitutional rights they otherwise have.

The Eastern District previously upheld the Dissemination Restriction as a reasonable time, place, and manner restriction in prior litigation between CNS, a circuit court clerk, and the Commonwealth. *Hade*, 631 F. Supp. 3d at 370. Although this holding was reversed on appeal, the reversal was because CNS did not have standing to challenge the Dissemination Restriction, not because the Dissemination Restriction was unconstitutional. *Smith*, 126 F.4th at 917.

The reasoning of the overturned *Hade* decision applies with equal force to the present lawsuit. The challenged statute does not punish "the press or the public [for] publishing legally obtained, truthful information." *Hade*, 631 F. Supp. 3d at 368. The trial court saw the inherent question posed by the Plaintiffs as "whether the First Amendment provides . . . a member of the public a right to sell, post, and redistribute information obtained from *electronic* civil court records while it may already sell, post, and redistribute information obtained *physically* from the courthouse." *Id.* Thus, the court viewed the Dissemination Restriction as a time, place, and manner restriction on speech, subject to relaxed scrutiny. *Id.* The Dissemination Restriction is

22

consent neutral because it was not adopted out of "disagreement with the message" but "to promote the fair and orderly administration of justice by protecting citizens' privacy and security and ensure the orderly and efficient administration of its justice system." *Id.* at 369. The statute "treats all electronically accessed civil court records the same." *Id.*

The court in *Hade* also expressly held that the Dissemination Restriction was narrowly tailored to serve a significant government interest "that would be achieved less effectively absent the regulation." *Id.* Because the "express purposes in creating this regulation are the same justifying the attorney-access restriction," the state interest is just as substantial. *Id.*

The court then analyzed whether the State had met its burden in showing that the restriction "materially advances" the substantial interest "by redressing past harms or preventing future ones." *Id.* (internal quotation omitted). The court found that the State had met this burden by appealing to "common sense and logic" which "support the notion that if any individual with electronic access to all nonconfidential civil court records could freely sell, post, or redistribute such data to third parties, it could jeopardize citizens' privacy and security as well as the orderly and efficient administration of its justice system." *Id.* Access only at the courthouse "serves as a bulwark against widespread dissemination of [the] private information" contained in court records. *Id.* The Complaint in the instant case contains an admission that this Dissemination Restriction is necessary to prevent attorneys from bypassing the access restriction contained in Code § 17.1-293(E)(7). CNS openly admits that but for the Dissemination Restriction it would. simply hire a Virginia-licensed attorney as a reporter and have that person download filings on OCRA, as they do in Texas. ECF No. 1, ¶ 44.

Finally, the *Hade* court concluded that the Dissemination Restriction does not burden substantially more speech than necessary because it applies only to records obtained

electronically and not records obtained physically at the courthouse. *Hade*, 631 F. Supp. 3d at 370. The Dissemination Restriction "does no more than prevent the mass publication of Virginians' private information from being posted online and the likely data mining that would result, which is the exact source of evil it seeks to remedy." *Id.* (internal quotations omitted).

Notably, the *Hade* court relied on the fact that "a quick review of CNS's website shows that in addition to publishing news articles, it markets a case search engine–'CasePortal'—to anyone who subscribes to CNS. If CNS, or any other third party, were given access to the civil court records, there would be nothing stopping such entities from downloading all the all content from the clerk's software, only paying one fee, then posting such information on their own website for profit, exploitation, or to sell such information to third parties," but restricting all access to online digital court records would impede the efficiency of the judicial system. *Id.* at 365. Thus, the restrictions on access and dissemination thread the needle between the competing public policies of preserving privacy of litigants' information and promoting efficiency in the justice system.

Because the analysis that supported the *Hade* court's opinion that the Dissemination Restriction holds with equal force now that CNS has attempted to cure its standing problem, this Court should reach the same result the Eastern District did should it reach the question. The Dissemination Restriction, to the degree it restricts speech and not conduct and to the degree the Plaintiffs have standing to challenge it, is a reasonable time, place, and manner restriction that supports the Access Restriction that has already been affirmed as constitutional by the Fourth Circuit.

H.    <u>The Dissemination Restriction is a voluntary waiver of a right to publish court
records knowingly made to gain privileged access.</u>

Even if all the above were set aside, at bottom, the user agreements Lacy signed in order
to gain access to OCRA for various Virginia jurisdictions is an enforceable waiver of his right to
free speech. "It is well-settled that a person may choose to waive certain constitutional rights
pursuant to a contract with the government." *Overbey*, 930 F.3d at 223. Not all waivers are
constitutional, even if the contract is otherwise valid. *Id.* To be enforceable, the waiver must
meet two conditions. *Id.* The first is that it must have been made "knowingly and voluntarily."
*Id.* Secondly, "the interest in enforcing the waiver" cannot be "outweighed by a relevant public
policy that would be harmed by enforcement." *Id.* In the case at bar, both conditions are easily
met.

There is no question that the waiver of any purported constitutional right to disseminate
the digital files downloaded from OCRA was entered into by Lacy and other Virginia lawyers
knowingly and voluntarily. The restriction on dissemination of OCRA materials is publicly
available in the statute being challenge. Code § 17.1-293(H). Plaintiffs included the user
agreements that are used by the defendant Clerks. ECF No. 1-4; ECF No. 1-5; ECF No. 1-6.
Each agreement includes the prohibition on sharing login information or selling or posting the
information accessed on the internet or distributing the data to a third party. ECF No. 1-4, 5; ECF
No. 1-5, 5; ECF No. 1-6, 5. The user agreements are between the Clerks and a sophisticated
group: licensed Virginia lawyers, who by definition have a demonstrated competency in
contracts and constitutional law.

The user agreements are also clearly voluntarily entered into by the users. There is no
basis to claim duress, for example. The same information is available at the courthouse, thus
OCRA access is not strictly necessary to access court records. *Smith*, 126 F.4th at 905. Instead, it

simply facilitates the efficient administration of the court system by permitting attorneys to

access the records in a convenient digital format and outside of business hours. *Id.* at 906.

The waiver of the purported right to disseminate the digital records from OCRA also

meets the second prong of enforceability because the public interest is better served by

enforcement than non-enforcement. *Overbey*, 930 F.3d at 223. The Fourth Circuit's opinion in

*Smith* analyzed the benefits of restricting public access to digital court files at length. *Smith*, 126

F.4th at 910-12. The Dissemination Restriction simply closes a loophole to prevent lawyers with

access from disseminating the digital files in a way that would make them accessible to the

general public, such as by posting them on the internet or giving them to a third party that may

post them or exploit them. *Hade,* 631 F. Supp. 3d at 368-70.

Plaintiffs argue that the public policy against enforcement would allow journalists to

more easily report on new pleadings at a lower cost to their employers by allowing them to avoid

travel costs or even employ fewer reporters overall. ECF No. 1, ¶¶ 45-51, 70-73, 75. Notably,

however, these interests all accrue benefits to the corporate employers of journalists, by making

reporting faster, cheaper, and by allowing fewer reporters to cover a greater geographical area.

The ability of reporters to access the information and report on the contents of court filings

remains unfettered, however. There is no infringement on the right to a free press. Only an

impediment to a profitable press. Thus, Plaintiffs have identified a corporate interest and not

necessarily a public one.

The balance of these interests demonstrates the public interest in maintaining the

Dissemination Restriction as it applies only to digital versions of court records that were

obtained through the court's own secure remote servers. Because both qualifications are met for

enforceability of Lacy's waiver of any possible constitutional right in disseminating the records

he can access through OCRA, the waiver is constitutional and enforceable.

V.      CONCLUSION

For the reasons stated above, Hade respectfully requests that this Court dismiss the case

with prejudice if it finds the Plaintiffs have standing to bring their claim at all.


                                        Respectfully submitted,


Jerrauld C.C. Jones                     KARL R. HADE

   *Attorney General of Virginia*       By Counsel:


                                        _____/s/ Erin R. McNeill_____
Gretchen E. Nygaard                     Erin R. McNeill (VSB# 78816)*
                                        Senior Assistant Attorneys General
   *Deputy Attorney General*            Office of the Virginia Attorney General
                                        202 North 9th Street
                                        Richmond, Virginia 23219
Jacqueline C. Hedblom                   Telephone (ERM): (804) 692-0598
                                        Facsimile (ERM): (804) 371-0200
   *Senior Assistant Attorney General*  Email (ERM): EMcneill@oag.state.va.us
                                        *Counsel of Record for Hade*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2026, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to counsel of record.


                                        /s/ Erin R. McNeill_____
                                        Erin R. McNeill (VSB No. 78816)
                                        Senior Assistant Attorney General