**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

COURTHOUSE NEWS SERVICE, *et al.*,

      Plaintiffs,

v.                                      Civil Action No. 1:25-cv-75-JPJ-PMS

KARL R. HADE, *et al.,*

      Defendants.

## MEMORANDUM IN SUPPORT OF THE CLERKS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(1)

Defendants Edward Jewett, in his official capacity as Clerk of the Circuit Court for the City of Richmond ("Jewett"), Brenda Hamilton, in her official capacity as Clerk of the Circuit Court for the City of Roanoke ("Hamilton"), and Kelly Flannagan, in her official capacity as Clerk of the Circuit Court for the City of Bristol ("Flannagan") (collectively, the "Clerks") file this Motion to Dismiss based on Eleventh Amendment immunity and Plaintiffs' lack of standing and ripeness.

### INTRODUCTION

Plaintiffs assert a First Amendment prior restraint challenge to Virginia Code § 17.1-293(H) and the Officer of the Court Remote Access ("OCRA") system—both of which authorize and provide Virginia attorneys to have remote online access to court records. Although that statute does not prohibit public access to court records at the physical courthouse, it gives discretionary authority to the Clerks to revoke an attorney's OCRA access for sending an OCRA-accessed pleading to a third party. This Court lacks subject-matter jurisdiction, for three reasons.

First, the Eleventh Amendment immunizes the Clerks from suit in federal court. Although Plaintiffs may invoke the *Ex parte Young* exception to this immunity, that narrow exception does not apply to "the exercise of the discretion of an officer," *Ex parte Young*, 209 U.S. 123, 158

1

(1908), and Virginia Code § 17.1-293(H) permits a clerk to revoke OCRA access, "in his discretion." The Eleventh Amendment thus applies.

Second, Plaintiffs lack standing. In a related case, the Fourth Circuit held that Plaintiffs lack standing to challenge Virginia Code § 17.1-293(H)'s prohibition on sending OCRA pleadings to third parties—termed the "Dissemination Restriction"—because it "does not impose any restraint on Courthouse News's speech"; rather, it only regulates Virginia attorneys. *Courthouse News Serv. v. Smith*, 126 F.4th 899, 917 (4th Cir. 2025). The current Complaint attempts to remedy this defect by asserting a third party standing theory to vindicate their attorney's interests.

But the Complaint fails to show that the Clerks have asserted any "imminent" and "credible threat of enforcement" to revoke their attorney's OCRA access. *See Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 547 (4th Cir. 2010). The Complaint also fails to show a prior restraint injury because Plaintiffs can access the "same" court pleadings at each courthouse in person. Compl. ¶ 66; Ex. 2, ¶ 49; *see Covenant Media of N.C., L.L.C. v. City of Monroe*, 285 F. App'x 30, 36-37 (4th Cir. 2008) (unpublished opinion). More fundamentally, Plaintiffs are not vindicating their attorney's individual interests. Instead, *Plaintiffs* are directing their lawyer to send them the OCRA pleadings—Plaintiffs are thus advancing their own interests via an agent. *See Newman v. Newman*, 42 Va. App. 557, 567 (2004) (courts "treat an attorney as *legally synonymous* with his or her client").

Third and finally, the Complaint's as-applied prior restraint challenge is not ripe because neither Plaintiffs nor their attorney "claim that they are presently subject to an injunction under the [challenged statute] or that one is being sought against them." *See Woodall v. Reno*, 47 F.3d 656, 658 (4th Cir. 1995). This Court should accordingly dismiss this lawsuit against the Clerk defendants for lack of subject matter jurisdiction.

2

**BACKGROUND**[1]

Plaintiff Courthouse News is a 35 year-old California corporation that summarizes civil court pleadings and court cases. Compl. ¶¶ 29-31. The remaining Plaintiffs are part of Lee Enterprises, Inc., which "is the fourth largest newspaper publisher" in the country. Compl. ¶ 45.

The Clerks are responsible for the maintenance and administration of court records, including court filings and pleadings, in their respective jurisdictions. Compl. ¶¶ 21, 23, 25. Jewett, Hamilton, and Flannagan are the elected clerks for the Circuit Courts of Richmond City, Roanoke City, and Bristol City, respectively. *Id*.

### A. Plaintiffs Have Access to Civil Court Records at the Courthouse.

Court pleadings and records are available to the public at each "physical courthouse" in which the record is stored. Compl. ¶¶ 63, 66; Ex. 2, ¶ 24. Such records can be accessed via "courthouse public access terminals" or "in person." Compl. ¶¶ 63, 70.

Plaintiffs can access, and have accessed, court pleadings and records by visiting Virginia circuit court courthouses in person. Compl. ¶¶ 36, 45, 47. Plaintiffs' employees, for instance, "visit[] their assigned court on a daily or weekly basis to review all the complaints filed." Compl. ¶ 36; *see id.* ¶¶ 45, 47. In fact, over a five-day period, Plaintiffs' employees retrieved court pleadings and records from 25 courthouses across Western Virginia. Compl. ¶ 70; Ex. 6.

### B. Virginia Code § 17.1-293 Provides Requirements for Online Remote Access to Civil Court Records.

The General Assembly has passed various statutes regulating the ability of clerks to offer remote online access to "nonconfidential court records." *See* Va. Code §§ 17.1-225; -292.

---

[1] The following section is identical to the Background section in the Memorandum in Support of the Clerks' Motion to Dismiss Pursuant to Rule 12(b)(6) filed contemporaneously.

3

"Nonconfidential court records" are all court records and pleadings, except those deemed confidential via "applicable law or sealed pursuant to court order." Va. Code § 17.1-292(B); *see* Compl. Ex. 2, ¶ 10. For instance, "social security number[s] or other identification numbers"—such as a driver's license or banking number—are confidential and cannot be disclosed to the public, regardless of whether a court record is accessed electronically or physically. Va. Code § 17.1-293(A).

Clerks are not required to offer remote online access to nonconfidential records—it is discretionary. Va. Code § 17.1-225 ("[Clerks] *may* provide remote access, including Internet access, to all nonconfidential court records" (emphasis added)). There is no statutory restriction on who clerks can offer remote access to—be it an attorney or a member of the public. *See* Va. Code §§ 17.1-225, -293.

If a clerk decides to offer remote access, Virginia Code § 17.1-293 provides requirements for doing so. At the outset, remotely accessible records and pleadings cannot contain any person's signature, social security number, date of birth, maiden name of a parent, the name or age of a minor, or banking numbers. Va. Code § 17.1-293(B). Virginia-licensed attorneys and their agents, however, are exempt from this restriction and can view these unredacted records via remote access. Va. Code § 17.1-293(E)(7).

Subsection H—the provision challenged by the Complaint in this case—then states:

> Nothing in this section shall be construed to permit any data accessed by secure remote access to be sold or posted on any other website or in any way redistributed to any third party, and the clerk, *in his discretion, may deny secure remote access to ensure compliance with these provisions*. However, the data accessed by secure remote access may be included in products or services provided to a third party of the subscriber provided that (i) such data is not made available to the general public and (ii) the subscriber maintains administrative, technical, and security safeguards to protect the confidentiality, integrity, and limited availability of the data.

Va. Code § 17.1-293(H) (emphases added).

In sum, any person can access any court record or pleading in person at a courthouse, except for sealed or confidential records. Clerks may, in their discretion, offer remote online access to these court records and pleadings to any person, subject to the redaction of certain sensitive information. Virginia-licensed attorneys and their staff, however, may review unredacted court pleadings via remote access through OCRA. If an OCRA subscriber transmits a remotely accessed pleading to a third party, a clerk may, in the clerk's discretion, revoke their OCRA access. *See id.*

### C. Courts Records Accessed Via OCRA Are the Same as in the Physical Courthouse.

Of the clerks who offer remote access, the vast majority use the OCRA system. Compl. ¶¶ 53, 55. OCRA allows its users to view an "electronic image" scan of nonconfidential court records online. Compl. ¶ 53. Any person who wishes to use OCRA must seek approval from each individual court that provides such remote access. Compl. ¶ 58. For attorneys who use OCRA to remotely access court records and pleadings in Richmond, Bristol, and Roanoke, the Clerks typically require the attorneys to sign a subscriber agreement. Compl. Exs. 3–5. Such agreements limit OCRA access to only Virginia-barred and pro hac vice attorneys and their staff and select government agencies. Compl. ¶¶ 58–60.

"The documents on OCRA are the same documents that have been made available on courthouse public access terminals." Compl. ¶ 63. "There is no difference in the content of the court records that Plaintiffs and other members of the press and public must travel to each individual court to see . . . they are the same record." Compl. ¶ 66; Ex. 2, ¶ 49. The only difference "is the time, distance, and expense" to access a physical, versus an electronic, record. *Id.*

### D. Plaintiffs Lost Their First First Amendment Challenge to OCRA and Virginia Code § 17.1-293.

Courthouse News, one of the Plaintiffs in this case, previously filed a similar lawsuit in the Eastern District of Virginia challenging the constitutionality of the Access Restriction's limitation

of OCRA access to Virginia attorneys and the Dissemination Restriction of remotely-accessed civil court records in Virginia Code § 17.1-293(H). Courthouse News sued the Circuit Court Clerk in Prince William County, and the Commonwealth of Virginia intervened as a defendant. Courthouse News alleged that the Access Restriction deprived it of its First Amendment right of access to court records and violated the Equal Protection Clause by discriminating between attorneys and non-attorneys. *Courthouse News Serv. v. Smith*, 126 F.4th 899, 909 (4th Cir. 2025); *see* Compl. ¶ 5. Courthouse News similarly alleged that the Disseminiation Restriction violated its First Amendment rights. *See id.*

The Eastern District of Virginia granted summary judgment to the defendants and dismissed all these claims. *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349, 370 (2022) (Hudson, J.), *aff'm in part, vacated in part* 126 F.4th 899. The Eastern District upheld the Access Restriction and Dissemination Restriction as content-neutral time, place, and manner regulations that were justified by the Commonwealth's interests in the orderly and efficient administration of justice and narrowly tailored to the protection of sensitive personal information contained in court filings. *Id.* at 360–70.  The Court also reasoned that the Dissemination Restriction in Virginia Code § 17.1-293(H) does not prohibit Courthouse News from "redistribut[ing] information from civil court records obtained physically at the courthouse." *Id.* at 370.

On appeal, the Fourth Circuit affirmed Judge Hudson's decision that limited OCRA access to attorneys—the Access Restriction—did not violate the First Amendment or Equal Protection Clause. The Fourth Circuit reasoned that "[b]y limiting online access to this relatively small, vetted group of individuals [Virginia attorneys] who are strongly incentivized to follow OCRA's rules and who can be effectively disciplined for misconduct, the Access Restriction furthers the Commonwealth's interest in safeguarding sensitive personal information in court records."

6

*Courthouse News*, 126 F.4th at 913. As the Fourth Circuit observed, "attorneys and their staff do not pose the same threat to sensitive personal information as the public at large." *Id.* at 915.

Because Courthouse News lacked a constitutional right of access to OCRA, the Fourth Circuit accordingly concluded that Courthouse News lacked standing to challenge the Dissemination Restriction. *Id.* at 917. The Fourth Circuit reasoned that the Dissemination Restriction

> *does not impose any restraint on Courthouse News's speech*, because it applies only to individuals with remote online access to court records. Courthouse News does not currently have such access, and we have determined that it is not constitutionally entitled to receive that access.

*Id.* (emphasis added). Although CNS suggested that the dissemination restriction in Code § 17.1-293(H) indirectly injured it by hindering its ability to acquire electronic court records from its attorneys with OCRA access, the Fourth Circuit concluded that Courthouse News's assertion of derivative injury was "too speculative to support standing." *Id.*

### E. Plaintiffs Now Allege that Virginia Code § 17.1-293(H) Is a Prior Restraint of their Attorney's Speech.

Plaintiffs subsequently filed the current Complaint in this Court seeking to remedy the standing defect identified by the Fourth Circuit in its first lawsuit. Plaintiffs allege that they have asked their privately-retained Virginia attorney, David Lacy ("Mr. Lacy"), to provide them with certain civil court pleadings available through OCRA.[2] Compl. ¶ 11. The Complaint alleges that Mr. Lacy would have provided such pleadings, "but he was compelled to tell [Plaintiffs] that he is prohibited" by Virginia Code § 17.1-293(H) from doing so. Compl. ¶ 12. If Mr. Lacy had conveyed the pleading, Plaintiffs allege that he "*may* have [had his] access revoked" and "*may* [have been] subject to further sanctions, including disbarment." Compl. ¶¶ 4, 61 (emphases added).

---

[2] It is unclear from the allegations in the Complaint whether Mr. Lacy has an OCRA subscriber agreement in all three jurisdictions relevant to the Clerks.

7

The Complaint asserted a single First Amendment claim under 42 U.S.C. § 1983. Specifically, the Complaint asserts that the Dissemination Restriction in Virginia Code § 17.1-293(H) is unconstitutional on its face and as applied as a "prior restraint." Compl. ¶ 87. The Complaint accordingly requests this Court to declare Virginia Code § 17.1-293(H) unconstitutional and enjoin all enforcement thereof, "including disbarment" of attorneys for violating the dissemination restriction contained in Virginia Code §17.1-293(H). Compl. at 31–32.

## LEGAL STANDARD

Under Rule 12(b)(1), a plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed in one of two ways: either a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

Federal district courts are courts of limited jurisdiction: they possess "only that power authorized by Constitution and statute." *Gunn v. Minton*, 586 U.S. 251, 256 (2013) (citations and internal quotation marks omitted). "[I]f Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014). "Because jurisdictional limits define the very foundation of judicial authority, subject matter jurisdiction must, when questioned, be decided before any other matter." *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012). Accordingly, both Eleventh Amendment immunity and standing are threshold jurisdictional considerations for this Court to decide.

8

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018). *Roach v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996)

### ARGUMENT

This Court should dismiss the claims against the Clerks for three distinct reasons. First, the Eleventh Amendment bars this lawsuit against the Clerks, who are state officials. Second, Plaintiffs lack standing to litigate their claims against the Clerks. Third, the as-applied prior restraint challenge is not ripe.

### A.  THE ELEVENTH AMENDMENT IMMUNIZES THE CLERKS FROM SUIT IN FEDERAL COURT.

The Eleventh Amendment provides that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

The Eleventh Amendment, therefore, creates a form of "sovereign immunity" for "state agents and state instrumentalities." *Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019) (citation and internal quotes omitted); *Hussein v. Miller*, 232 F. Supp. 2d 653, 656–57 (E.D. Va. 2002). Neither a state, state entity, other "arm of the State," nor a state official in their official capacity, can be sued in federal court. *Alabama v. Garrett*, 531 U.S. 356, 363 (2001); *Singleton v. Md. Tech. & Dev. Corp.*, 103 F.4th 1042, 1047 (4th Cir. 2024).

Plaintiffs have sued the Clerks in their official capacities. Clerks of circuit courts in Virginia are state officials. *Nash v. Taylor*, Civil Action No. 5:12cv077, 2013 U.S. Dist. LEXIS 38765, at *5 (W.D. Va. Mar. 19, 2013); *Dowdy v. Virginia*, Civil Action No. 7:11-cv-00492, 2011 U.S. Dist. LEXIS 123345, at *6 (W.D. Va. Oct. 25, 2011). The Clerk defendants thus enjoy Eleventh Amendment immunity.

9

There are certain exceptions to that immunity, however. These include where Congress abrogates Eleventh Amendment immunity, the state waives immunity via statute, or the plaintiffs invoke the *Ex parte Young* exception. *See Garrett*, 531 U.S. at 363 (2001); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Ex parte Young*, 209 U.S. 123, 159-60 (1908).

Neither Congress nor Virginia have abrogated or waived Eleventh Amendment immunity as to § 1983 claims specifically. *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020); *Napier v. Ohai*, No. 7:23-cv-00098, 2025 U.S. Dist. LEXIS 190336, at *9 (W.D. Va. Sep. 26, 2025). The Complaint must exclusively rely on the *Ex parte Young* exception for Eleventh Amendment immunity to not apply.

1.  **The *Ex Parte Young* Only Applies to Threatened Enforcement Authority.**

The *Ex parte Young* exception "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom,* 290 F.3d 178, 184 (4th Cir. 2002). This exception permits suit only if a plaintiff seeks "prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). This exception, however, turns on the specific official sued, the official's relationship to the enforcement of a grant of authority, and the nature of that authority.

At the outset, the exception applies only to state officials with "some *duty* in regard to the *enforcement* of the laws of the state, and who *threaten and are about to commence* proceedings . . . to enforce against parties affected [by] an unconstitutional act.'" *McBurney*, 616 F.3d at 399 (emphases added) (quoting *Ex parte Young,* 209 U.S. at 155–56). The state official must, therefore, have "a special relation" with "the challenged *statute*," such that the official has both "proximity to and responsibility for the challenged state action." *Id.* (cleaned up and emphasis added). In other

10

words, *Ex parte Young* only applies to state officials who are specifically charged with enforcing the statute or authority that the plaintiff challenges.

For this reason, *Ex parte Young* "does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Whole Women's Health v. Jackson*, 595 U.S. 30, 39–40 (2021). Indeed, "state-court clerks . . . serve to file cases as they arrive, not to participate as adversaries in those disputes." *Id*. Clerks are not typically enforcers of the law.

But, even if a state official has some sort of enforcement power, that power cannot be discretionary:

> There is no doubt that the court cannot control the exercise of the *discretion* of an officer. It can only direct affirmative action where the officer having some duty to perform *not involving discretion*, but merely ministerial in its nature, refuses or neglects to take such action. In that case the court can direct the defendant to perform this merely ministerial duty.

*Ex parte Young*, 209 U.S. at 158 (emphases added). Thus, "to proceed under the *Ex Parte Young* exception, [a plaintiff] must challenge a ministerial, not discretionary, act by . . . a state official." *Brooks v. St. Charles Hotel Operating*, LLC, No. DLB-23-0208, 2023 U.S. Dist. LEXIS 171143, at *38-39 (D. Md. Sep. 26, 2023) (citing *Antrican v. Odom*, 290 F.3d 178, 191 (4th Cir. 2002)). In sum, *Ex parte Young* applies only where a plaintiff exclusively seeks prospective injunctive relief to enjoin a state official's ministerial enforcement, or threatened enforcement, of a state statute or authority.

Here, the Complaint seeks to enjoin two enforcement mechanisms: "disbarment" of Plaintiff's private outside counsel, and revoking OCRA access as provided in Virginia Code § 17.1-293(H). Compl. at 31–32. The *Ex parte Young* exception does not apply to either.

**2. The Clerks Lack Any Enforcement Relationship to Virginia State Bar Proceedings**.

The Complaint seeks to enjoin the Clerks from seeking "penalties including disbarment" of Mr. Lacy and Plaintiffs' other counsel for forwarding them pleadings accessed on OCRA. Compl. at 32; *see id.* ¶¶ 4, 61. Plaintiffs note that such penalties occur as a result of potential violations of Virginia "ethical rules," such as the Virginia Rules of Professional Conduct. Compl. ¶ 61, n.1.

The Clerks, however, lack any "duty in regard to the enforcement" of Virginia attorney disciplinary rules, including the Virginia Rules of Professional Conduct. *See McBurney*, 616 F.3d at 399.  The Clerks have no special "connection with the enforcement" of these rules, *see Ex parte Young*, 209 U.S. at 157, and attorney discipline—including disbarment—lies exclusively with the Virginia state bar.

Moreover, *Ex parte Young* applies only to a state official "who threaten[es]" or is "about to commence proceedings" to enforce an unconstitutional act. *McBurney*, 616 F.3d at 399. The Complaint fails to allege that the Clerks have threatened or are about to threaten disbarment of Mr. Lacy, or Plaintiffs' other outside attorneys with OCRA access, for sharing electronic court records with Plaintiffs. In fact, the Complaint fails to allege *any* imminent threat of such disbarment by any government authority.

The *Ex parte Young* exception thus does not apply to the Complaint's request for injunctive and declaratory relief regarding enforcement of the Rules of Professional Conduct, other ethical standards, or disbarment proceedings. The Eleventh Amendment therefore immunizes the Clerks' from suit regarding this relief.

12

**3.  *Ex Parte Young* Does Not Apply to the Clerk's Discretionary Authority Under Virginia Code § 17.1-293(H).**

The Complaint also seeks to enjoin the Clerks' authority in enforcing Virginia Code § 17.1-293(H) and, by extension, the subscriber agreements for OCRA access. As stated above, however, *Ex parte Young* does not apply to "the exercise of the discretion" of a state official. *Ex parte Young*, 209 U.S. at 158. Instead, a federal court can only enjoin a state official's "ministerial duty." *Id*.

In *Brooks v. St. Charles Hotel Operating*, for instance, a plaintiff sought to enjoin a sheriff from allowing certain use-of-force practices or from arresting persons based on a false report. 2023 U.S. Dist. LEXIS 171143, at *39. The District Court of Maryland held these acts involved the "exercise of discretion," and thus, the *Ex parte Young* exception did not apply. *Id.* at *39-40.

The Complaint seeks to enjoin the Clerks from revoking OCRA access pursuant to Virginia Code § 17.1-293(H), which states:

> Nothing in this section shall be construed to permit any data accessed by secure remote access to be sold or posted on any other website or in any way redistributed to any third party, and the clerk, *in his discretion, may deny* secure remote access to ensure compliance with these provisions.

(Emphases added.). According to the Complaint, if an individual violates this provision, that individual "*may* have their [remote] access revoked." Compl. ¶¶ 4, 61 (emphasis added).

The threatened enforcement authority at issue is the Clerks' power to revoke OCRA access. That authority, however, is discretionary. The statute specifically states that "the clerk, in his discretion, may" revoke such access. Va. Code § 17.1-293(H). The Complaint also admits that this power is discretionary by pleading that OCRA access "may" be revoked. Compl. ¶ 4. A federal court, however, cannot enjoin the Clerks' discretionary grants of authority.

Furthermore, the Complaint fails to plead any threatened enforcement action to revoke Mr. Lacy's OCRA access for sharing electronic court records with Plaintiffs. The Complaint does not allege or attach any actual subscriber agreement between the Clerks and Mr. Lacy, nor does it

13

attach any communication from the Clerks regarding Mr. Lacy's attempts to share or disseminate electronic court records obtained through OCRA with Plaintiffs.

Because Virginia Code § 17.1-293(H) is discretionary and the Complaint fails to allege any imminent enforcement thereof, the *Ex parte Young* exception does not apply, and the Eleventh Amendment insulates the Clerks from suit in federal court.

## B. PLAINTIFFS HAVE FAILED TO DEMONSTRATE STANDING.

Every plaintiff in federal court must satisfy three elements of standing under Article III of the Constitution:

> (1) an injury-in-fact that is "concrete and particularized and actual or imminent,"
> (2) "a causal connection between the injury and the conduct complained of" that renders the injury "fairly traceable" to the defendant's actions; and
> (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (identation and numeration added). The complaint must plead "necessary factual allegations" to support each of these elements. *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009).

Plaintiffs here do not assert standing on behalf of their own interests. Nor could they—the Fourth Circuit has already held that Plaintiffs lack any direct injury regarding the Dissemination Restriction in Virginia Code § 17.1-293(H) because it "does not impose any restraint on Courthouse News's speech." *Courthouse News Serv. v. Smith*, 126 F.4th 899, 917 (4th Cir. 2025). Instead, Plaintiffs claim "derivative" standing for the alleged injury that Virginia Code § 17.1-293(H) imposes on their attorneys, such as Mr. Lacy. Compl. ¶¶ 7, 90; *id.* at 24.

Ordinarily, a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Bishop*, 575 F.3d at 423; *see also Council v. Taxpayers for Vincent*, 466 U.S. 789, 796

14

(1984) (holding that a civil rights plaintiff "only has standing to vindicate his own constitutional rights"). This doctrine reflects

> a healthy concern that if the claim is brought by someone other than one at whom the constitutional protections is aimed, the courts might be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.

*Kowalski v. Tesmer*, 543 U.S 125, 129 (2004) (internal citations and quotation marks omitted).

Courts, however, recognize certain instances when a plaintiff can assert "third party standing" and litigate the rights of another. *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214 (4th Cir. 2020). Where a plaintiff challenges a regulation of "someone else, satisfying standing requirements will be substantially more difficult." *Frank Krasner Enters. v. Montgomery Cty.*, 401 F.3d 230, 234–35 (4th Cir. 2005) (internal emphasis, citations, and quotation marks omitted).

To advance this theory, and in addition to the Article III requirements above, a plaintiff must demonstrate:

(1) "the *litigant* suffered some *injury-in-fact*, adequate to satisfy Article III's case-or-controversy requirement"; and

(2) "prudential considerations which we have identified in our prior cases point to permitting the litigant to advance the claim," including:

    i. "the relationship of the litigant to the person whose rights are being asserted,"

    ii. "the ability of the person to advance *his own* rights," and

    iii. "the impact of the litigation on *third-party interests*."

*Caplin & Drysdale v. United States*, 491 U.S. 617, 623 n.3 (1989) (emphases, indentations and numeration added).

Courts have applied these third party standing requirements to First Amendment claims. The First Amendment protects "the communication" for the benefit of the speaker and listener.

*Stephens v. Cnty. of Albemarle*, 524 F.3d 485, 492 (4th Cir. 2008). A plaintiff thus has a "right to receive" the free speech at issue, if they can show a "speaker willing to convey the information" to them. *Id*. Specifically, plaintiffs must show "a concrete, specific connection to the speaker." *Murthy v. Missouri*, 603 U.S. 43, 75 (2024).

Under such a theory, the listener's right to receive speech is "entirely derivative" of the speaker's rights. *In re Application of Dow Jones & Co., Inc.*, 842 F.2d 603, 608 (2d Cir. 1988); *accord Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2007); *N.A.A.C.P., Los Angeles Branch v. Jones*, 131 F.3d 1317, 1322 & n.5 (9th Cir. 1997). The right to receive speech thus "cannot enlarge" the willing speaker's rights. *Animal Legal Def. Fund v. Schmidt*, 434 F. Supp. 3d 974, 995 (D. Kan. 2020). Put simply, "the right to listen depends entirely on the infringement on the rights of a willing speaker." *Pa. Family Inst*, 489 F.3d at 166. If the speaker has not "been subjected to sanctions," the plaintiff lacks standing. *Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007); *accord Stockton v. Brown*, 152 F.4th 1124, 1147 (9th Cir. 2025). Thus, if the willing speaker has suffered no injury, then neither has the listener.

In sum, to advance a First Amendment claim on behalf of another, a plaintiff must show, at a minium, (1) an Article III injury to the alleged third party speaker, (2) a resulting injury-in-fact to the plaintiff, and (3) sufficient facts that the plaintiff is adequately representing the "third party" interests at issue. The Complaint has failed to meet Plaintiffs' burden of proving all three of these requirements.

### 1. The Complaint Fails to Allege Imminent Enforcement Against Their Attorney.

To satisfy the injury-in-fact standing requirement, a party "must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L.

Ed. 2d 635 (2016) (citation and internal quotation marks omitted). In the *Ex parte Young* context—where a party exclusively seeks prospective injunctive relief—the party "must establish an ongoing or future injury in fact." *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018). The party cannot "rely on prior harms." *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018).

Instead, for a future injury, a party must show "imminent" and "certainly impending" harm. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006). "[F]ears of [future] enforcement that are 'imaginary' or 'wholly speculative' are insufficient to confer standing." *Rock for Life-UMBC v. Hrabowski*, 411 F. App'x 541, 547 (4th Cir. 2010) (unpublished opinion) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)).

Because Plaintiffs exclusively seek prospective relief, they must show "a credible threat of enforcement" that is "imminent." *See DaimlerChrysler*, 547 U.S. at 345; *Rock for Life-UMBC*, 411 F. App'x at 547. Because Plaintiffs derivatively seek to vindicate their private attorney's rights, they must demonstrate a credible threat of imminent enforcement against that attorney.

The Complaint alleges only two potential consequences for their attorney for hypothetically transmitting an OCRA record to Plaintiffs: a disbarment proceeding, and the Clerks' revocation of the attorney's OCRA access pursuant to Virginia Code § 17.1-293(H). The Complaint fails to allege any imminent enforcement of either.

First, the Complaint fails to allege any enforcement of a Virginia ethics or disbarment proceeding against their attorney. In fact, the Complaint fails to allege that *any* attorney has ever been disciplined by the Virginia State Bar for transmitting an OCRA pleading to a third party. The Complaint's alleged hypothetical disbarment proceeding is thus "wholly speculative" and does not satisfy the injury-in-fact requirement. *See Babbitt*, 442 U.S. at 302.

17

Second, the Complaint similarly fails to allege that the Clerks are about to enforce Virginia Code § 17.1-293(H) against Plaintiffs' private attorney, Mr. Lacy. Under that statute, the Clerks may, in their discretion, deny OCRA access to an attorney who conveys an OCRA pleading to an unauthorized third party. Although the Complaint alleges that their attorney would provide Plaintiffs with court records obtained via OCRA if he were allowed to do so, it falls short of alleging that the Clerks have ever threatened to revoke Mr. Lacy's OCRA access for any reason.

The absence of such allegations reveals that Plaintiffs are not seeking to vindicate any rights held by Mr. Lacy, specifically; rather, they are asserting a "generalized interest" of the public. *Moss v. Spartanburg Cnty. Sch. Dist. Seven*, 683 F.3d 599, 604–05 (4th Cir. 2012). Standing "is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle of the vindication of value interests." *Diamond v. Charles*, 476 U.S. 54, 62 (1986) (citation and internal quotation marks omitted). Plaintiffs lack standing, for example, to "raise generalized grievances about the administration of the state and federal courts."*Anders v. South Carolina*, No. 2:24-cv-06311-BHH-MGB, 2025 U.S. Dist. LEXIS 75931, at *9 (D.S.C. Mar. 31, 2025).

In *Anders*, for instance, a plaintiff with disabilities challenged filing and signature requirements in court that violated the ADA and other civil rights of disabled persons. *Id.* at *2-*3. Even though the plaintiff had suffered these barriers personally, the District Court of South Carolina nonetheless held the plaintiff lacked standing to challenge how courts were administered generally. *Id.* at *9.

In this case, the Complaint attempts just that. It challenges the subscriber agreements and Virginia Code § 17.1-293(H) generally, on behalf of any potential Virginia-barred attorney who is an OCRA subscriber and wants to share OCRA records with third parties, in a hypothetical scenario. *See Murthy*, 603 U.S. at 75 (holding that plaintiffs' listeners lacked derivative standing

18

to challenge "restrictions that countless other social-media users have experienced"). The Complaint fails to allege any past revocation of OCRA access for any attorney or any imminent harm to Mr. Lacy, specifically.

In short, the injury to Mr. Lacy is hypothetical and speculative. In the absence of any imminent enforcement against Mr. Lacy, Plaintiffs lack any derivative injury to receive that speech. Plaintiffs therefore lack standing, and this Court should dismiss the Complaint as a result.

### 2.  The Complaint Fails to Show Plaintiffs Will Suffer an Actual Injury.

Even if this Court decides that the Complaint has alleged an imminent enforcement against Mr. Lacy, that is not enough to satisfy the standing requirement. The Complaint must still allege that such enforcement would then cause an actual injury to Plaintiffs' First Amendment rights. *See Caplin & Drysdale*, 491 U.S. at 623 n.3. Here, the Complaint alleges that Virginia Code § 17.1-293(H) causes an injury in the form of a "prior restraint" of their ability to "receive" the court records and pleadings that their attorney wishes to send them. Compl. ¶¶ 61–62.

Injury-in-fact requirements are unique for prior restraint claims. A prior restraint refers to "administrative and judicial orders *forbidding* certain communications when issued *in advance* of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis added to "in advance"). Prior restraints—unlike other regulations of free speech—impose an "immediate and irreversible sanction" by "freez[ing]" speech before it occurs, rather than punishing the speech "after publication." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). But "until an order forbidding speech issues, no such restraint has yet been imposed." *Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cty.*, 854 F. App'x 521, 525 (4th Cir. 2021) (unpublished opinion).

Accordingly, the Article III "injury" in a prior restraint claim is "censorship." *Covenant Media of N.C., L.L.C. v. City of Monroe*, 285 F. App'x 30, 36-37 (4th Cir. 2008) (unpublished opinion) (citing *City of Lakewood v. Plain Dealer Publ'g.*, 486 U.S. 750, 755–56 (1988)); *Fairway Outdoor Advert., LLC v. City of High Point*, No. 1:21-CV-00867, 2022 U.S. Dist. LEXIS 232186, at *18–19 (M.D.N.C. Dec. 28, 2022) (same); *see Phillips v. DeWine*, 841 F.3d 405, 416–17 (6th Cir. 2016) (same). If a prior restraint plaintiff fails to show any speech "would require prior approval or otherwise be impeded" *before* the speech occurs, the plaintiff fails to show an "injury-in-fact" under Article III. *Phillips*, 841 F.3d at 417.

The Complaint alleges that Virginia Code § 17.1-293(H) constitutes a prior restraint on Mr. Lacy's ability to send Plaintiffs an OCRA-accessed court record. *See* Compl. ¶ 90. In other words, Plaintiffs' alleged injury is that the statute prohibits them from "listening" to those court records and pleadings.

But Plaintiffs *can* access the court pleadings at issue. The Complaint concedes that "the same [pleading] documents" are "available on courthouse public access terminals" located at the courts themselves. Compl. ¶ 63. The Complaint admits that there "is no difference in the content of the court records" available at "each individual court" in person, "and the court records that subscribers authorized to access OCRA can see remotely." Compl. ¶ 66. Simply put, whether accessed in person, or Mr. Lacy's remote access via OCRA, "they are the same records." Compl. ¶ 66.

Thus, Plaintiffs are not being denied the ability to "listen" to the court pleadings at issue. Nothing prohibits Plaintiffs from accessing the court records from the courthouses directly. In fact, the Complaint concedes that Plaintiffs have created an entire business on being able to do so for the past 35 years, and their employees "visit[] their assigned court on a daily or weekly basis to

20

review all the complaints filed." Compl. ¶¶ 29-31, 36, *see* ¶¶ 45, 47. Plaintiffs cannot claim that they cannot "listen" to alleged speech that they have historically accessed.

Moreover, the Virginia statute prohibits an attorney from transmitting a civil court filing to a third party *only if* the pleading is accessed through OCRA. The statute does not prohibit Plaintiffs' attorneys from transmitting court records if obtained by any other means. The statute does not, for example, facially prohibit Mr. Lacy from transmitting, to Plaintiffs, any pleading obtained at the courthouse or from any other source. The Complaint thus fails to show any imminent prior restraint injury.

Plaintiffs will likely argue that they have suffered an injury due to the additional inconvenience and expense of physically traveling to every local courthouse to retrieve civil court records. For example, the Complaint asserts that the only "difference" between OCRA-accessed pleadings and in-person pleadings "is the time, distance and expense that is required" to access the pleading. Compl. ¶ 66.

But this argument is inconsistent with a prior restraint theory. If Plaintiffs' lone injury is "time, distance and expense," that injury presupposes the ability to receive the alleged speech at issue. Plaintiffs' injury is thus not "censorship"—it is inconvenience.

The Complaint has failed to show any "censorship" of court pleadings or any pre-publication "freeze" on the pleadings before they are issued to the public. Nor do the allegations show that Plaintiffs or Plaintiffs' attorney must seek approval from the Clerks before accessing or transmitting the court pleadings. The Complaint has thus failed to allege facts demonstrating standing for prior restraint—its sole claim. This Court should therefore dismiss the claims against the Clerks.

3.    **Plaintiffs Lack Third-Party Standing Because Their Attorney-Agent Represents Plaintiffs' Interests, Not His Own.**

Even if this Court concludes that the Complaint has demonstrated adequate injuries to Plaintiffs and their attorney, there is a more fundamental problem: the Complaint's allegations demonstrate that Plaintiffs are not legally vindicating their attorney's individual interests.

As noted above, Plaintiffs advance a "third party" derivative standing theory. This doctrine allows a litigant to advance "third-party interests." *Caplin & Drysdale*, 491 U.S. at 623 n.3 (1989). Those interests and rights must be held by "someone else" other than the plaintiff. *See Frank Krasner*, 401 F.3d at 235. In the First Amendment context, that "someone else" is the alleged speaker. *Murthy*, 603 U.S. at 75. A First Amendment litigant advancing third-party standing must therefore vindicate the "rights of [the] willing speaker." *Pa. Family Inst*, 489 F.3d at 166.

As the Complaint admits, Plaintiffs' standing is entirely "derivative" of the rights and interests of their attorney, Lacy. Compl. ¶ 7; *see Pa. Family Inst.*, 489 F.3d at 165 ("The right to receive speech is 'entirely derivative' of the rights of the speaker."); *accord Stockton v. Brown*, 152 F.4th 1124, 1147 (9th Cir. 2025). Accordingly, the Complaint must demonstrate that Plaintiffs are representing and vindicating *Lacy*'s interests distinct from their own. The Complaint fails this requirement because Lacy is acting as an attorney.

As Plaintiffs' lawyer, Lacy represent his clients' interests and not his own, as a matter of law. "[A]n attorney is the agent of his client" and serves "his client's interest[s]." *Va. Elec. & Power Co. v. Bowers*, 181 Va. 542, 547 (1943). An attorney-client relationship is a "quintessential principal-agent relationship." *Comm'r v. Banks*, 543 U.S. 426, 436 (2005). Thus, courts "treat an attorney as *legally synonymous* with his or her client." *Newman v. Newman*, 42 Va. App. 557, 567 (2004) (emphasis added).

The Complaint alleges that Lacy is Plaintiffs' "Virginia-barred counsel"—they are allegedly in an attorney-client relationship. Compl. ¶ 11; *see id.* ¶ 49 (referring to "the newspaper's attorney"), ¶ 51 (referring to "their attorney to forward filing he can access on OCRA"). Accordingly, any act Lacy commits pursuant to that relationship does not further *Lacy's* interests, it furthers *Plaintiffs'* interests.

The Complaint demonstrates that Lacy's potential act at issue—forwarding OCRA-accessed pleadings—is pursuant to that attorney-client relationship. The Complaint asserts numerous examples of Plaintiffs requesting Lacy to forward them OCRA-accessed pleadings. For instance, Courthouse News's Bureau Chief "emailed attorney Lacy . . . to ask Lacy if he could send [him] a copy of [a] complaint." Compl. ¶ 43. In another instance a Lee reporter asked Lacy "if he could pull [a] complaint off OCRA and email it to him." Compl. ¶ 77. In another, "Lacy was unable to assist *The Roanoke Times* with respect to a new lawsuit . . . ." Compl. ¶ 79.

In each of these examples, *Plaintiffs* initiate the OCRA request to "their" attorney—they are the ones instigating and controlling Lacy's actions. "Control" is a hallmark of a principal-agent relationship. *Acordia of Va. Ins. Agency v. Genito Glenn, L.P.*, 263 Va. 377, 384 (2002). Absent Plaintiffs making these specific requests to Lacy, there is no allegation that Lacy would have indepdently attempted to give Plaintiffs these pleadings. Lacy is not a "willing [independent] speaker"—he is acting pursuant to Plaintiffs' direction to further their interests.

Accordingly, because Lacy wishes to forward the OCRA pleadings to Plaintiffs pursuant to an attorney-client relationship, his actions are "legally synonymous" with Plaintiffs' actions and interests. *See Newman*, 42 Va. App. at 567. Thus, the alleged speech at issue—Lacy's act of forwarding an OCRA pleading to Plaintiffs—is not a communication between two distinct parties. Instead, Plaintiffs are vindicating their own interests through an agent—they are "speaking" with

23

themselves. Plaintiffs therefore are not, as a matter of law, advancing the interests of a "third party" sufficient for standing. *See Paradise Ent. Ltd. v. Empire Tech. Grp. Ltd.*, No. 2:24-cv-00428-JCM-BNW, 2025 U.S. Dist. LEXIS 206898, at *16 (D. Nev. Oct. 20, 2025) ("[I]t is illogical for [an attorney's] client to also be a third party under the plain meaning of the word.").

Moreover, Plaintiffs' standing theory would render the Fourth Circuit's prior holding as to Courthouse News meaningless. If Plaintiffs are not "constitutionally entitled to receive" OCRA access as the Fourth Circuit held, *Courthouse News Serv.*, 126 F.4th at 917, then they have no right to it via any of their agents either—be it an employee or their attorney. To hold otherwise would render the Fourth Circuit's holding, and the Access Restriction, meaningless.

Plaintiffs may rely on two Supreme Court cases holding "an attorney-client relationship as sufficient to confer third-party standing." *Kowalski v. Tesmer*, 543 U.S. 125, 130-31 (2004) (citing and discussing *Caplin & Drysdale*, 491 U.S. and *United States Dep't of Labor* v. *Triplett*, 494 U.S. 715 (1990)). In *Caplin*, the Court "granted a law firm third-party standing to challenge a drug forfeiture statute by invoking the rights of an existing client." *Id*. In *Triplett*, the Court recognized an attorney's third-party standing to invoke the due process rights of his client to challenge an attorney's fees regulation in Black Lung administrative cases. *Id*.

These cases are distinguishable for one crucial reason: they involved *attorneys* having derivative standing as a litigant to litigate their *clients'* interests. Such a conclusion is consistent with agency law because "an attorney is the agent of his client" and serves "his client's interest[s]." *Va. Elec. & Power*, 181 Va. at 547. It is not farfetched to grant third party standing to an attorney to vindicate his client's interest when he has already been doing so through his legal services.

But the reverse is not true: a *client* cannot have derivative standing to litigate their *attorney's* interests. Counsel for the Clerks has been unable to find any binding precedent

24

recognizing such a theory. To agree with such an outcome would be perverse to the principal-agent relationship, and give every client the third-party right to challenge any regulation of attorney conduct.

In short, the Complaint has failed to show that Plaintiffs are vindicating the rights and interests of "someone else." *Frank Krasner*, 401 F.3d at 235. Instead, they are advancing their own interests via an agent to gain access to OCRA pleadings, which the Fourth Circuit has already foreclosed.

For each of the above independent reasons, Plaintiffs lack standing and this Court should dismiss their claims against the Clerks as a result.

### C. THE COMPLAINT'S AS-APPLIED PRIOR RESTRAINT CLAIM IS NOT RIPE.

For many of the same reasons that Plaintiffs lack standing, their as-applied challenge to the Dissemination Restriction in Virginia Code § 17.1-293(H) is not ripe for adjudication.

A federal court lacks subject-jurisdiction under Article III over a claim that is not yet ripe. *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019). While standing asks "who can sue," ripeness asks "when they [can] sue." *Id.* (citation omitted).

Ripeness requires that a controversy be "final and not dependent on future uncertainties." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013). Accordingly, "a claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Id.* (citation and internal quotation marks omitted). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, *or indeed may not occur at all*." *Texas v. United States*, 523 U.S. 296, 300 (1998) (emphasis added) (citation and internal quotation marks omitted).

Ripeness is especially important in as-applied prior restraint challenges to government action. "An as-applied challenge attacks the constitutionality of a statute based on a developed factual record and the application of a statute to a specific person." *Doe*, 713 F.3d at 762 (citation and internal quotation marks omitted). A factual record of the statute's specific application to an individual is thus necessary

> to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*South Carolina*, 912 F.3d at 730 (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 148–49 (1967)). Accordingly, a prior restraint claim, in particular, is not ripe if the plaintiffs "do not claim that they are presently subject to an injunction under the [challenged statute] or that one is being sought against them." *Woodall v. Reno*, 47 F.3d 656, 658 (4th Cir. 1995).

In *Woodall*, for instance, plaintiffs challenged the Freedom of Access to Clinic Entrances Act, which prohibits interfering with individuals seeking reproductive care. *Id.* at 657. The Act allowed the Department of Justice to seek an injunction if any person "is being, has been or may be injured by" a violation of the Act. *Id.* at 658. The plaintiffs argued that this clause constituted a prior restraint. *Id*.

> The Fourth Circuit held that the issue was not ripe. Specifically, it noted there was
>
> no factual record of an actual or threatened application of the Access Act's injunctive relief provisions. Moreover, we will not assume that a court would issue an injunction in violation of the well established prior restraint doctrine.

*Id*. The Fourth Circuit has repeateadly concluded that prior restraint claims are not ripe where no order or injunction has been issued. *See, e.g., Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cty.*, 854 F. App'x 521, 525 (4th Cir. 2021) (unpublished opinion) ("Because the state court has not awarded the Board the injunction it seeks . . . . [s]uch a claim is not ripe for

adjudication."); *Donnangelo v. Myers*, No. 98-1730, 1999 U.S. App. LEXIS 18210, at *10 (4th Cir. Aug. 2, 1999) (unpublished opinion) ("[T]he mere allegation that an action was not repeated for fear of future adverse action is insufficient to create a ripe controversy.").

Plaintiffs have "the burden of proving ripeness." *Doe*, 713 F.3d at 758. The Complaint fails that burden as to its as-applied challenge. It fails to allege that any of the Clerks have revoked Mr. Lacy's OCRA access or that the Clerks have revoked anyone's access at all. Nor does it allege the existence of an injunction or order entered—or even sought—pursuant to Virginia Code § 17.1-293(H). An as-applied challenge "necessarily requires the development of a factual record on how statute applies in particular circumstances," *Doe*, 713 F.3d at 762, but the Complaint fails to provide even a single instance of any clerk revoking OCRA access. The Complaint's as-applied challenge is therefore not ripe and this Court should dismiss that claim as a result.

**CONCLUSION**

Because the *Ex parte Young* exception does not apply to the Complaint, the Clerks are immune under the Eleventh Amendment. Even in the absence of immunity, the Complaint has failed to establish the necessary facts to establish standing and ripeness. This Court should therefore dismiss the claims against the Clerks for lack of subject matter jurisdiction.

27

Respectfully submitted,

**EDWARD JEWETT**, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia;

**BRENDA HAMILTON**, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; and

**KELLY FLANNAGAN**, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia

By: ___/s/ Peter Askin_____
William W. Tunner (VSB No. 38358)
William D. Prince IV (VSB No. 77209)
Rachel W. Adams (VSB No. 92605)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
radams@t-mlaw.com
paskin@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

28

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February, 2026, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to counsel of record:

Roger Myers, *pro hac vice* forthcoming
Rachel Matteo-Boehm, *pro hac vice* forthcoming
Carlie Tenenbaum, *pro hac vice* forthcoming
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
2100 East Cary Street, Suite 310
San Francisco, California 94111
Telephone: (415) 675-3400
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com
carlie.tenenbaum@bclplaw.com

*Counsel for Plaintiffs Courthouse News
Service, Lee Enterprises, Incorporated
and Lee BHM LLC*

Dabney J. Carr IV, Esq.
Lauren H. Miller, Esq.
TROUTMAN PEPPER LOCKE LLP
P.O. Box 1122
Richmond, Virginia 23218
Telephone: (804) 697-1200
Facsimile: (805) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Plaintiffs Courthouse News
Service, Lee Enterprises, Incorporated
and Lee BHM LLC*

By:  ___/s/ Peter Askin_____
 Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, Third Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
Email: paskin@t-mlaw.com

*Counsel for Defendants Edward Jewett, Brenda
Hamilton, and Kelly Flannagan*