UNITED STATES DISTRICT COURT
For the Western District of Virginia
Abingdon Division

| | |
|---|---|
| COURTHOUSE NEWS SERVICES, et al., | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) Civil Action No. 1:25-cv-00075 |
| | ) |
| KARL R. HADE, in his official capacity as | ) |
| Exec. Sec'y of the Office of Exec. Sec'y of the | ) |
| Supreme Ct. of Va., *et al.* | ) |
| | ) |
| *Defendants.* | ) |

**REPLY IN SUPPORT OF DEFENDANT KARL R. HADE'S
RULE 12(b)(1) AND RULE 12(b)(6) MOTION TO DISMISS**

The Defendant, Karl R. Hade ("Hade"), by counsel, submits this reply in support of his

Rule 12(b)(1) and Rule 12(b)(6) Motion to Dismiss.

I.      INTRODUCTION

Plaintiffs direct this Court's attention to a number of cases except the one that truly

dictates the outcome of the current lawsuit: *Courthouse News Serv. v. Smith*, 126 F.4th 899 (4th

Cir. 2025), which held that the general public, including Courthouse News Service (CNS), does

not have a constitutional right to access digital court records available on OCRA. CNS, now

joined by Lee, cannot reckon with that holding, because if they have no constitutional right to

access the digital files on OCRA through direct subscription, then they surely have no

constitutional right to access them indirectly, through a proxy.

1

II.    ARGUMENT

**A.    <u>Neither Lee Enterprises Incorporated nor Lee BHM LLC are proper parties.</u>**

As a threshold issue, Plaintiffs have not correctly associated the proper entities to state a claim on behalf of the publisher of various newspapers throughout Virginia. First, Lee Enterprises, Incorporated ("LEI") is not a proper party to this action. The first sentence of the Complaint alleges that Lee BHM LLC ("BHM") is the publisher of various papers throughout Virginia, "Plaintiffs Lee Enterprises, Incorporated and its wholly owned subsidiary, Lee BHM LLC, publisher of, among others, the *Richmond Times-Dispatch*, *The Roanoke Times*, *Bristol Herald Courier*, *Lynchburg News and Advance*, *Fredericksburg Free Lance Star* and *The Daily Progress* in Charlottesville (collectively, "Lee")." ECF 1 at 2. These allegations indicate that LEI and BHM are two related companies, and that one of those companies, BHM, publishes various papers throughout the Commonwealth. Nowhere in the Complaint do the plaintiffs state "particularized allegations of fact supporting [LEI's] standing to sue." *Carroll v. New People's Bank, Inc.*, No. 1:17-cv-0044, 2018, U.S. Dist. LEXIS 57916, *3 (W.D. Va. April 5, 2018) (citing *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).

In response, the plaintiffs chide Hade for "misreading" the Complaint. They assert that because the Complaint "defines both Lee plaintiffs collectively as 'Lee,' and alleges the collective 'Lee' publishes the Virginia newspapers," the plaintiffs have plausibly pleaded standing. ECF 48 at 16. Apparently uncomfortable with this position, however, the plaintiffs attempt to raise factual allegations outside the Complaint to buttress their claimed standing. *Id*. The declaration submitted by the plaintiffs raises new facts not set forth in the Complaint and describes accounting practices that blur the distinct corporate existence of LEI and BHM. ECF 48-1 at 1.

2

Faced with these new facts, Hade asserts now that both BHM and LEI lack standing to pursue claims in this case.

**1.  A defendant may raise factual challenges to a plaintiff's claim of standing.**

Hade is procedurally entitled to raise evidence in support of his standing challenge. In the Fourth Circuit, a defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, the facts alleged in the complaint are taken as true. *Id.* In a factual challenge, however, the defendant may challenge the veracity of the jurisdictional allegations in the complaint, and this Court may "go beyond the allegations of the complaint" to determine if there are facts to support standing. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). *See also Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017) ("For a factual challenge, on the other hand, the court may go beyond the complaint to resolve the disputed jurisdictional facts.") (citation omitted).

"When, as here, a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction."). *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009). Thus the Plaintiffs must show that the LEI and BHM are the correct entities to bring a claim based on standing they are asserting that arises from being the publisher of the Virginia newspapers listed in the complaint.

**2. New factual evidence indicates LEI and BHM do not have standing to sue as publishers of the alleged Virginia-based newspapers**.

LEI and BHM are likely not proper parties. LEI is not registered with the Virginia State Corporation Commission ("SCC") to transact business in the Commonwealth. ***See* Ex. 1**.[1] Exhibit 1 shows that no company named "Lee Enterprises, Incorporated" is registered with the SCC. The only corporation named "Lee Enterprises" is a now defunct entity formerly headquartered at a residence in Henrico County. Similarly, the SCC's records do not indicate that "Lee BHM LLC" is registered with the SCC, though a search does reveal that "Lee BHM Corp." is registered with the SCC. ***See* Ex. 2**. That corporation also holds fictitious name certificates for numerous publications, including those referenced in the Complaint. *Id.*

Lee BHM Corp., who is not a party to this action, was a party to a recent action in this district. *See Conlon v. Baber,* No. 5:23-cv-0040 (W.D. Va. 2023). David Lacy, who is mentioned throughout the Complaint as counsel for Lee, was counsel of record for Lee BHM Corp. in that case. Moreover, in that case, Lacy indicated that he represented "Lee BHM Corp. d/b/a *The Daily Progress*." Motion to Dismiss, *Conlon v. Baber,* No. 5:23-cv-0040, ECF 38 at 1 (W.D. Va. Aug. 15, 2023). **Ex. 3**. Lacy also represented "Lee BHM Corp. Publisher of the *Richmond Times Dispatch*" as an interested party in a criminal matter in the Eastern District of Virginia. *See* Docket Sheet, *USA v. Ruiz*, 3:22-cr-00038 (E.D. Va. 2022). ***See* Ex. 4**.

Lee BHM Corp. has also been involved in Virginia state court litigation. Lacy represented "Lee BHM Corp., publishers of the *Richmond Times Dispatch*" in a mandamus proceeding in Henrico County Circuit Court. *In re: Public Access to November 22, 2021 Transfer Hearing Relating to the Death of Lucia Bremer*, CL21-7567, Henrico County Circuit

---

[1] Exhibits 1 and 2 were obtained from a website operated by the Virginia State Corporation Commission. *See* https://cis.scc.virginia.gov/EntitySearch/Index (last visited March 18, 2026).

Court, Nov. 29, 2021. **Ex. 5**. Mr. Lacy also represented "Lee BHM Corp., d/b/a Free Lance Star Publishing" in a civil matter in Spotsylvania County Circuit Court. *Brubaker v. Epps*, CL23-2210, Spotsylvania County Circuit Court, July 12, 2023. **Ex. 6**.

Finally, the Form 10-K Annual Report submitted by LEI to the United States Securities and Exchange Commission lists "Lee BHM Corp." as a subsidiary but makes no mention of "Lee BHM LLC." Annual Rpt. at 91. https://investors.lee.net/static-files/a595a4e4-39a9-4d66-bdad-a38a538a27d1 (last visited 3/10/2026).

All of the above facts point to the conclusion that "Lee BHM Corp.," not "Lee BHM LLC" is the publisher of the various news publications employing reporters who seek access to records in this case. If this is correct, then Lee BHM LLC lacks standing, because it does not transact business in Virginia. Likewise, LEI would lack standing because LEI's only connection to this case is through "Lee BHM LLC" according to the Complaint and the Plaintiffs' memorandum opposing the motions to dismiss.

In any event, BHM, as a limited liability company, cannot maintain this lawsuit unless and until it registers with the SCC.  Va. Code § 13.1-1057. Additionally, if LEI transacts business in Virginia, it must obtain a certificate of authority from the SCC. Va. Code § 13.1-757.

Accordingly both BHM and LEI are improper plaintiffs in the lawsuit at bar and Hade respectfully requests that they be dismissed based on the above facts. Furthermore, any facts or claims arising from their status as publishers of the named Virginia papers should be struck from the complaint and disregarded.

### B.    Hade is not a proper party.

Hade is also not a proper party to a suit seeking an injunction of the Dissemination Restriction for the simple reason that the statute at issue does not give anyone but the circuit

5

court clerks authority to enforce the restriction. Code § 17.1-293(H)(" . . . and the clerk, in his discretion, may deny secure remote access to ensure compliance with these provisions . . ."). Hade's lack of authority to enforce the Dissemination Restriction is a much clearer question of law than the Access Restriction, which simply creates an exception to subsection B's redaction requirements if court records available on the internet are only available via secure remote access for Virginia-barred attorneys and other enumerated people. Code §§ 17.1-293(B), (E)(7). But for the Dissemination Restriction, it is a clear question of law: only the clerk has authority to enforce the restriction. Therefore, an injunction against Hade as the Executive Secretary would not affect the enforcement of the Dissemination Restriction. There is no additional factual development necessary, nor can additional facts change this simple statutory reality. Only the clerk can authorize the revocation of access to his jurisdiction's OCRA database to enforce the prohibition against selling or disseminating digital court records downloaded from OCRA to third parties. Hade is not a proper party and is properly dismissed with prejudice.

C.      **There is no right to receive digital court records downloaded from OCRA.**

Plaintiffs' case also fails to state a claim. Plaintiffs begin by attempting to relitigate the holding in *Smith* that they have standing to challenge Code § 17.1-293(H) ("the Dissemination Restriction") on the basis that the Dissemination Restriction impairs their constitutional right to "gather news." ECF 48, 11. This is directly contradicted by the binding authority in the Fourth Circuit's opinion in *Smith*, which held that "The Dissemination Restriction does not impose any restraint on Courthouse News's speech, because it applies only to individuals with remote online access to court records. Courthouse News does not currently have such access, and we have determined that it is not constitutionally entitled to receive that access." *Smith*, 126 F.4th at 917.

6

In making their argument that the Dissemination Restriction directly impairs their rights, Plaintiffs claim that the Dissemination Restriction is a restriction on "access to people or records with information about civil cases." ECF 48, 11. The right of access, however, was thoroughly litigated in *Smith* and CNS lost, with the Fourth Circuit affirming the district court's holding that Virginia's limitation on the general public's access to online digital court records was a reasonable time, place, and manner restriction. *Smith*, 126 F.4th at 916. The Plaintiffs are not unreasonably or unconstitutionally restricted in their access to the records, because they are available at the courthouse during business hours. *Id.* Therefore, the Fourth Circuit has already held that CNS (and Lee, which is identically situated) "lacks standing to challenge [the Dissemination] restriction." *Id.* at 917. That holding remains binding on this Court.

The Plaintiffs are, therefore, restricted to arguing that they have standing to challenge the Dissemination Restriction because they are indirectly harmed "by hindering [their] ability to acquire electronic court records from attorneys with OCRA access." *Id.* The Court held that to make that argument, CNS would have to "show that there exists a speaker willing to convey the information" to them. *Id.* Plaintiffs purport to have found such a speaker, in David Lacy. ECF 48, 14. Because Plaintiffs can claim only a derivative injury, *Smith*, 126 F.4th at 917, then if Plaintiffs have failed to adequately allege that the law violates the free speech rights of Lacy, and other lawyers like him who would be willing to share downloaded pleadings from OCRA but for the dissemination restriction, then Plaintiffs have failed to state a basis to challenge the law even using a derivative injury.

### D. Code § 17.1-293(H) regulates lawyer conduct, with only an incidental burden on speech.

As a threshold question, Plaintiffs must first adequately allege that the Dissemination Restriction regulates speech and not professional conduct with only an incidental burden on

speech. The nature of the regulation and the justification and purposes for the regulation receive different levels of scrutiny. *360 Virtual Drone Servs. LLC v. Ritter*, 102 F.4th 263, 271 (4th Cir. 2024). Plaintiffs argue that the Dissemination Restriction is a content-based regulation of speech that should be subject to strict scrutiny. The Dissemination Restriction is, however, a regulation of professional conduct that only incidentally impacts speech, therefore Fourth Circuit precedent dictates that it is subject to "a more relaxed form of intermediate scrutiny that mandates only that the restriction be 'sufficiently drawn' to protect a 'substantial' state interest." *Id.* Because the Dissemination Restriction applies only to subscribers who receive OCRA access as licensed Virginia attorneys and others who qualify as "officers of the court" and it is necessary to enforce the constitutional access restriction that was upheld in *Smith*, the Dissemination Restriction easily passes relaxed intermediate scrutiny.

### 1. The statute by its plain language regulates the sharing of digital files, not the contents of court records.

The statute taken as a whole, rather than just the Dissemination Restriction in isolation, is focused on "Posting and availability of certain information on the Internet." Code § 17.1-293. The statute lists six types of information that must be redacted from court records if, and only if, they are posted on the Internet. Code § 17.1-293(B). The information is not restricted if the public accesses the "original document" at the courthouse. Code § 17.1-293(D). There are a number of exemptions to the redaction requirement, including in relevant part when the information is posted as part of "secure remote access to nonconfidential court records . . . to members in good standing with the Virginia State Bar" and their agents and certain government agencies. Code § 17.1-293(E)(7) [the "Access Restriction"].

At issue in the current litigation is the Dissemination Restriction, Code § 17.1-293(H). The Dissemination Restriction prohibits "any data accessed by secure remote access to be sold or

8

posted on any other website or in any way distributed to any third party." Plaintiffs argue this means that a subscriber cannot disclose any of the information in a court pleading that was accessed via OCRA in addition to not disseminating the digital court file itself, which involves a tortured reading of what the statute means by "data." ECF 1, ¶ 79 (claiming that "OCRA's rules prevented Lacy from proving even a summary of the allegations in a pleading accessed via OCRA), ¶ 81 (alleging Lacy refused to provide a reporter "the complaint or the information requested about the complaint" because of "OCRA's restrictions."), ¶ 82 (alleging Lacy refused to provide copies of pleadings or information from pleadings because of the Dissemination Restriction), ¶ 84 (alleging that Lacy refused to "summarize what [a] petition alleged and counsel's contact information" because it "could be construed as improper circumvention of OCRA"), ¶ 85 (alleging that Lacy would not summarize a pleading via email because of "OCRA's terms"); ECF 48, 38 (arguing that the Dissemination Restriction's use of the word "data" means that a subscriber cannot discuss the contents of a pleading because he downloaded it from OCRA).

Plaintiffs deliberately use a misleading and overly broad definition of "data" to construe the Dissemination Restriction to apply to subscriber speech and not just the act of sharing digital files themselves. ECF 48, 38. Even Plaintiffs' own dictionary source, Dictionary.com, defines "data" first as "information in digital format, as encoded text or numbers, or multimedia images, audio, or video. "Data," Dictionary.com/browse/data (last visited March 17, 2026). The secondary definition is the broader "a body of facts; information" cited by Plaintiffs. *Id.*

The statute at issue is clearly referring to information in a digital format, because the entire statute governs the sharing of court records on the internet. It enacts specific restrictions and redaction requirements for records available online, particularly when they are publicly

9

accessible and not restricted in an access-secured database available to lawyers and court

personnel. Code § 17.1-293. The statute does not purport to regulate the sharing of information

in court records more generally, just digital files accessible through the internet. *Id.*

Returning to the plain meaning of "data," the more authoritative Merriam-Webster

dictionary defines "data" as follows:

> 1) factual information (such as measurements and statistics) used as a basis for reasoning, discussion, or calculation;
>
> 2) information in digital form that can be transmitted or processed; and
>
> 3) information that is output by a sensing device or organ and that must be processed to be meaningful.

https://www.merriam-webster.com/dictionary/data (last visited March 17, 2026).

Merriam-Webster's definition combined with the commonsense context of the statute make it

clear that the Dissemination Restriction refers to the actual digital files downloaded from OCRA,

not reading the content of pleadings over the phone to a reporter, or providing an original

summary of the information learned in a court pleading. After all, identical records are available

during business hours at the courthouse. There would be no public policy reason to restrict

lawyers from sharing the information about the case one can glean from reading the pleading.

Even if the plain meaning of the statute were not clear, however, the cannon of

constitutional avoidance would dictate that this Court interpret the statutory language to avoid an

unconstitutional result. *See Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018). The cannon of

constitutional avoidance is a statutory interpretation principle that is used when, and only when,

"after the application of ordinary textual analysis, the statute is found to be susceptible of more

than one construction." *Id.* When confronted with multiple ways to interpret the plain meaning of

a statute, then a court must choose the construction of the language of the statute that is "fairly

possible by which the [constitutional] question may be avoided." *Id.* (internal quotation omitted).

This does not mean re-writing the statute, but instead, if presented with two reasonable constructions of the statutory language, choosing the one that avoids a constitutional issue.

The Dissemination Restriction applies to sharing digital files that are particularly vulnerable to data mining by its plain language, which restricts access to court records that have not had certain types of identifying information redacted. Code §§ 17.1-293(B), 17.1-293(E)(7). The plain meaning of the Dissemination Restriction is to prevent lawyers with OCRA access from providing public access to digital court files that have not had the information listed in subsection B redacted, which would defeat the purpose of the statute. In light of the plain meaning of the word data and the principle of constitutional avoidance, the principles of statutory interpretation dictate that the plaintiffs' overly broad and unconstitutional reading of the Dissemination Restriction should be rejected.

**2.    The Dissemination Restriction is a regulation of professional conduct.**

Understanding the language of the statute is fundamental to the analysis of whether Plaintiffs have alleged that OCRA subscriber David Lacy's free speech rights are infringed by the Dissemination Restriction. The Dissemination Restriction is a regulation of professional conduct for those "members in good standing with the Virginia State Bar and their authorized agents" and others who qualify for OCRA access pursuant to Code § 17.1-293(E)(7) to prevent them from providing public access to records by selling or posting the records on a website or distributing the digital records another way to third parties who do not qualify to obtain OCRA access directly. To the degree this creates a burden on speech, it is incidental to the regulation of the conduct of professionals given privileged access to records with sensitive information in a format that makes the records particularly vulnerable to data mining and exploitation. *Smith*, 126 F.4th at 911-12.

11

The Dissemination Restriction easily passes the Fourth Circuit's test for a regulation of professional conduct that only incidentally burdens speech. *Ritter*, 102 F.4th at 278. The "speech" being regulated, namely, providing third party access to digital court records that are vulnerable to data mining in a way that paper records viewed at a courthouse are not, carries economic, legal, and privacy consequences. *See Smith*, 126 F.4th at 911-12. The transmission of these records as alleged by Plaintiffs in the case at bar is in private conversations between a single attorney and various reporters. The Dissemination Restriction is not content-based at all and therefore does not "seek[] to quell unpopular or dissenting speech," but rather regulates the medium of digital court files, regardless of content (other than that the records are not redacted in compliance with Code § 17.1-293(B)). In the simplest terms, the Dissemination Restriction simply prevents lawyers with OCRA access from giving the general public access to court records that would otherwise be controlled by the clerks' offices to ensure that there are adequate measures to protect litigants' privacy and information security without impairing the efficient administration of justice. Therefore, it is a regulation of professional conduct, not "speech as speech," *Ritter*, 102 F.4th at 278.

E.   **The Dissemination Restriction is properly analyzed using relaxed intermediate scrutiny.**

Another fundamental flaw in Plaintiffs' argument is that Fourth Circuit already affirmed the ruling that the access restriction is "a content-neutral time, place, and manner restriction that is narrowly tailored to further the Commonwealth's important interests in protecting sensitive personal information and promoting the orderly and efficient administration of justice." *Smith*, 126 F.4th at 916-17. That holding precludes most of the arguments Plaintiffs assert in their opposition to the Dissemination Restriction, which is simply a way to prevent lawyers and other

authorized OCRA users from permitting public access to OCRA that the public cannot obtain from the clerks directly. Plaintiffs cannot relitigate the issues that were fundamental to that holding.

First, the Fourth Circuit found that "Courthouse News undisputedly has access to all the civil court records it seeks, including the records the First Amendment entitles it to review, at the courthouses themselves. *Id.* at 908. Therefore, the access restriction was a time, place, and manner restriction subject to "relaxed" scrutiny, not strict scrutiny. *Id.* at 908. As a regulation of professional conduct, that only incidentally burdens speech, the Dissemination Restriction is subject to an even more relaxed standard of intermediate scrutiny, that "just requires that the restriction be sufficiently drawn to protect a substantial state interest." *Ritter*, 102 F.4th at 278.

There is no genuine argument that the Dissemination Restriction could not meet this standard, which is why Plaintiffs spend the entirety of their complaint and opposition attempting to recast the Dissemination Restriction on a prior restraint of free speech, subject to strict scrutiny. In *Smith*, CNS conceded the state interest at issue was substantial. *Smith*, 126 F.4th at 910. Even if they hadn't, however, the Fourth Circuit held that it "[had] no doubt [the governmental interests] are significant." *Id.* (internal quotation omitted). The Dissemination Restriction is also sufficiently drawn to protect that interest, because without it, lawyers and others who qualify as OCRA subscribers with privileged access to digital court records that are vulnerable to data mining could simply download and resell the pleadings to their own group of subscribers. This would defeat the entire statutory scheme that attempts to facilitate the efficient administration of the court system without unnecessarily exposing litigants' personal information to exploitation by bad actors adept at exploiting data mining of court records for nefarious

13

purposes. Because the Dissemination Restriction is sufficiently drawn to serve this substantial state interest, it is constitutional as a matter of law.

### F. *Soderberg* does not apply because the statute at issue does not impose a penal sanction.

In an attempt to avoid intermediate scrutiny, Plaintiffs rely on the holding of *Soderberg v. Carrion* to argue that strict scrutiny should apply to the Dissemination Restriction. ECF 48, 29 (citing *Soderberg v. Carrion*, 999 F.3d 962, 964-65 (4th Cir. 2021)). This reliance omits a key aspect of the statute being analyzed in *Soderberg* that is missing from the Dissemination Restriction. In *Soderberg*, the court held that strict scrutiny applied to even partial bans of publishing truthful information about a court case when the ban is enforced by a "penal sanction." *Id.* at 968. The statute at issue in *Soderberg* was "properly assessed as a penal sanction for publishing information released to the public in official court records," subject to strict scrutiny, rather than a prohibition akin to the broadcast ban in Federal Rule of Criminal Procedure 53, which prohibits photography and broadcasting judicial proceedings, but which does not impose a criminal penalty for doing so. *Id.* at 964, 967. The *Soderberg* court held that the Federal Rule's ban was subject to only intermediate scrutiny.

The statute at issue in the case at bar, Code § 17.1-293(H) does not impose a criminal penalty. In fact, it does not impose even a civil fine. Instead, at most, violators are subject to potential revocation of their right to access that jurisdiction's OCRA database. Code § 17.1-293(H).[2] Without a penal sanction, which is material to the *Soderberg* analysis, there is no basis

---

[2] As noted in the Complaint, a licensed Virginia lawyer who engaged in professional misconduct, such as by participating in a conspiracy to commit identity theft by selling information obtained through OCRA to criminals or thieves would be subject to sanctions by the Virginia State Bar for engaging in "a criminal or deliberately wrongful act that reflects adversely on the lawyer's honestly . . . or fitness to practice law." ECF 1, 22 n. 1 (quoting Va. R. Prof. Conduct 8.4). The sanction imposed, however, would not be solely for violating the Dissemination Restriction as

to impose strict scrutiny. *Soderberg*, 999 F.3d at 964. On the contrary, the restriction is closer to

the non-penal restriction in the Rules of Criminal Procedure, which is a constitutional broadcast

restriction that was properly subject to intermediate scrutiny. *Id.* at 967.  Even the Plaintiffs' best

case authority for their position contradicts the imposition of strict scrutiny to the statute at issue.

III.    CONCLUSION

For the reasons stated above, Hade respectfully requests that this Court dismiss the case

with prejudice if it finds the Plaintiffs have standing to bring their claim at all.


Respectfully submitted,

Jay C. Jones

KARL R. HADE

*Attorney General of Virginia*

By Counsel:


Gretchen E. Nygaard

_____/s/ Erin R. McNeill_____
Erin R. McNeill (VSB# 78816)*
Senior Assistant Attorneys General

*Deputy Attorney General*

Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219

Jacqueline C. Hedblom

Telephone (ERM): (804) 692-0598
Facsimile (ERM): (804) 371-0200

*Senior Assistant Attorney General*

Email (ERM): EMcneill@oag.state.va.us
*Counsel of Record for Hade*


**CERTIFICATE OF SERVICE**

I hereby certify that on March 19, 2026, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to counsel of record.


/s/ Erin R. McNeill_____
Erin R. McNeill (VSB No. 78816)
Senior Assistant Attorney General

---

claimed, however. It would require disseminating the information in a manner that violated the
Rules of Professional Conduct.