**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Abingdon Division**

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

03/28/2026

LAURA A. AUSTIN, CLERK
BY: **/s/ Amy Fansler**
DEPUTY CLERK

COURTHOUSE NEWS SERVICE; LEE
ENTERPRISES, INCORPORATED; AND
LEE BHM LLC, PUBLISHER OF THE
RICHMOND TIMES-DISPATCH, THE
ROANOKE TIMES, BRISTOL HERALD
COURIER, LYNCHBURG NEWS AND
ADVANCE, FREDERICKSBURG FREE
LANCE STAR AND THE DAILY
PROGRESS.

      Plaintiff,

v.

KARL R. HADE, in his official
capacity as Executive Secretary of the Office
of Executive Secretary of the Supreme Court
of Virginia,

and

EDWARD JEWETT, in his official
capacity as Clerk of the Circuit Court for the
City of Richmond, Virginia,

and

BRENDA HAMILTON, in her official
capacity as Clerk of the Circuit Court for the
City of Roanoke, Virginia,

and

KELLY FLANNAGAN, in her official
capacity as Clerk of the Circuit Court for the
City of Bristol, Virginia

      Defendants.

Civil Action No. 1:25-cv-00075-JPJ-PMS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

I.  DEFENDANTS' NEW THEORY THAT CNS' AND LEE'S
NEWSGATHERING CLAIM IS FORECLOSED MISREADS SMITH AND
OVERLOOKS OVERBEY .......................................................................................... 2

II.  UNABLE TO PASS EVEN INTERMEDIATE SCRUTINY, DEFENDANT
HADE SEEKS "MORE RELAXED" SCRUTINY INAPPLICABLE TO
RESTRICTIONS ON SPEECH .................................................................................... 5

III.  DEFENDANT CLERK'S NEW THEORY FAILS BECAUSE INVALIDATING
A RESTRAINT ON DISCLOSURE OF NON-CONFIDENTIAL RECORDS
WILL NOT THREATEN LAWS BARRING DISCLOSURE OF
CONFIDENTIAL RECORDS ...................................................................................... 8

IV.  DEFENDANT HADE'S ATTEMPT TO CONVERT HIS STANDING ATTACK
FROM FACIAL TO FACTUAL IS PROCEDURALLY AND FACTUALLY
FLAWED ...................................................................................................................... 9

V.  DEFENDANT CLERKS DO NOT EXPLAIN HOW THEIR NEW THEORY TO
LIMIT EX PARTE YOUNG CAN SQUARE WITH THEIR RESTRICTIONS
ON OCRA ACCESS .................................................................................................... 11

CONCLUSION ................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*360 Virtual Drone Servs. v. Ritter*,
    102 F.4th 263 (4th Cir. 2024) ...................................................................................6, 7

*Alexander v. United States*,
    509 U.S. 544 (1993)...................................................................................................9

*Billups v. City of Charleston*,
    961 F.3d 673 (4th Cir. 2020) .............................................................................5, 7, 12

*Blick v. Shapiro & Brown, LLP*,
    2018 WL 1547124 (W.D. Va. Mar. 29, 2018)........................................................10

*Cap. Associated Indus., Inc. v. Stein*,
    922 F.3d 198 (4th Cir. 2019) ....................................................................................7

*CBS, Inc. v. Davis*,
    510 U.S. 1315 (1994)................................................................................................9

*Clendening v. United States*,
    19 F.4th 421 (4th Cir. 2021) ..................................................................................2, 8

*In re Complaint of Royal Carribean Cruises Ltd.*,
    459 F. Supp. 2d 1284 (S.D. Fla. 2006) ....................................................................6

*Courthouse News Serv. v. Hade*,
    580 F. Supp. 3d 289 (E.D. Va. 2022) .........................................................5, 7, 8, 12

*Courthouse News Serv. v. Schaefer*,
    2 F.4th 318 (4th Cir. 2021) .......................................................................................7

*Courthouse News Serv. v. Smith*,
    126 F.4th 899 (4th Cir. 2025) ................................................................................1, 3

*Cox Broadcasting Corp. v. Cohn*,
    420 U.S. 469 (1975)..................................................................................................9

*Doe v. Mast*,
    2024 WL 3371122 (W.D. Va. July 10, 2024)..........................................................8

*Fernandez v. Keisler*,
    502 F.3d 337 (4th Cir. 2007) ...................................................................................3

ii

*Goldsboro City Bd. of Educ. v. Wayne Cty. Bd. of Educ.*,
    745 F.2d 324 (4th Cir. 1984) ................................................................................1

*Herbert v. Nat'l Acad. of Science*,
    974 F.2d 192 (D.C. Cir. 1992) ..............................................................................6

*Hunt v. Nuth*,
    57 F.3d 1327 (4th Cir. 1995) ................................................................................1

*Innotec LLC v. Visiontech Sales, Inc.*,
    2018 WL 4387639 (W.D. Va. Sept. 14, 2018) ......................................................6

*Marcotte v. Virginia Beach City Pub. Schs.*,
    2018 WL 11509748 (E.D. Va. Aug. 24, 2018).......................................................1

*In re Murphy-Brown, LLC*,
    907 F.3d 788 (4th Cir. 2018) ................................................................................4

*N. Carolina Fisheries Ass'n v. Pritzker*,
    2015 WL 4488509 (E.D.N.C. July 22, 2015) ......................................................10

*Nat'l Ass'n of Immigr. Judges v. Owen*,
    160 F.4th 100 (4th Cir. 2025) ...............................................................................4

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
    585 U.S. 755 (2018)............................................................................................6, 7

*Nebraska Press Assn. v. Stuart*,
    427 U.S. 539 (1976)...............................................................................................9

*Nelson v. Middlesex Dep't of Soc. Servs.*,
    820 S.E.2d 400 (Va. Ct. App. 2018)......................................................................8

*Ostergren v. Cuccinelli*,
    615 F.3d 263 (4th Cir. 2010) ................................................................................5

*Overbey v. Mayor of Baltimore*,
    930 F.3d 215 (4th Cir. 2019) ...........................................................................3, 4

*S.C. State Conf. of NAACP v. Kohn*,
    2023 WL 144447 (D.S.C. Jan. 10, 2023)...............................................................5

*Schneider v. CCC-Boone, LLC*,
    2014 WL 12743788 (W.D.N.C. Nov. 21, 2014) ..................................................10

*Schneider v. CCC-Boone, LLC*,
    2015 WL 2400995 (W.D.N.C. May 19, 2015) .....................................................10

*Smith v. Daily Mail Pub. Co.*,
  443 U.S. 97 (1979).................................................................................... *passim*

*Soderberg v. Carrion*,
  999 F.3d 962 (4th Cir. 2021) ..................................................................................9

*United States v. Brooks*,
  524 F.3d 549 (4th Cir. 2008) ...............................................................................3, 4

*United States v. County of Culpeper*,
  245 F. Supp. 3d 758 (W.D. Va. 2017) ....................................................................1

*United States v. Murphy*,
  855 F. App'x 131 (4th Cir. 2021) ...........................................................................2

*United States v. Tockes*,
  530 F.3d 628 (7th Cir. 2008) ..................................................................................6

*United States v. Dinwiddie*,
  885 F. Supp. 1286 (W.D. Mo. 1995) ......................................................................4

*United States v. Dinwiddie*,
  76 F.3d 913 (8th Cir. 1996) ....................................................................................4

*United States v. White*,
  670 F.3d 498 (4th Cir. 2012) ..................................................................................3

*United States v. White*,
  810 F.3d 212 (4th Cir. 2016) ..................................................................................3

*Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*,
  2019 WL 6117308 (E.D. Tex. Nov. 18, 2019) .....................................................10

*In re Wall St. J.*,
  601 F. App'x 215 (4th Cir. 2015) (per curiam) ......................................................3

*Wikimedia Found. v. Nat'l Sec. Agency*,
  857 F.3d 193 (4th Cir. 2017) ...........................................................................10, 11

*Ex parte Young*,
  209 U.S. 123 (1908)..............................................................................................11

**Statutes**

Va. Code § 8.01-420.8 ..............................................................................................5

Va. Code § 16.1-305 .................................................................................................8

Va. Code § 17.1-293(E)(7) ........................................................................................6

Va. Code § 17.1-293(H) ..................................................................................................2

Va. Code § 19.2-389(A) .................................................................................................8

Va. Code § 32.1-127.1:03 ..............................................................................................8

Va. Code § 52-48 ............................................................................................................8

**Regulations**

6 Va. Admin. Code 20-120-30 .......................................................................................9

**INTRODUCTION**

"Federal courts generally disregard new arguments raised for the first time in a reply brief because it would be unfair to the nonmoving party and would risk improvident or ill-advised opinions on the legal issues raised." *Marcotte v. Virginia Beach City Pub. Schs.*, 2018 WL 11509748, *7 n.3 (E.D. Va. Aug. 24, 2018) (refusing to consider such arguments in denying Rule 12(b)(1) and (b)(6) motions) (citing *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995)).

It is unclear whether Defendants were "'sandbagging,'" as the Fourth Circuit has "describ[ed] [this] practice," *United States v. County of Culpeper*, 245 F. Supp. 3d 758, 769 n.8 (W.D. Va. 2017) (quoting *Goldsboro City Bd. of Educ. v. Wayne Cty. Bd. of Educ.*, 745 F.2d 324, 327 n.3 (4th Cir. 1984)), or turning to new theories in a vain effort to circumvent Plaintiffs' Omnibus Opposition to their Motions (Doc. 48). Either way, as in *County of Culpeper*, their new "arguments fail" to change the outcome "[e]ven if properly before the Court." *Id.*

Hade asserts Plaintiffs Lee Enterprises and Lee BHM LLC (collectively, "Lee") lack standing for new reasons. He argues "the Dissemination Restriction is subject to an even more relaxed standard of intermediate scrutiny," Defendant Hade's Reply in Supp. of Motions to Dismiss 12-13 ("Doc. 59"), a theory not raised in his motion based on a case he never mentioned. The Clerks claim this case threatens the constitutionality of other statutes not discussed in their moving papers. And all Defendants assert *Courthouse News Serv. v. Smith*, 126 F.4th 899 (4th Cir. 2025), foreclosed the ability of Courthouse News ("CNS") and Lee ("Plaintiffs") to assert their right to gather news from OCRA subscribers, an argument not raised before despite being the basis of the Complaint, ¶ 62, and an issue *Smith* did not address.

As in *Marcotte*, the Court can just "disregard" these new arguments. Even if the Court considers them, it should hold – as in *County of Culpeper* – that all these "arguments fail."

1

**I.**

**DEFENDANTS' NEW THEORY THAT CNS' AND LEE'S NEWSGATHERING CLAIM
IS FORECLOSED MISREADS *SMITH* AND OVERLOOKS *OVERBEY***

CNS' and Lee's First Amendment claim has not changed:  By restraining subscribers to

Virginia's Officer of the Court Remote Access ("OCRA") from "in any way redistribut[ing] to

any third party," or  making "available to the general public," any information accessed through

OCRA, Va. Code § 17.1-293(H),[1] this Dissemination Restriction "infringe[s] Plaintiffs' First

Amendment rights, and the rights of the public, to gather, disseminate and read about

newsworthy information," Compl., ¶ 62, from those who "subscribe[] to OCRA."  *Id.*, ¶ 90.[2]

Defendants' arguments have changed, however. They now contend *Smith* held "Plaintiffs

have no right to 'gather'" information from OCRA.  Defendant Clerks Reply in Supp. of Rule

12(b)(6) Mot. to Dismiss 4 ("Clerks Reply II"); Defendant Clerks Reply in Supp. of Rule

12(b)(1) Mot. to Dismiss 1 ("Clerks Reply I"); Hade Reply 6-7.  The "[C]ourt [is] not required to

consider [this] argument" because "new arguments cannot be raised in a reply brief."  *United

States v. Murphy*, 855 F. App'x 131, 132 (4th Cir. 2021).  But "[e]ven if [Defendants] had not

waived this argument by failing to squarely raise it until [the] Reply Brief[s], it is unavailing,"

*Clendening v. United States*, 19 F.4th 421, 430 (4th Cir. 2021), as *Smith* held no such thing.

The focus of *Smith* was the Access Restriction, which prevents CNS from subscribing to

OCRA.  But winning that claim alone would be pyrrhic because the Dissemination Restriction

would prevent CNS from reporting information in those records.  So it sued over both and did

not identify a willing speaker because ***CNS would be the speaker*** if the Access Restriction fell.

---

[1] Defendant Hade's preferred dictionary definitions of "any data" as used in the Dissemination
Restriction all involve "'factual information'" or "'information.'"  Hade Reply 10.

[2] Defendant Clerks thus clearly err in mistakenly asserting "Plaintiffs have failed to plead any
alleged right to 'gather news' in Count One of their Complaint." Clerks Reply II 3 & Reply I 5.

This is what *Smith* meant in saying that, because the Access Restriction did not fall, "the Dissemination Restriction does not apply to Courthouse News's speech." 126 F.4th at 917. The Court did not hold CNS (and Lee) "lack any right to 'gather'" information from OCRA subscribers, Clerks Reply II 2.[3] In fact, it recognized exactly the opposite – that CNS (and Lee) could "'assert a right to receive speech'" from OCRA subscribers if they could "'show that there exists a speaker willing to convey the information to [them].'" *Smith*, 126 F.4th at 917.[4]

Having found CNS lacked standing, *Smith* did not address the merits of a newsgathering claim, and it is axiomatic "'that panel authority that does not address an issue is not binding as to the unaddressed issue.'" *United States v. White*, 670 F.3d 498, 523-24 (4th Cir. 2012) (Floyd, Circuit Judge, concurring in part), *abrogation on other grounds*, 810 F.3d 212, 220 (4th Cir. 2016); *Fernandez v. Keisler*, 502 F.3d 337, 343 n.2 (4th Cir. 2007) ("stare decisis is not applicable unless the issue was 'squarely addressed' in the prior decision").

Nor could *Smith* have "foreclosed" this claim. Clerks Reply I 3; Hade Reply 6. Before *Smith*, the Fourth Circuit held the media have standing to assert a "legally protected interest" in their "right to gather news, which derives from the First Amendment." *Overbey v. Mayor of Baltimore*, 930 F.3d 215, 227-28 & nn.11, 13 (4th Cir. 2019). "As our court has consistently recognized, 'a panel of this court cannot over-rule, explicitly or implicitly, the precedent set by a prior panel of this court.'" *United States v. Brooks*, 524 F.3d 549, 559 n.17 (4th Cir. 2008). If

---

[3] Unless otherwise noted, citations for internal quotations are omitted, **bold italicized** emphases are added and those only in *italics* were in the original.

[4] Defendants attempt to blur lines by asserting *Smith* held CNS and Lee "lack any right to 'gather' OCRA pleadings," Clerks Reply II 2, 4, and bars a "constitutional right of access" to OCRA "through a proxy." Hade Reply 1. This merges two distinct concepts: the right of access to court records, which was at issue in *Smith*, and the right to gather news, which *Smith* declined to address. The media have standing to assert both, Opp. 11 (citing, e.g., *In re Wall St. J.*, 601 F. App'x 215, 218 (4th Cir. 2015) (per curiam) (sealing and gag orders)); *cf.* Hade Reply 7 (misstating Opp. 11 as describing Dissemination Restriction), but only the latter is at issue here.

3

"two panel decisions conflict, [the] earlier decision" – here, *Overbey* – "controls unless it has been overruled by subsequent en banc or Supreme Court decision." *Id.*

On this issue, then, this case is controlled by *Overbey*, which Hade continues to ignore. The Clerks say only that *Overbey* "fails to even mention a 'prior restraint,'" Clerks Reply I 5 & Reply II 4, which is beside the point. Where they err is in saying CNS and Lee "pled a single prior restraint claim" and must "allege that the statute …. specifically restrains their speech." Clerks Reply II 2 & 11. CNS and Lee do not allege the Restriction imposes a prior restraint on their speech, but on their sources of information – subscribers to OCRA. Compl., ¶¶ 61, 67-85 & 90. That claim is ripe because those sources "are presently subject" to the Restriction, Clerks Reply I 6, and are censoring their speech to CNS and Lee to comply. Compl., ¶¶ 11-12, 43, 77-79 & 81-85. The Restriction thus "has interfered," and continues to interfere, "with [their] right to receive newsworthy information from willing speakers." *Overbey*, 930 F.3d at 228-29. The resulting "significant and deleterious effect on [their] reporting" violates their right to gather news unless the restriction on their sources – here, the Dissemination Restriction – survives constitutional scrutiny, regardless of whether it is called a prior restraint. *Id.*; Opp. 29-33.[5]

---

[5]  As "government action that would prevent a communication from reaching the public," the Dissemination Restriction is clearly "[a] prior restraint." *United States v. Dinwiddie*, 885 F. Supp. 1286, 1298 (W.D. Mo. 1995), *aff'd and remanded*, 76 F.3d 913 (8th Cir. 1996). For example, the Fourth Circuit has recognized gag orders on speech about civil litigation are "prior restraints." *In re Murphy-Brown, LLC*, 907 F.3d 788, 796-97 (4th Cir. 2018). Defendant Clerks claim the Dissemination Restriction is not analogous because those gagged are lawfully entitled to the information the order prevents them from disclosing. Clerks Reply II 7. But so, too, are OCRA subscribers lawfully entitled to access records on OCRA. That gag orders are imposed by one branch of government (judicial) and the Dissemination Restriction by another (legislative), *id.* at 6, is immaterial. *See, e.g., Smith v. Daily Mail Pub. Co.*, 443 U.S. 97, 100-02 (1979) (affirming ruling that "statute operated as a prior restraint on speech"); Opp. 37 n.24. The Clerks also err in saying Judge Gregory's dissent in *Smith* finding the Dissemination Restriction is a prior restraint was "rejected" by the vote denying rehearing en banc. Clerks Reply II 10-11. "Mere disagreement with the merits of a panel's decision is seldom sufficient grounds" for "rehearing [a] case en banc." *Nat'l Ass'n of Immigr. Judges v. Owen*, 160 F.4th 100, 101 (4th Cir. 2025) (Wilkinson, Circuit Judge, concurring in denial of rehearing en banc).

## II.

### UNABLE TO PASS EVEN INTERMEDIATE SCRUTINY, DEFENDANT HADE SEEKS "MORE RELAXED" SCRUTINY INAPPLICABLE TO RESTRICTIONS ON SPEECH

None of Defendants' three reply briefs mention *Courthouse News Serv. v. Hade*, 580 F. Supp. 3d 289 (E.D. Va. 2022) ("*Hade I*"), which denied motions to dismiss on the same Rule 12(b)(1) and 12(b)(6) grounds Defendants assert here. As *Hade I* shows, the Court need not, at this stage, decide whether the Dissemination Restriction is a prior restraint or another restriction subject to strict scrutiny – or instead is subject to intermediate scrutiny as a time, place and manner regulation – because the Complaint contains the same allegations *Hade I* held "could lead to the reasonable inference that the … restriction is not narrowly tailored to preserve a significant governmental interest and thus, could violate the First Amendment" even under intermediate scrutiny. *Id.* at 296; *see* Compl., ¶¶ 58-59, 63-66 & 91.[6]

Moreover, dismissal on intermediate scrutiny grounds is rarely appropriate because (1) Defendants' bear the burden of proof and (2) their "burden in this regard is satisfied only when [they] present[] 'actual evidence supporting [their] assertion[s].'" *Billups v. City of Charleston*, 961 F.3d 673, 688 (4th Cir. 2020); *S.C. State Conf. of NAACP v. Kohn*, 2023 WL 144447, *1, 8 (D.S.C. Jan. 10, 2023) (denying motion to dismiss claim over ban on "'scraping'" electronic docket sheets under intermediate scrutiny as "factual disputes render determination of the First Amendment issues more appropriate for a motion for summary judgment").

Rather than attempt to address *Hade I* (or *Billups*), Hade seeks dismissal on a new ground and case not cited before: "As a regulation of professional conduct, that only incidentally

---

[6] *See also* Va. Code § 8.01-420.8 (requiring parties to redact sensitive information such as Social Security and financial account numbers **before** filing); *Ostergren v. Cuccinelli*, 615 F.3d 263, 286-87 (4th Cir. 2010) (clerks' "failure to redact SSNs before placing land records online means that barring Ostergren's protected speech" – by posting those records online – "would **not be narrowly tailored** to Virginia's interest in protecting individual privacy").

burdens speech, the Dissemination Restriction is subject to an ***even more relaxed standard of intermediate scrutiny***, that 'just requires that the restriction be sufficiently drawn to protect a substantial state interest.'" Hade Reply 13 (quoting *360 Virtual Drone Servs. v. Ritter*, 102 F.4th 263, 278 (4th Cir. 2024), without noting petition for certiorari docketed). But this Court need not consider this new ground for asserting CNS and Lee "fail[] to state a claim," as "consideration of new arguments raised for the first time in a reply brief would be 'manifestly unfair' to the opposing side." *Innotec LLC v. Visiontech Sales, Inc.*, 2018 WL 4387639, *2 n.1 (W.D. Va. Sept. 14, 2018) (quoting *Herbert v. Nat'l Acad. of Science*, 974 F.2d 192, 195 (D.C. Cir. 1992)).

Moreover, Defendant Hade's new case said "the precedent of this Court and the Supreme Court establish that professional regulations – like other regulations implicating speech – are subject to various levels of scrutiny, depending on their nature," and described the analysis needed to determine whether a statute "is a regulation of 'speech as speech,' or a regulation of professional conduct" as a "thicket," through which "'drawing the line … can be difficult.'" *Ritter*, 102 F.4th at 271-72 (quoting *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 769 (2018) ("*NIFLA*")). But Hade makes no effort to follow the Fourth Circuit's "guideposts through this thicket," *id.* at 272, as his "brief fails to conduct the rudimentary legal analysis necessary to establish" that the OCRA could possibly be considered a regulation of professional conduct that only incidentally burdens speech. *In re Complaint of Royal Carribean Cruises Ltd.*, 459 F. Supp. 2d 1284, 1293 (S.D. Fla. 2006). "Unsupported and undeveloped arguments like this are considered waived." *United States v. Tockes*, 530 F.3d 628, 633 (7th Cir. 2008).

There is an obvious reason why Defendant Hade does not even attempt to draw this line: not only is OCRA ***not*** limited to attorneys – as employees of governmental agencies may also subscribe, Va. Code § 17.1-293(E)(7) – it does not implicate "legal services or advice" or the

6

"[attorney]-patient relationship," *Ritter*, 102 F.4th at 275, or any other touchstone identified by the Supreme Court – which "cited cases about malpractice, anticompetitive agreements, client solicitation, and informed consent" – suggesting OCRA is sufficiently akin to a "generally applicable licensing regime that restricts the practice of law to bar members and entities owned by bar members" to be considered a regulation of the professional conduct of attorneys that only "'incidentally involves speech.'" *Cap. Associated Indus., Inc. v. Stein*, 922 F.3d 198, 207 (4th Cir. 2019) (quoting *NIFLA*, 585 U.S. at 756). As in *NIFLA*, the Dissemination Restriction falls "outside the context of 'professional conduct'" because it "'applie[s] to all interactions" between an OCRA subscriber (lawyer or not) and anyone – far beyond clients – who might dissemination that information to the public, "regardless of whether [legal advice] [was] ever sought, offered, or performed.'" *Ritter*, 102 F.4th at 272 (quoting *NIFLA*, 585 U.S. at 770).

OCRA access is not limited to court records on subscribers' own cases. They can access all civil court records on OCRA but cannot talk about any information in any of those records with anyone who might make it available to the public (i.e., a reporter). It does not regulate conduct at all (even forwarding a court record to a reporter *is* speech), and "undoubtedly burdens protected speech," *Billups*, 961 F.3d at 683 (rejecting argument regulation was of professional conduct), about new civil complaints and other non-confidential public records in ongoing civil litigation, a matter of "important [public] interest." *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 328 (4th Cir. 2021). Consequently, Defendant Hade's belated invitation to apply the "even more relaxed" scrutiny applicable to regulations of professional conduct must be rejected.[7]

---

[7] Defendant's belated and benighted attempt to rely on *Ritter* tacitly concedes that, as in *Hade I*, he cannot carry his burden to show the Dissemination Restriction is narrowly drawn to protect against downloading and datamining. Neither CNS nor Lee can subscribe to OCRA, so they must ask a subscriber for information from it. It is inconceivable a subscriber could download and *transfer* an entire OCRA database to CNS or Lee and, even if not, Defendants' subscription agreements can be revised to explicitly prevent it, just as CNS' Case Portal terms do. Opp. 8, 46.

### III.

### DEFENDANT CLERK'S NEW THEORY FAILS BECAUSE INVALIDATING A RESTRAINT ON DISCLOSURE OF NON-CONFIDENTIAL RECORDS WILL NOT THREATEN LAWS BARRING DISCLOSURE OF CONFIDENTIAL RECORDS

Continuing their efforts to avoid the actual issue, Defendant Clerks float yet another new theory in their reply – to wit, if OCRA's ban on disclosure of non-confidential information in public records violates the First Amendment, then statutes restricting disclosure of confidential information in non-public records may be unconstitutional, as well.  Clerks Reply II 4-5

Not only does this new theory come too late, *see, e.g.., Clendening*, 19 F.4th at 430 n.7, it is without merit.  The non-confidential civil case records available on OCRA are public under Virginia and First Amendment law, and those same records for a given circuit court can be viewed by any member of the public at the courthouse.  *See Hade I*, 580 F. Supp. 3d at 292-95.

In contrast, the statutes cited by the Clerk involve records required by law "'to be kept confidential'" except as provided in the statute.  *Doe v. Mast*, 2024 WL 3371122, *13 (W.D. Va. July 10, 2024) (quoting *Nelson v. Middlesex Dep't of Soc. Servs.*, 820 S.E.2d 400, 411 (Va. Ct. App. 2018) ("citing Va. Code § 16.1-305," which "protects the confidentiality" of "juvenile court records")); Va. Code § 52-48 ("records … or information relative to criminal intelligence or any terrorism investigation … ***shall be confidential***"); Va. Code § 32.1-127.1:03 ("There is hereby recognized an individual's ***right of privacy*** in the content of his health records.").[8]

First Amendment law has long recognized that government may bar public disclosure of

---

[8]  The final statute cited by Defendant Clerks, Va. Code § 19.2-389(A), treats criminal history records as confidential while allowing designated disclosure.  Despite that, its regulations allow disclosures to the public about information in those records that the Dissemination Restriction prohibits: "Nothing in this chapter shall be construed as prohibiting a criminal justice agency from disclosing to the public factual information concerning the status of an investigation; the apprehension, arrest, release or prosecution of an individual; the adjudication of charges; or the correctional status of an individual, which is related to the offense for which the individual is currently within the criminal justice system."  6 Va. Admin. Code 20-120-30.

the contents of records made confidential by law, but only where, *inter alia*, that information has

not been "'released to the public in official court records." *Soderberg v. Carrion*, 999 F.3d 962,

969 (4th Cir. 2021) (quoting *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495-96 (1975)).[9]

As the court records on OCRA have been "'released to the public,'" statutes involving records

confidential by law and not released to the public are inapt and unthreatened by this litigation.

**IV.**

**DEFENDANT HADE'S ATTEMPT TO CONVERT HIS STANDING ATTACK FROM
FACIAL TO FACTUAL IS PROCEDURALLY AND FACTUALLY FLAWED**

Defendant Hade's standing argument eschews the theory asserted in his moving papers –

that Lee Enterprises lacks standing because only Lee BHM publishes Lee's Virginia newspapers

– and instead asserts two new theories.  Hade argues Lee Enterprises is not registered to do

business in Virginia.  And he notes Lee BHM is registered to do business, and has litigated

several First Amendment issues, in Virginia as a corporation, not an LLC.  Hade Reply 2-5.

---

[9] As *Soderberg* made clear, when a statute prohibits disclosure of information in public court records "'the most exacting [i.e., strict] scrutiny'" applies regardless of whether the statute is called a "'prior restraint'" or a "'penal sanction'" (because another provisions allows punishment of those who publish regardless of the prohibition, in *Soderberg*, by contempt of court).  999 F.3d at 968 n.3.  Defendant Clerks, at Reply II 7, ask the Court to ignore *Soderberg* based on a decision in a RICO case long before *Soderberg* – *Alexander v. United States*, 509 U.S. 544 (1993) – and their mis-citation of a decision by single Justice explaining why a prior restraint should be stayed (because it imposes "'immediate and irreversible sanction'" without the procedure protections given a "'criminal penalty or judgment in a defamation case'").  *CBS, Inc. v. Davis*, 510 U.S. 1315, 1317 (1994) (Blackmun, J., in chambers) (quoting *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 559 (1976)).  Of course, this Court cannot ignore *Soderberg*.  Nor should it, as *Soderberg* was quoting a Supreme Court decision affirming a ruling invaliding a "statute" because it "operated as a prior restraint on speech."  *Daily Mail*, 443 U.S. at 100.  As another statute provided that violations of that prior restraint constituted a misdemeanor, the Supreme Court explained that "[w]hether we view the statute as a prior restraint or as a penal sanction for publishing lawfully obtained, truthful information is not dispositive because even the latter action requires the highest form of state interest to sustain its validity."  *Id.* at 101-02.  In contrast, *Anderson* was simply explaining why the forfeiture provision in a criminal statute – the Racketeer Influenced and Corrupt Organizations Act (RICO), which allowed seizure of obscene material after defendant was convicted – was not a prior restraint.  509 U.S. at 553-54.

9

As it happens, Lee BHM changed its corporate structure to an LLC in 2024 and recently changed its Virginia registration to reflect it. Decl. of D. Kvapil, ¶¶ 3-4 & Exhs. A-B. And Lee Enterprises has also registered do business in Virginia, as was its intent since assuming employer status for the staffs of its Virginia newspapers, and received its certification. *Id.*, ¶ 5 & Exh. C.

Hade's attacks on the Lee entities' standing thus fail on the merits, in addition to being procedurally flawed. The Lee entities have been Plaintiffs from the start. These arguments were available when Hade filed his motion and courts do "not accept new arguments, or a change of theory raised for the first time in a reply." *Virginia Innovation Sciences, Inc. v. Amazon.com, Inc.*, 2019 WL 6117308, *4 (E.D. Tex. Nov. 18, 2019); *Schneider v. CCC-Boone, LLC*, 2014 WL 12743788, *3 (W.D.N.C. Nov. 21, 2014) ("The Court will not analyze the merits of jurisdiction under CAFA because this change in jurisdictional theory midstream will not be allowed."), *on reconsideration*, 2015 WL 2400995 (W.D.N.C. May 19, 2015).

Hade's attempt to change his facial challenge into a factual one is also improper. "'A defendant may challenge [standing at the motion-to-dismiss stage] in **one of two ways**: facially **or** factually.'" *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (brackets in original). What a defendant cannot do is what Hade did here – change from a facial challenge in his moving papers to a factual one after the Opposition was filed, *see* Hade Reply 3 – and "[t]he court [should] reject[] the state defendant['s] belated attempt to couch [his] attack as a factual challenge" in his "reply" brief after his motion "presented a facial challenge." *N. Carolina Fisheries Ass'n v. Pritzker*, 2015 WL 4488509, *3 n.5 (E.D.N.C. July 22, 2015);[10] *see also Blick v. Shapiro & Brown, LLP*, 2018 WL 1547124, *2 n.3 (W.D. Va. Mar. 29, 2018)

---

[10] Indeed, they present different issues. Hade's facial attack assumed the Complaint's allegations are true but argued they were insufficient to allege standing. *Wikimedia*, 857 F.3d at 208. He cannot now assert a factual challenge, which "contend[s] 'that the jurisdictional allegations of the complaint [are] not true.'" *Id.*; *N. Carolina Fisheries*, 2015 WL 4488509 at *3 n.5.

10

("Court declines to consider this new evidence" contained in "exhibits … [to the] reply brief").

## V.

### DEFENDANT CLERKS DO NOT EXPLAIN HOW THEIR NEW THEORY TO LIMIT *EX PARTE YOUNG* CAN SQUARE WITH THEIR RESTRICTIONS ON OCRA ACCESS

In their reply, Defendant Clerks withdraw their sovereign immunity argument based on their discretion to enforce the Dissemination Restriction by revoking OCRA access for violations of that Restriction. Clerks Reply I 11. But they raise a new argument that any other "injunction of broader effect" would exceed the scope of *Ex parte Young*, 209 U.S. 123 (1908). *Id.*

In their moving papers, the Clerks focused on two things: their lack of an enforcement relationship with Virginia State Bar disciplinary proceedings and their discretion to revoke OCRA access. Clerks Mem. I 12-14. The first was never at issue; the Complaint in this case never sought any "injunctive and declaratory relief regarding enforcement of the Rules of Professional Conduct, other ethical standards, or disbarment proceedings." *Id.* 12. And the second they now withdraw, at least with respect to their discretion to revoke OCRA access.

But the relief sought is not limited to enjoining their ability to revoke OCRA access for violations of the Dissemination Agreement. Rather, the Complaint seeks to enjoin Defendant Clerks from continuing to enforce OCRA's Dissemination Restriction and related declaratory relief, Compl., Prayer ¶¶ 1-3, which the Clerks enforce by, *inter alia*, including an even stricter version in the terms and conditions in the subscription agreements, *id.*, Exhs. 3-5, the "original version" of which was prepared by Hade's OES. Req. for Jud. Not., Exh. 4.[11]

---

[11] As the alleged "'Wizard of Oz'" behind the OCRA curtain, Compl, Exh. 6 at 3 & 9, Hade and OES do not have a get-out-of-litigation-over-OCRA-free card because the statute gives Defendant Clerks "discretion" to enforce the Dissemination Restriction. Hade Reply 5-6. Many forces may be brought to bear on how discretion is exercised, and the Complaint alleges more than enough facts to show Hade and OES have exercised control over enforcement of that Restriction, just as *Hade I* held regarding both the Access and Dissemination Restrictions. And Plaintiffs' Motion for Leave to Amend identifies additional facts that can be alleged.

11

Consequently, the relief sought would prohibit Defendants from requiring OCRA users to sign agreements that include the Dissemination Restriction, not just prohibit revoking access after the fact. Defendant Clerks have offered no explanation of how their relationship with the Dissemination Restriction does not extend to enforcing it through the subscription agreements.[12]

## CONCLUSION

Unable to adequately address the authorities and arguments in Plaintiffs' Ominbus Opposition that demonstrate their motions to dismiss should fail, Defendants presented a slew of new arguments and authorities for the first time in their reply briefs. As shown, the Court need not consider these new issues and, even if it does, they cannot save Defendants' motions from facing the same fate as the same motions denied at the same stage of the case in *Hade I*.

WHEREFORE, Plaintiffs CNS and Lee respectfully request that the Court deny all Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) & (b)(6).

Dated: March 26, 2026                                    Respectfully Submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**          **TROUTMAN PEPPER LOCKE LLP**

By: */s/ Roger Myers*                                    By: */s/ Dabney J. Carr IV*
Roger Myers                                              Dabney J. Carr IV
*Pro hac vice* forthcoming                               VSB No. 28679
Rachel Matteo-Boehm                                      Lauren H. Miller
*Pro hac vice* forthcoming                               VSB No. 100566
3 Embarcadero Center, 7th Floor                          P.O. Box 1122
San Francisco, California 94111                          Richmond, Virginia 23218
Tel: (415) 675-3400                                      Tel: (804) 697-1238
roger.myers@bclplaw.com                                  dabney.carr@troutman.com
rachel.matteo-boehm@bclplaw.com                          lauren.h.miller@troutman.com

*Counsel for Plaintiffs Courthouse News Service,*
*Lee Enterprises, Incorporated and Lee BHM LLC*

---

[12] Of course, this relief would not prevent the agreements from prohibiting subscribers from downloading or datamining a circuit court's entire OCRA database, which are "readily available, less-speech-restrictive alternatives" to the Dissemination Restriction. *Billups*, 961 F.3d at 688.

# Declaration of Danelle Kvapil

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

COURTHOUSE NEWS SERVICE; LEE
ENTERPRISES, INCORPORATED; AND
LEE BHM LLC, PUBLISHER OF THE
RICHMOND TIMES-DISPATCH, THE
ROANOKE TIMES, BRISTOL HERALD
COURIER, LYNCHBURG NEWS AND
ADVANCE, FREDERICKSBURG FREE
LANCE STAR AND THE DAILY
PROGRESS.

        Plaintiff,

v.

KARL R. HADE, in his official
capacity as Executive Secretary of the Office
of Executive Secretary of the Supreme Court
of Virginia,

and

EDWARD JEWETT, in his official
capacity as Clerk of the Circuit Court for the
City of Richmond, Virginia,

and

BRENDA HAMILTON, in her official
capacity as Clerk of the Circuit Court for the
City of Roanoke, Virginia,

and

KELLY FLANNAGAN, in her official
capacity as Clerk of the Circuit Court for the
City of Bristol, Virginia

        Defendants.

Civil Action No. 1:25-cv-0075-JPJ-PMS

1

## <u>DECLARATION OF DANELLE KVAPIL</u>

I, Danelle Kvapil, declare and state as follows:

1.      I am the Director of Privacy & Manager, Legal Services at Lee Enterprises, Incorporated ("Lee Enterprises" or "Lee").  I have been employed by Lee for 11 years and have served in my role as Manager, Legal Services for that entire period, and have served in my role as Director of Privacy for one year.

2.      In my role as Manager, Legal Services, I have personal knowledge of Lee's corporate filings and state registrations for itself and its subsidiaries, including Lee BHM LLC (f/k/a Lee BHM Corp.).

3.      Lee BHM Corp. was incorporated in the State of Delaware on February 12, 2020, and subsequently registered to do business in the Commonwealth of Viriginia. On September 10, 2024, Lee BHM Corp. filed a Certificate of Conversion with the State of Delaware, changing its name to Lee BHM LLC ("Lee BHM"). The effective date of the Certificate of Conversion is September 13, 2024. A true and correct copy of the Certificate of Conversion is attached hereto as Exhibit A.

4.      Lee BHM has also now changed its registration with the Commonwealth of Viriginia to reflect the LLC conversion and name change.  At the time of the commencement of this ligation, Lee BHM was still identified as "Lee BHM Corp." on Virigina's State Corporation Commission Clerk's Information System website.  However, Lee BHM filed documents with the Commonwealth of Viriginia to update the registration, and a certificate of registration to do business in Virginia has now been issued to Lee BHM LLC.  A true and correct copy of the Certificate of Registration is attached hereto as Exhibit B.

2

5.      On January 1, 2025, the Viriginia employees of Lee BHM shifted their employment to Lee Enterprises, Incorporated.  At that time, it was the intention of Lee Enterprises to register to do business in the Commonwealth of Virginia.  Lee Enterprises recently filed documents with the Commonwealth of Viriginia to register to do business in the Commonwealth, and a certificate of registration to do business in Virginia has now been issued to Lee Enterprises.  A true and correct copy of the Certificate of Registration is attached hereto as Exhibit C.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed in Davenport, Iowa on this 26TH day of March 2026.

_____
Danelle Kvapil

3

# Declaration of Danelle Kvapil Exhibit A



# Delaware

Page 1

The First State

I, CHARUNI PATIBANDA-SANCHEZ, SECRETARY OF STATE OF THE
STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND
CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "LEE BHM LLC" AS
RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF INCORPORATION, FILED THE TWELFTH DAY OF
FEBRUARY, A.D. 2020, AT 11:35 O`CLOCK A.M.

CERTIFICATE OF CONVERSION, CHANGING ITS NAME FROM "LEE BHM
CORP." TO "LEE BHM LLC", FILED THE TENTH DAY OF SEPTEMBER, A.D.
2024, AT 1:55 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF
THE AFORESAID  CERTIFICATE OF CONVERSION  IS THE THIRTIETH DAY
OF SEPTEMBER, A.D. 2024.

CERTIFICATE OF FORMATION, FILED THE TENTH DAY OF SEPTEMBER,
A.D. 2024, AT 1:55 O`CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF
THE AFORESAID  CERTIFICATE OF FORMATION  IS THE THIRTIETH DAY OF
SEPTEMBER, A.D. 2024.



Charuni Patibanda-Sanchez, Secretary of State

7848978  8100H
SR# 20261286910

Authentication: 203409760
Date: 03-19-26

You may verify this certificate online at corp.delaware.gov/authver.shtml

# Delaware

Page 2

### The First State

*AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID*

*CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE*

*AFORESAID LIMITED LIABILITY COMPANY, "LEE BHM LLC".*



Charuni Patibanda-Sanchez, Secretary of State

7848978  8100H
SR# 20261286910

Authentication: 203409760
Date: 03-19-26

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 11:35 AM 02/12/2020
FILED 11:35 AM 02/12/2020
SR 20201030248 - File Number 7848978

## CERTIFICATE OF INCORPORATION
## OF
## LEE BHM CORP.

The undersigned, for the purpose of forming a corporation pursuant to the provisions of the General Corporation Law of the State of Delaware, does hereby certify as follows:

FIRST:        The name of the corporation is **Lee BHM Corp.**

SECOND:     The address of the registered office of the corporation in the State of Delaware shall be 251 Little Falls Drive, Wilmington, DE 19808, located in the County of New Castle, and the name of its registered agent at such address shall be Corporation Service Company.

THIRD:        The purpose of the corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of Delaware as set forth in Title 8 of the Delaware Code, as amended (the "GCL").

FOURTH:     The total number of shares of all classes of stock which the corporation has authority to issue is one thousand (1,000) shares of common stock, with no par value (the "Common Stock").

FIFTH:        The name and address of the incorporator is Brett R. Marshall, c/o Lane & Waterman, LLP, 220 N. Main Street, Suite 600, Davenport, Iowa 52801.

SIXTH:        The corporation is to have perpetual existence.

SEVENTH:    In furtherance and not in limitation of the powers conferred by statute, the board of directors is expressly authorized to make, alter or repeal the by-laws of the corporation.

EIGHTH:     The corporation reserves the right to amend, alter, change or repeal any provision contained in this Certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred on the stockholders herein are granted subject to this reservation.

NINTH:        A director of this corporation shall not be personally liable to the corporation or its stockholders for monetary damages for breach of any fiduciary duty as a director, except (i) for any breach of the director's duty of loyalty to the corporation or its stockholders, (ii) for acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of the GCL, as the same exists or hereafter may be amended, or (iv) for any transaction from which the director derived an improper personal benefit. If the GCL is amended after the date of incorporation of the corporation to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director of the corporation shall be eliminated or limited to the fullest extent permitted by the GCL, as so amended.

1

Any repeal or modification of the foregoing paragraph by the stockholders of the corporation shall be prospective only, and shall not adversely affect any limitation on the personal liability of a director of the corporation existing at the time of such repeal or modification.

By: _____
Brett R. Marshall, Incorporator

2

STATE OF DELAWARE
CERTIFICATE OF CONVERSION
FROM A CORPORATION TO A
DELAWARE LIMITED LIABILITY COMPANY
PURSUANT TO SECTION 18-214 OF
THE DELAWARE LIMITED LIABILITY COMPANY ACT

1. The jurisdiction where the corporation was first formed is DELAWARE
   and the date the corporation first formed is 2/12/2020                  .

2. The jurisdiction immediately prior to filing this Certificate is DELAWARE         .

3. The name of the corporation immediately prior to filing this Certificate is
   LEE BHM CORP.                                                            .

4. The name of the limited liability company as set forth in the Certificate of
   Formation is LEE BHM LLC                                                 .

5. The effective date and time of this application, if different than the date and time
   of filing:    Date: 9/30/2024

IN WITNESS WHEREOF, the undersigned have executed this Certificate on the
_____9+h____ day of __Se0 ful7__, A.D. 2024                                  .

                                         By: _____
                                              Authorized Person

                                         Name: T. F. OLT III, SECRETARY
                                                   Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered  01:55 PM 09/10/2024
FILED  01:55 PM 09/10/2024
SR 20243645789 - File Number 7848978

## STATE OF DELAWARE
## CERTIFICATE OF FORMATION
## OF LIMITED LIABILITY COMPANY

The undersigned authorized person, desiring to form a limited liability company pursuant to the Limited Liability Company Act of the State of Delaware, hereby certifies as follows:

1.    The name of the limited liability company is LEE BHM LLC

2.    The Registered Office of the limited liability company in the State of Delaware is located at 251 LITTLE FALLS DRIVE (street), in the City of WILMINGTON , Zip Code 19808 . The name of the Registered Agent at such address upon whom process against this limited liability company may be served is CORPORATION SERVICE COMPANY

3. The effective date and time of this application, if different than the date and time of filing:    Date: 9/30/2024

By: _____
Authorized Person

Name: T. F. OLT III, SECRETARY
Print or Type

State of Delaware
Secretary of State
Division of Corporations
Delivered 01:55 PM 09/10/2024
FILED 01:55 PM 09/10/2024
SR 20243645789 - File Number 7848978

# Declaration of Danelle Kvapil Exhibit B

# Commonwealth of Virginia



## STATE CORPORATION COMMISSION

Richmond, March 24, 2026

This certificate of registration to transact business in Virginia is this day issued for

## LEE BHM LLC

a limited liability company organized under the laws of Delaware and the said limited liability company is authorized to transact business in Virginia, subject to all Virginia laws applicable to the company and its business.

STATE CORPORATION COMMISSION
Attest:

_____
Clerk of the Commission

**COMMONWEALTH OF VIRGINIA
STATE CORPORATION COMMISSION**

AT RICHMOND, MARCH 24, 2026

The State Corporation Commission has found the accompanying application for a certificate of registration to transact business in Virginia submitted on behalf of

## LEE BHM LLC

to comply with the requirements of law, and confirms payment of all required fees. Therefore, it is ORDERED that this

## CERTIFICATE OF REGISTRATION TO TRANSACT BUSINESS IN VIRGINIA

be issued and admitted to record with the application in the Office of the Clerk of the Commission, effective March 24, 2026.

The limited liability company is registered to transact business in Virginia, subject to all Virginia laws applicable to the limited liability company and its business.

STATE CORPORATION COMMISSION

By

Samuel T. Towell
Commissioner



**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

**Office of the Clerk**

March 24, 2026

LANE & WATERMAN LLP
BARBARA L. NICOL
220 NORTH MAIN STREET
Suite 600
Davenport, IA, 52801

**RECEIPT**

RE:               LEE BHM LLC

ID:               11989261

FILING NO:        2603249787436

WORK ORDER NO:    202603237185322

Dear Customer:

This is your receipt for $100.00 to cover the fee for filing an application for a certificate of registration for a limited liability company with this office.

The effective date of the certificate of registration is March 24, 2026.

If you have any questions, please call (804) 371-9733 or toll-free 1-866-722-2551.

Sincerely,

Bernard J. Logan
Clerk of the Commission

Delivery Method:  Email

TYLER BUILDING, 1300 EAST MAIN STREET, RICHMOND, VA 23219-3630 ◆ WEBSITE: scc.virginia.gov

# Declaration of Danelle Kvapil Exhibit C

# Commonwealth of Virginia

## STATE CORPORATION COMMISSION

Richmond, March 26, 2026

This is to certify that a certificate of authority to transact business in Virginia was this day issued and admitted to record in this office for

## Lee Enterprises, Incorporated

a corporation organized under the laws of Delaware and that the said corporation is authorized to transact business in Virginia, subject to all Virginia laws applicable to the corporation and its business.



STATE CORPORATION COMMISSION
Attest:

_____
Clerk of the Commission

**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

AT RICHMOND, MARCH 26, 2026

The State Corporation Commission has found the accompanying application for a certificate of authority to transact business in Virginia submitted on behalf of

## Lee Enterprises, Incorporated

to comply with the requirements of law, and confirms payment of all required fees. Therefore, it is ORDERED that this

## CERTIFICATE OF AUTHORITY TO TRANSACT BUSINESS IN VIRGINIA

be issued and admitted to record with the application in the Office of the Clerk of the Commission, effective March 26, 2026.

The corporation is authorized to transact business in Virginia, subject to all Virginia laws applicable to the corporation and its business.

STATE CORPORATION COMMISSION

By

Samuel T. Towell
Commissioner