**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

COURTHOUSE NEWS SERVICE, *et al.*,

      Plaintiffs,

v.                                  Civil Action No. 1:25-cv-00075-JPJ-PMS

KARL R. HADE, *et al.,*

      Defendants.

**MEMORANDUM IN SUPPORT OF MOTION TO
CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

This case is already on appeal as to this Court's decision denying the defendants' Eleventh Amendment immunity, which stays this case as a matter of law. *See City of Martinsville v. Express Scripts, Inc*., 128 F.4th 265, 269 (4th Cir. 2025). This Court should certify two additional issues for the Fourth Circuit's consideration: (1) whether Code § 17.1-293(H) is a prior restraint subject to strict scrutiny; and (2) whether the plaintiffs have standing to assert their claim that Code § 17.1-293(H) is an unconstitutional prior restraint. Resolving both issues now satisfies the purpose and criteria of a 28 U.S.C. § 1292(b) interlocutory appeal.

For the reasons that follow, Defendants Edward Jewett, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Brenda Hamilton, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, and Kelly Flannagan, in her official capacity as Clerk of the Circuit Court for the City of Bristol (the "Defendant Clerks"), ask this Court to certify its standing and First Amendment rulings to the United States Court of Appeals for the Fourth Circuit.

**BACKGROUND FOR CERTIFYING STANDING AND PRIOR RESTRAINT ISSUES**

The plaintiffs assert a single claim in this case: that the Dissemination Restriction is an unconstitutional prior restraint on their speech in violation of the First Amendment. The defendants

filed Motions to Dismiss, arguing that they were entitled to Eleventh Amendment Immunity, that the plaintiffs lacked standing, and that the plaintiffs failed to state a claim that the Dissemination Restriction was a prior restraint on speech. Defendants' Motions to Dismiss, ECF Nos. 38, 39, 41 and 43; Mem. Supp. Mt. to Dismiss, ECF Nos. 40, 42, and 44.

On May 5, 2026, after briefing and oral argument, this Court denied Defendants' motions to dismiss. Mem. Op. and Order, ECF No. 73 (the "Order"). On May 19, 2026, and May 20, 2026, Defendants noticed their interlocutory appeal of this Court's denial of their motions to dismiss to the United States Court of Appeals for the Fourth Circuit. Notices of Appeal, ECF Nos. 75 and 78. Those appeals relate to the Eleventh Amendment immunity ruling, which is immediately appealable as a collateral order. Now, the Defendant Clerks seek this Court's certification under 28 U.S.C. § 1292(b) as to its standing and prior restraint rulings.

On standing, this Court ruled that the plaintiffs "plausibly alleged that the [Dissemination Restriction] infringes on their right to receive information" because they have alleged the existence of a "willing speaker" who would "provide them with copies of civil complaints from his OCRA account" but for the restriction. Order at 12. As to whether the Dissemination Restriction is a "prior restraint," the court found that "the plaintiffs have plausibly alleged that the Dissemination Restriction constitutes a prior restraint on speech for prohibiting the dissemination of certain information to the public." *Id.* at 15.

Because the Order fits the criteria for 1292(b) certification, and because prompt resolution of these issues serves the purposes of interlocutory appeal, this Court should grant this Motion.

**ARGUMENT**

**1.      STANDARD FOR 28 U.S.C. § 1292(B) CERTIFICATION.**

A district court may certify an order for interlocutory appeal if the order

- involves a controlling question of law;

- as to which there is substantial ground for difference of opinion; and

- an "immediate appeal from the order may materially advance the ultimate termination of the litigation."

28 U.S.C. § 1292(b). "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution." *In re Trump*, 928 F.3d 360, 371 (2019) (internal quotation omitted) (emphasis removed). A district court "should not hesitate to certify an interlocutory appeal under § 1292(b) when a decision 'involves a new legal question or is of special consequence.'" *Id.* at 369 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009)).

Although § 1292(b) certification is "strictly construed" and should be used "sparingly," interlocutory review is appropriate where the court of appeals "can quickly and cleanly . . . rule on a pure, controlling question of law without having to delve beyond the surface of the record to determine the facts." *United States ex rel. Michaels v. Agape Senior Community, Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quotation modified and internal quotation marks omitted).

If the statutory criteria exist, this Court "has a '*duty* . . . to allow an immediate appeal to be taken.'" *In re Trump*, 928 F.3d at 369 (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)). When it does so, a district court must "state in writing" in an order that the elements are met, or "amend its order . . . to include the required permission or statement." 28 U.S.C. § 1292(b); Fed. R. App. P. 5(a)(3).

Because the Court's Order meets these elements, the defendants request certification under 28 U.S.C. § 1292(b). Counsel for the plaintiffs has indicated that they oppose this motion.

## 2.    THE ORDER SATISFIES THE STANDARD FOR § 1292(B) CERTIFICATION.

This Court's Order meets the three criteria for interlocutory appeal regarding: (1) the holding that the plaintiffs have plausibly alleged that the Dissemination Restriction is a prior restraint on speech; and (2) the holding that the plaintiffs have alleged standing via the "willing speaker" doctrine.

### 2.1.    Whether the Dissemination Restriction is a prior restraint.

#### 2.1.1.    Whether the Dissemination Restriction is a prior restraint is a controlling question of law which could materially advance the end of litigation.

The plaintiffs assert a single claim in their Complaint: that Code § 17.1-293(H) is an unconstitutional *prior restraint* on speech that fails constitutional scrutiny. Compl. ¶ 87; Order at 14-15. If the statute is not a prior restraint on speech, the plaintiffs' lawsuit fails and should be dismissed. The issue, then, is a controlling question of law that would materially impact this litigation. *See Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs., Ltd.*, 125 F.4th 593, 598 (5th Cir. 2025) ("Controlling questions thus 'include . . . whether a claim exists as a matter of law'") (quoting 19 James W. Moore et al., Moore's Federal Practice § 203.31[2] (3d ed. 2024)).

#### 2.1.2.    There is substantial ground for difference of opinion as to whether the Dissemination Restriction is a prior restraint.

The issue is also one for which there is "[a] substantial ground for difference of opinion" and "where reasonable jurists might disagree on [its] resolution." *In re Trump*, 928 F.3d at 371.

At the outset, this is a question of first impression. The Dissemination Restriction reflects Virginia's legislative paradigm for making certain court records accessible securely and remotely. Its constitutionality, and indeed the nature of the rights implicated by the statute,

4

relates to fundamental principles regarding the administration of Virginia's courts. The

constitutionality of the Dissemination Restriction has never been resolved by binding precedent

in Virginia, though, and neither has the nature of the First Amendment right implicated by that

statute. Both parties relied on case law from within and outside the Fourth Circuit to support

their respective positions.

This Court found that the Dissemination Restriction is, or is at least plausibly alleged to

be, a prior restraint. In support, this Court relied on Judge Gregory's dissent in *Courthouse News

Serv. v. Hade*, 126 F. 4th 899 (4th Cir. 2025), and *Soderberg v. Carrion*, 999 F.3d 962, 966-67

(4th Cir. 2021). In addition to *Soderberg*, the plaintiffs cited several cases for their argument that

strict scrutiny applied to the Dissemination Restriction because of what it does: specifically, they

said, it is a restriction on speaking with the media. ECF No. 48 at 29-31. The defendants also

cited several cases for the proposition that the clerks' post-speech discretion to revoke subscriber

access was alone sufficient to find the Dissemination Restriction unconstitutional. *Id.* at 32.

On the other hand, the Fourth Circuit has already indicated it disagrees with Judge

Gregory's conclusion that the Dissemination Restriction is a prior restraint: no one joined Judge

Gregory in his dissenting opinion, and CNS' petition for rehearing en banc was denied in that

case with a vote of 10-4. *See Courthouse News Serv. v. Smith*, 2025 U.S. App. LEXIS 10123

(Apr. 28, 2025). Notably, the district court's opinion in that case contrasts with this Court's

decision: it held that the Dissemination Restriction was a constitutional time, place, and manner

regulation. *See Courthouse News*, 126 F.4th at 906 (citing *Courthouse News Serv. v. Hade*, 631

F. Supp. 3d 349 (E.D. Va. 2022)).

Beyond the prior litigation, though, there is room for reasonable disagreement. *Soderberg*

involved a statute that constituted a penal sanction, "prohibit[ed] and punish[ed]" speech, and

applied to the dissemination of speech available to "[t]he public generally." *Id.* at 964. Code §

17.1-293(H) bears none of these characteristics. Plus, multiple jurisdictions—including the

Supreme Court of the United States—appear to interpret a "prior restraint" in such a way as to

exclude the plain meaning of the Dissemination Restriction. *See Alexander v. United States*, 509

U.S. 544, 550 (1993) (defining a prior restraint as distinct from subsequent punishment and as an

"administrative and judicial order forbidding certain communications when issued in advance of

the time that such communications are to occur."); *Serafine v. Branaman*, 810 F.3d 354, 370 (5th

Cir. 2016); *Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) ("An action taken after the

speech is expressed, like a punishment for disfavored speech, is not a prior restraint.").

Finally, there is substantial ground for difference of opinion that the Dissemination

Restriction could ever constitute a prior restraint on speech when it affects only one means of

obtaining otherwise-available speech, and when that contested means of access is not available to

the general public. As the plaintiffs concede, the court records to which they seek access through

OCRA are, in fact, already available to them at Virginia's courthouses. Compl. ¶¶ 63, 66. And

the public at large does not have remote online access to court records in electronic format

through OCRA, either. *Id.* ¶¶ 64, 65. The parties cited authority in support of both sides of this

issue as well. *Compare Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) (holding that an

order that restricted distribution of information obtained one way did not cover information

obtained by other means and thus was "not the kind of classic prior restraint that requires

exacting First Amendment scrutiny") *and Pell v. Procunier*, 417 U.S. 817, 834-35 (1974)

(holding that because the statute at issue did not "deny the press access to sources of information

available to members of the general public," it did not abridge any First Amendment rights), *with*

*Soderberg*, 999 F.3d at 965-66, *and In re Murphy Brown, LLC*, 907 F.3d 788, 793 (4th Cir. 2018) (relating to gag orders).

~    ~    ~

Without re-litigating their Motions to Dismiss, the Defendant Clerks ask this Court to find that there exists substantial ground for difference of opinion on this issue. The plaintiffs, like all plaintiffs, are held to their pleading: they cannot prevail in this case if Code § 17.1-293(H) is *not* a prior restraint. This Court's finding that the plaintiffs have "plausibly alleged that the Dissemination Restriction constitutes a prior restraint on speech" potentially subjects the Dissemination Restriction to strict scrutiny analysis and imposes on the parties the concomitant implications on discovery that flow from that. Given the significance of that finding, and the cost and time of litigating in that analytical framework, this Court should certify the question to the Fourth Circuit to consider alongside the Eleventh Amendment immunity issue already before it.

### 2.2.    Whether the plaintiffs have standing.

#### 2.2.1.   Standing is a controlling question of law which could materially advance the end of litigation.

The Fourth Circuit has held that the question of standing satisfies 28 U.S.C. § 1292(b)'s criteria of being a controlling question of law the resolution of which could materially advance the end of litigation. *See In re Trump*, 928 F.3d at 371 (finding § 1292(b) jurisdiction to consider standing to sue the President under the Emoluments Clause).

The remaining question is whether there is substantial ground for a difference of opinion as to the plaintiffs' standing in this case. There is.

### 2.2.2. There is substantial ground for difference of opinion as to whether the plaintiffs have standing for their claim based on their own independent "newsgathering rights"

The plaintiffs have explicitly pursued a discrete form of standing: the right to receive speech from a willing speaker. This Court's Order finds standing under that theory. Order at 12.

As this Court is aware, the Fourth Circuit previously held that CNS lacked standing because the Dissemination Restriction "does not impose any restraint on [CNS'] speech, because it applies only to individuals with remote online access to court records. . . . Because the Dissemination Restriction does not apply to [CNS'] speech, it lacks standing to challenge that provision." *Courthouse News Serv.*, 126 F.4th at 917. The Court then considered whether CNS had standing because the Dissemination Restriction "indirectly injure[d] it by hindering its ability to acquire electronic court records from attorneys with OCRA access." *Id.* No, the Court held, because standing to receive speech required the existence of a willing speaker to convey that speech and CNS' "assertion of derivative injury" was too speculative. *Id.*

This is the standing door the plaintiffs explicitly seek to enter. Compl. ¶¶ 7-9. In their Complaint, the plaintiffs specifically recount the Fourth Circuit's holding and allege that attorney David Lacy is the speaker willing to speak: he is willing to share electronic court records obtained through OCRA with the plaintiffs but cannot because of the Dissemination Restriction. *Id.* ¶¶ 9-12. But in their briefing in opposition to the defendants' Motions to Dismiss, the plaintiffs move the goalposts. For example, at various points the plaintiffs couched their claim in terms of a right to "gather news," ECF No. 48 at 2, 9, 11, 13; a right to "access" information, *id.* at 9, 11; or a right to receive speech, *id.* at 12, 13-14. But these are not all the same thing. *See Houchins v. KQED, Inc.*, 438 U.S. 1, 3, 7-8, 10-12 (1978) (distinguishing "[t]he right to receive ideas and information," which was "not the issue in this case," from the right to gather news and

access information, which was); *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553, 559 (6th Cir. 2007) ("The case before us is about access to information as opposed to the right to expression. Although access cases are rooted in First Amendment principles, they have developed along distinctly different lines than have freedom of expression cases.") (citing cases). And notably, a right to "gather news" does not depend on the existence of a willing speaker. *See Davis v. East Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 927 (5th Cir. 1996) ("many circuits have found media standing to challenge confidentiality orders without expressly finding the existence of a willing speaker") (citing cases). Because different claims implicate different injuries, which in turn implicate different injuries-in-fact that could trigger standing, the plaintiffs' standing analysis leaves substantial room for difference of opinion that they have alleged standing here.

More importantly, the parties disagree—and cite authority in favor of their positions from various federal courts of appeal—as to whether the plaintiffs need to assert a derivative injury from their alleged willing speaker. The defendants cited numerous cases holding that in right-to-receive-speech cases, the receiver's rights are reciprocal of the speaker's: "the right to listen depends entirely on the infringement on the rights of a willing speaker." *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007). Put differently, "if there is no infringement claimed by a speaker . . . there can be no violation of the right to listen." *Id.*; *see Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 757 (1976) ("If there is a right to advertise, there is a reciprocal right to receive the advertising"). Because the listener's rights are reciprocal of the speaker's, receivers of speech have rights no greater than the speaker. *See NAACP v. Jones*, 131 F.3d 1317, 1322 (9th Cir. 1997).

9

The plaintiffs, in turn, disavowed the notion that their standing derives from Mr. Lacy or other OCRA subscribers. ECF No. 48 at 2, 9 and 11-13 (repeatedly asserting a right to gather news as not derived from a willing speaker). The defendants' arguments in support of dismissal, the plaintiffs said, relied on the false premise "that CNS' and Lee's standing is derivative of OCRA subscribers." *Id.* at 15. Rather, the plaintiffs argue that they need not assert a derivative injury, and that their own right to "gather news" or "access" information stands independent of any injury suffered by the alleged willing speaker. *See* ECF No. 48 at 2, 9, 11, 13 (citing *Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019); *In re Wall Street J.*, 601 F. App'x 215 (4th Cir. 2015 (per curiam); *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975)).

There is substantial ground for difference of opinion as to whether these cases support the plaintiffs' asserted theory of standing. Notably, the Fourth Circuit has never opined on the discrete question of whether the receiver-of-speech must assert an injury that is derivative of the speaker's, although it used that framing when it ruled that CNS lacked standing. *See Courthouse News Serv.*, 126 F. 4th at 917 (holding that CNS' "assertion of derivative injury" was too speculative). This Court, then, should certify the issue to the Fourth Circuit for resolution.

### 2.2.3.   There is substantial ground for difference of opinion that the plaintiffs allege an injury-in-fact to Mr. Lacy's allegedly chilled speech.

Finally, there is good reason to think the Fourth Circuit would require more than has been pleaded to satisfy standing for a prior restraint claim. A prior restraint claim is "based on a restriction that chills potential speech before it happens, rather than an adverse action taken in response to actual speech." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010). As such, to "amount to a judicially cognizable injury in fact," the chilling effect must "arise from an objectively justified fear of real consequences." *Id.* (cleaned up). "[F]ears of

10

[future] enforcement that are 'imaginary' or 'wholly speculative' are insufficient to confer standing." *Rock for Life UMBC v. Hrabowski*, 411 F. App'x 541, 547 (4th Cir. 2010) (unpublished) (quoting *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979)). "[A] credible threat of prosecution or other consequences following from the statute's enforcement" can satisfy these requirements. *Id.* (internal quotation marks omitted); *see Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549-50 (7th Cir. 2007) (finding that in a right-to-listen case, the alleged threat of enforcement against the willing speakers failed to suffice for standing).

The Complaint here fails to satisfy this standard. If the plaintiffs' rights to receive speech derive reciprocally from Mr. Lacy's right to speak, then no injury to Mr. Lacy's speech rights means there is also no injury to the plaintiffs' right-to-listen rights. But the plaintiffs do not allege any objective threat of enforcement or objectively justified fear on Mr. Lacy's part that the defendants will enforce their subscriber agreement against him. Not only do the plaintiffs fail to satisfy this threshold requirement, but their goalpost moving as to what their claim and theory of standing is means they do not even attempt to do so. After all, if they are asserting a stand-alone right to gather news that exists independent of a willing speaker and that is curtailed by a prior restraint, they would not need to assert injury-in-fact to Mr. Lacy.

~    ~    ~

Like its finding on prior restraint, this Court's finding that the plaintiffs have alleged standing merits appellate review. This Court should certify both questions pursuant to 28 U.S.C. § 1292(b) to allow the Fourth Circuit the opportunity to decide whether to accept the certification of those issues for appellate review.

11

Respectfully submitted,

**EDWARD JEWETT**, in his official capacity as Clerk of the Circuit Court for the City of Richmond, Virginia;

**BRENDA HAMILTON**, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; and

**KELLY FLANNAGAN**, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia

By Counsel

/s/ John P. O'Herron

William W. Tunner (VSB No. 38358)
William D. Prince IV (VSB No. 77209)
John P. O'Herron (VSB No. 79357)
Rachel W. Adams (VSB No. 92605)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
joherron@t-mlaw.com
radams@t-mlaw.com
paskin@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of June, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Roger Myers, *pro hac vice* forthcoming
Rachel Matteo-Boehm, *pro hac vice* forthcoming
Carlie Tenenbaum, *pro hac vice* forthcoming
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
2100 East Cary Street, Suite 310
San Francisco, CA 94111
Telephone: (415) 675-3400
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com
carlie.tenenbaum@bclplaw.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

Erin R. McNeill, Esq.
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (ERM): (804) 692-0598
Facsimile (ERM): (804) 371-0200
Email (ERM): EMcneill@oag.state.va.us

*Counsel for Karl R. Hade, in his official capacity as Executive Secretary of the Office of the Executive Secretary of the Supreme Court of Virginia*

Dabney J. Carr IV, Esq.
Lauren H. Miller, Esq.
TROUTMAN PEPPER LOCKE LLP
P.O. Box 1122
Richmond, Virginia 23218
Telephone: (804) 697-1200
Facsimile: (805) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

14

/s/ John P. O'Herron
John P. O'Herron (VSB No. 79357)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
joherron@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

15