**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

COURTHOUSE NEWS SERVICE, *et al.*,

     Plaintiffs,

v.

                                      Civil Action No. 1:25-cv-00075-JPJ-PMS

KARL R. HADE, *et al.,*

     Defendants.

### DEFENDANT CLERKS' REPLY IN SUPPORT OF MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL AND MOTION TO STAY

In their Opposition to Defendants' Motions to Certify and Stay, Plaintiffs ignore the unique posture of this case and continue to assert various constitutional theories about the Dissemination Restriction that they have not plead. Because this case is already on appeal as to this Court's decision denying the defendants' Eleventh Amendment immunity, and because that appeal automatically stays these proceedings, this Court should grant Defendant Clerks' Motion to Certify and allow the Fourth Circuit to decide whether to consider two additional issues on appeal.

### ARGUMENT

**1.**     **PLAINTIFF'S STAY ARGUMENT IS SELF-CONTRADICTORY.**

Because this case is currently on appeal as to the defendants' entitlement to Eleventh Amendment Immunity—in other words, whether they can be subject to suit—this case is automatically stayed as a matter of law. This stay includes all aspects of discovery and the merits of Plaintiffs' prior restraint claim. *See City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265, 269 (4th Cir. 2025); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982).

Plaintiffs position on a stay of these proceedings is difficult to parse. After conceding that "discovery will be delayed during the automatic stay on their sovereign immunity appeal" and

citing the cases that establish the automatic stay, *see* ECF 90 at 13-14, Plaintiffs spend two pages

arguing why the Court should not grant a stay. *See id.* at 14-15. Plaintiffs appear to argue that the

Court should deny a stay because, putting aside the automatic stay for the sovereign immunity

appeal, Defendants' request does not separately satisfy the elements for a discretionary stay under

*Nken v. Holder*, 556 U.S. 41 (2009). Plaintiffs also suggest that this Court could later find

Defendants' interlocutory appeal of the immunity issue to be frivolous, thus allowing this matter

to proceed. *Id.* at 15 n.2 (citing *Eckert Int'l v. Gov't of Sov. Dem. Rep. of Fiji*, 834 F. Supp. 167,

174 (E.D. Va. 1993)).

These arguments needlessly confuse the issue. Defendants filed their Joint Motion to Stay

to make formal what Plaintiffs concede to be true: this case is automatically stayed because they

are appealing their entitlement to sovereign immunity. And if this Court certifies the two additional

issues to the Fourth Circuit for consideration along with sovereign immunity, that same stay should

remain in place pending the conclusion of the appeals so that this Court and the Fourth Circuit are

not simultaneously exercising jurisdiction over this case.

Because this case is automatically stayed as to all proceedings anyway, this Court should

exercise its discretion to certify the two additional questions at issue.

**2.      THIS COURT'S RULING ON STANDING SATISFIES THE STANDARD FOR § 1292(B)
         CERTIFICATION.**

In their opposition, Plaintiffs argue that the issue of standing fails to meet any of the criteria

for interlocutory appeal.

**2.1.    Standing is a controlling question of law that will materially advance the
         termination of this litigation.**

Standing is a controlling question of law. As Plaintiffs recognize, standing is a "threshold

jurisdictional inquiry." ECF 90 at 5 (quoting *Moore v. Virginia Cmty. Bankshares, Inc.*, 666 F.

Supp. 3d 547, 553 (W.D. Va. 2023)) (cleaned up). As such, it implicates whether this Court has

subject matter jurisdiction over the case. *See Moore*, 666 F. Supp. 3d at 552-53; *Rouse v. Fader*,

171 F.4th 272, 279 and n. 6 (4th Cir. 2026) (raising standing *sua sponte* because it had an

"independent obligation" to assess subject matter jurisdiction") (internal quotation marks omitted).

Standing is also "a legal question that [appellate courts] examine de novo." *Clatterbuck v. City of*

*Charlottesville*, 708 F.3d 549, 553 (4th Cir. 2013). And when standing is a "pure question of

law"— that is, when it is "an abstract legal issue that the court of appeals can decide quickly and

cleanly"—it is suitable for interlocutory review. *See Does v. Musk*, 2026 U.S. Dist. LEXIS 17834,

*5 (D. Md. 2026) (citing *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330,

340 (4th Cir. 2017)).

That is the case here. Defendant Clerks raise pure questions of law in their standing

argument that do not require the resolution of factual questions. Plaintiffs have alleged that David

Lacy is a willing speaker and that they have suffered injury because the Dissemination Restriction

prohibits him from sharing court records with them. Defendant Clerks' arguments take those

allegations at face value for purposes of their standing argument and argue only purely legal

questions related to whether those facts, and Plaintiffs' legal positions on the willing speaker

doctrine, satisfy the jurisdictional requirements for Article III standing.

Defendant Clerks recognize that if there are questions of fact to resolve, the standing issue

would not satisfy the criteria for an interlocutory appeal. *See Moore v. Blue Ridge Bankshares,*

*Inc.*, 2023 U.S. Dist. LEXIS 245564 (W.D. Va. 2023) (refusing certification because the issue of

standing required resolving fact questions). But just because the standing inquiry involves applying

law to factual allegations does not render standing a factual inquiry. If that were true, standing

could never be suitable for interlocutory appeal. This is plainly not the case. *See, e.g., Jackson v.*

3

*City of Houston*, 143 F.4th 640, 644 (5th Cir. 2025) (finding § 1292(b) jurisdiction over "controlling question[] of law" regarding plaintiff's standing); *Campaign Legal Center v. Values*, 710 F. Supp. 3d 35, 48 (D.C. Cir. 2024) (standing was controlling question of law); *In re Auto. Parts Antitrust Litig.*, 2019 U.S. App. LEXIS 14014, *2 (6th Cir. 2019) ("Whether the plaintiffs have properly alleged Article III standing is a controlling legal question").[1] Plaintiffs even cite a case (for a different proposition) where this Court recognized that "Courts have held that the question of standing and subject matter jurisdiction are controlling questions of law." *Audio Mpeg v. Creative Labs*, 2006 U.S. Dist. LEXIS 118052, *10 (E.D. Va. 2006).

The standing issue will also "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Whether an issue is a "controlling question of law [that] may materially advance the ultimate termination of the litigation . . . is not a difficult requirement to understand[;] [i]t means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation." *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004) (citing 16 Charles Alan Wright, et al., Federal Practice & Procedure § 3930 at 432 (2d ed. 1996)); *see Prince v. Johnson Health Tech. Trading, Inc.*, 2023 U.S. Dist. LEXIS 75283 (W.D. Va. 2023) (same). Plaintiffs argue this is not satisfied because any dismissal for lack of standing must be without prejudice and thus will precipitate the filing of an amended complaint. Because litigation will then continue, the argument goes, any ruling will not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

---

[1] Plaintiffs make much of the fact that the panel decision in *In re Trump*, 928 F.3d 360 (4th Cir. 2019), was vacated by the en banc decision in *In re Trump*, 958 F.3d 274 (4th Cir. 2020). But the en banc decision vacated the panel's ruling on other grounds and did not address whether the underlying standing question met the elements of certification. In fact, the en banc majority specifically said that the district court's "certification analysis" was "an issue on which we do not pass." *Id.* at 284. The panel decision that standing *was* a controlling question of law was left untouched, in other words.

At the outset, Plaintiffs offer no explanation of what facts they could allege that could save their Article III standing. But more to the point, the possibility of amendment is not an escape hatch from interlocutory appeals. The principle Plaintiffs rely on applies to any defect in subject matter jurisdiction. *See S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC,* 713 F.3d 175, 185 (4th Cir. 2013) ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits."). Again, if Plaintiffs' analysis were right, no issues of subject matter jurisdiction could ever be appealed under § 1292(b) because dismissal without prejudice, an amended pleading, and continued litigation would remain possible. As with the controlling question of law inquiry, cases abound proving that issues of subject matter jurisdiction are appealable under § 1292(b).

Plaintiffs also cite two cases where Courts found that resolving the standing question at issue would not terminate the litigation. ECF 90 at 5 (citing *Prince v. Johnson Health Tech. Trading, Inc.*, 2023 U.S. Dist. LEXIS 75283 (W.D. Va. 2023) and *Audio Mpeg*). But in *Prince*, the Court held that resolving the standing inquiry would only impact some of the many plaintiffs' claims and thus would not terminate the litigation. *See Prince* at * 6-7. And in *Audio Mpeg*, the Court similarly held that the standing inquiry would only resolve whether the case proceeded with one plaintiff or many, but either way it would continue. *See Audio Mpeg* at *12-13. Neither case, then, is useful here.

### 2.2.    There is substantial ground for difference of opinion.

Finally, the standing question satisfies the second criteria of § 1292(b) by being an issue for which there is substantial ground for difference of opinion. Defendant Clerks recognize that disagreement with Plaintiffs, or the Court's decision, is not alone sufficient to satisfy this element.

But Defendant Clerks' Motion to Certify is based on the apparent disagreement in the federal courts of appeal.

The question here is whether there is substantial ground for difference of opinion as to whether Plaintiffs' theory of standing is viable. The plaintiffs have explicitly pursued a discrete form of standing—the right to receive speech from a willing speaker—and this Court's Order finds standing under that theory. Order at 12. And to be more precise, the standing question at issue is whether the receiver-of-speech must assert an injury that is derivative of the speaker's.

The Fourth Circuit has never addressed this question, even though it used that framing when it ruled that CNS lacked standing in *Courthouse News Serv. v. Smith*, 126 F. 4th 899, 917 (2025) (holding that CNS' "assertion of derivative injury" was too speculative). And contrary to the repeated invocation of it by Plaintiffs, the Court in *Overbey v. Mayor of Baltimore*, 930 F.3d 215 (4th Cir. 2019), did not address the question either. As the Defendant Clerks' Memorandum in Support indicates, precedent from the Supreme Court of the United States and other circuits leave room for substantial disagreement. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council*, 425 U.S. 748, 757 (1976) ("If there is a right to advertise, there is a reciprocal right to receive the advertising"); *Pa. Family Inst., Inc. v. Black*, 489 F.3d 156, 166 (3d Cir. 2007) ("the right to listen depends entirely on the infringement on the rights of a willing speaker."); *NAACP v. Jones*, 131 F.3d 1317, 1322 (9th Cir. 1997).

Plaintiffs do not engage much with the Defendant Clerks' argument. And tellingly, Plaintiffs cannot seem to make up their mind whether they need to assert that their injury derives from that of their alleged willing speaker. Before, Plaintiffs repeatedly disavowed the need to assert an injury that derived from Mr. Lacy. *See* ECF No. 48 at 2, 9, 11, 13 (asserting, again and again, that their right to gather news did not derive from a willing speaker). They did not, they

6

argued, assert standing that was "derivative of OCRA subscribers." *Id.* at 15. But now, Plaintiffs

claim that their "injury did derive from Lacy's injury." ECF 90 at 7 n. 4. Plaintiffs' own confusion

is more reason to certify the issue.

**3.    THIS COURT'S RULING ON "PRIOR RESTRAINT" SATISFIES THE STANDARD FOR § 1292(B) CERTIFICATION.**

Plaintiffs argue that the Court's ruling that they have "plausibly alleged" the

Dissemination Restriction to be a prior restraint on speech is not a controlling question of law

that would materially advance the termination of the litigation, ECF No. 90 at 8-9, and is not an

issue for which there is substantial ground for difference of opinion. *Id.* at 9-11.

**3.1.    Whether the Dissemination Restriction is a "prior restraint" on speech is a controlling question of law that would materially advance the termination of this litigation.**

As to whether the issue is controlling, Plaintiffs make two arguments: 1) it does not

matter whether the Dissemination Restriction is a "prior restraint" because it triggers strict

scrutiny regardless; and 2) the Court's ruling only goes to the level of scrutiny to be applied, and

even if it was wrong, the case would proceed under a lower level of scrutiny such as the

intermediate scrutiny applicable to time, place, and manner restrictions on speech. *Id.* at 8. These

arguments miss the point and ignore Defendant Clerks' primary argument: if the Dissemination

Restriction is *not* a prior restraint on speech, Plaintiffs' lawsuit cannot proceed because that is the

only theory they have plead.

"A case may not proceed to trial on 'an unpleaded theory of recovery' without 'express

or implied consent of the parties.'" *Papania v. United States*, 715 F. Supp. 3d 789, 802 (E.D. Va.

2024) (quoting *Pinkley, Inc. v. City of Frederick, Md.*, 191 F.3d 394, 401 (4th Cir. 1999)). Stated

differently, Plaintiffs can only proceed to summary judgment and/or trial in this matter on what

they have plead. Plaintiffs' Complaint asserts a single claim: that Code § 17.1-293(H) is an

unconstitutional *prior restraint* on speech. Compl. ¶ 87; Order at 14-15. They make this

allegation as to what the statute *is* so that they can benefit from a particular level of scrutiny.

This is by design: the Eastern District of Virginia already ruled that the Dissemination

Restriction is a content-neutral time, place, and manner regulation. *See Courthouse News Serv. v.

Hade*, 631 F. Supp. 3d 349 (2022) (Hudson, J.) *aff'm in part, vacated in part* 126 F. 4th 899.

And the Fourth Circuit already ruled that the Dissemination Restriction "does not impose any

restraint on Courthouse News's speech." 126 F.4th at 913. Plaintiffs' current pleading tries to

thread the needle between these rulings: they now assert that the Dissemination Restriction is a

prior restraint on the speech of their alleged willing speaker, Mr. Lacy. The scrutiny to be

applied to this claim, though, is secondary to and flows from the premise alleged: that the statute

is a prior restraint on speech. If Plaintiffs' claim that the Dissemination Restriction is a prior

restraint is incorrect, they have failed to state a claim. The issue, then, is a controlling question of

law. *See Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs., Ltd.*, 125 F.4th 593, 598 (5th Cir.

2025) ("Controlling questions thus 'include . . . whether a claim exists as a matter of law'")

(quoting 19 James W. Moore et al., Moore's Federal Practice § 203.31[2] (3d ed. 2024)).

Plaintiffs also reiterate their argument that the distinction between prior restraint and

post-speech punishment does not matter. ECF No. 90 at 11 n.10. Besides ignoring their own

pleading—which asserts one and not the other—they read the cases wrong. Neither Supreme

Court case on which Plaintiffs rely holds that a prior restraint and post-speech punishment

receive the same constitutional analysis. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539

(1976), *and Smith v. Daily Mail Pub. Co.*, 443 U.S. 97 (1979). Plus, *Nebraska Press* helps the

Defendant Clerks. *See Nebraska Press* at 559 ("The thread running through all these cases is

that prior restraints on speech and publication are the most serious and the least tolerable

8

infringement on First Amendment rights" because "[a] prior restraint . . . *by definition*, has an immediate and irreversible sanction") (emphasis added). Besides, after these cases, the Supreme Court left no doubt that the distinction mattered: "To accept petitioner's argument would virtually obliterate the distinction, solidly grounded in our cases, between prior restraints and subsequent punishments." *Alexander v. United States*, 509 U.S. 544, 550 (1993).

### 3.2.    There is substantial ground for difference of opinion.

Plaintiffs next argue that there is no substantial ground for difference of opinion but again miss the mark. First, Plaintiffs characterize as merely "*one depiction*" of a "prior restraint" that it is an "administrative and judicial order forbidding certain communications when issued in advance of the time that such communications are to occur." ECF No. 90 at 9 (internal quotes omitted and emphasis added). This is not "one depiction" of the term: it is the very definition of the term according to the Supreme Court of the United States. *See Alexander* at 550; *Nebraska Press* at 559.

The Defendant Clerks' argument is, and has always been, that the Dissemination Restriction is not a restraint on speech because it does not forbid speech before it occurs. *See* ECF No. 44 at 9-11, ECF No. 62 at 3, ECF No. 88 at 5-6. The Defendant Clerks will not re-litigate the *merits* of that argument here, but that is the issue for which there is substantial ground for difference of opinion. Specifically, does the plain language of the Dissemination Restriction forbid speech before it occurs as Judge Gregory claimed in his dissent, or does it simply relate to post-speech consequences? There is no controlling law on point, which is why Plaintiffs rely on Judge Gregory's dissent and a Fourth Circuit decision analyzing a statute that constituted a penal sanction by "prohibiting and punishing" speech. *See Soderberg v. Carrion*, 999 F.3d 962, 964 (4th Cir. 2021). And there is persuasive authority that runs the other way. *See Courthouse News*,

9

126 F.4th at 906 (citing *Courthouse News Serv. v. Hade*, 631 F. Supp. 3d 349 (E.D. Va. 2022));

*Novak v. City of Parma*, 932 F.3d 421, 432 (6th Cir. 2019) ("An action taken after the speech is

expressed, like a punishment for disfavored speech, is not a prior restraint."). Notably, by citing

both Judge Hudson's finding that the Dissemination Restriction *is not* a prior restraint, *and* Judge

Gregory's opinion that it *is*, Plaintiffs' own Complaint recognizes the substantial ground for

difference of opinion.

CONCLUSION

Plaintiffs' remaining arguments that this case does not present suitable circumstances for

interlocutory appeal ignore the fact that this case is already on appeal. The Defendant Clerks

recognize that § 1292(b) certification should be used "sparingly." *See United States ex rel.

Michaels v. Agape Senior Community, Inc.*, 848 F.3d 330, 340 (4th Cir. 2017). But this is not a

run-of-the-mill request to certify under § 1292(b). Defendant Clerks are asking this Court to

certify two additional issues alongside the issue already before the Fourth Circuit, and both

implicate controlling legal questions at the heart of this litigation. If the Fourth Circuit disagrees,

it will exercise its discretion to deny the Defendant Clerks' petition for appeal. The Defendant

Clerks ask this Court to give them the opportunity to persuade the Fourth Circuit that the nature

of the Dissemination Restriction, and whether Plaintiffs have standing to challenge it, should be

addressed alongside the defendants' entitlement to sovereign immunity.

The Defendant Clerks ask the Court to grant their Motion.

Respectfully submitted,

**EDWARD JEWETT**, in his official capacity as
Clerk of the Circuit Court for the City of Richmond,
Virginia;

**BRENDA HAMILTON**, in her official capacity as Clerk of the Circuit Court for the City of Roanoke, Virginia; and

**KELLY FLANNAGAN**, in her official capacity as Clerk of the Circuit Court for the City of Bristol, Virginia

By Counsel

/s/ John P. O'Herron

William W. Tunner (VSB No. 38358)
William D. Prince IV (VSB No. 77209)
John P. O'Herron (VSB No. 79357)
Rachel W. Adams (VSB No. 92605)
Peter S. Askin (VSB No. 93371)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
wtunner@t-mlaw.com
wprince@t-mlaw.com
joherron@t-mlaw.com
radams@t-mlaw.com
paskin@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of June, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Roger Myers, *pro hac vice* forthcoming
Rachel Matteo-Boehm, *pro hac vice* forthcoming
Carlie Tenenbaum, *pro hac vice* forthcoming
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
2100 East Cary Street, Suite 310
San Francisco, CA 94111
Telephone: (415) 675-3400
roger.myers@bclplaw.com
rachel.matteo-boehm@bclplaw.com
carlie.tenenbaum@bclplaw.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

Erin R. McNeill, Esq.
Senior Assistant Attorney General
Office of the Virginia Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone (ERM): (804) 692-0598
Facsimile (ERM): (804) 371-0200
Email (ERM): EMcneill@oag.state.va.us

*Counsel for Karl R. Hade, in his official capacity as Executive Secretary of the Office of the Executive Secretary of the Supreme Court of Virginia*

Dabney J. Carr IV, Esq.
Lauren H. Miller, Esq.
TROUTMAN PEPPER LOCKE LLP
P.O. Box 1122
Richmond, Virginia 23218
Telephone: (804) 697-1200
Facsimile: (805) 697-1339
dabney.carr@troutman.com
lauren.h.miller@troutman.com

*Counsel for Plaintiffs Courthouse News Service, Lee Enterprises, Incorporated and Lee BHM LLC*

12

/s/ John P. O'Herron
John P. O'Herron (VSB No. 79357)
*Thompson*McMullan, P.C.
100 Shockoe Slip, 3rd Floor
Richmond, Virginia 23219
Telephone: (804) 649-7545
Facsimile: (804) 780-1813
joherron@t-mlaw.com

*Counsel for Defendants Edward Jewett, in his official capacity as the Clerk of the Circuit Court for the City of Richmond, Virginia, Brenda Hamilton, in her official capacity as the Clerk of the Circuit Court for the City of Roanoke, Virginia, and Kelly Flannagan, in her official capacity as the Clerk of the Circuit Court for the City of Bristol, Virginia*

13